IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ,<br><br>       Plaintiffs,<br><br>v.<br><br>PFIZER, INC., JACQUELINE GUERRERO,<br>BOB DAVIS, JEANNE L. JALUFKA,<br>KYLE M. NELSON, JASON D. HAHN,<br>ROBERT G. VIAL, KATHRYN K. TRUITT,<br>KARI A. McLUHAN, REYNALDO<br>RIOJAS, FRANCISCO MEZA, JACK<br>BARINEAU, ERICA ZEPLIN, DEBORAH<br>QUINONES, W. LANCE GOODSON,<br>KEELY RODRIGUEZ, LEAH SILVA,<br>DANIEL PONCE, CELESTE ESCOBAR,<br>JILL GUIDRY, DANIEL TOWNSEND and<br>LYNSEY ADAME,<br><br>       Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. C-07-242<br><br>JURY REQUESTED<br><br>*Pending Transfer to MDL-1699*<br>(*In re Bextra and Celebrex Marketing,*<br>*Sales Practices and Prods. Liab. Litig.*) |

## DEFENDANT PFIZER INC.'S NOTICE OF REMOVAL

TO:    The United States District Court for the Southern District of Texas, Corpus Christi Division.

      NOW COMES Defendant Pfizer Inc. (incorrectly named as "Pfizer, Inc." and hereinafter "Pfizer"), and files this Notice of Removal of said cause to the United States District Court for the Southern District of Texas, Corpus Christi Division pursuant to 28 U.S.C. §§ 1332 and 1441. In support thereof, Pfizer respectfully would show the Court as follows:

### I.

### Introduction

**A.    The Multi-District Litigation Proceedings**

      This is a pharmaceutical product liability case in which Plaintiffs contend they sustained injuries from Bextra®, a prescription medication co-promoted and marketed at times by Pfizer.

The Judicial Panel on Multidistrict Litigation ("JPML") has consolidated pretrial proceedings in personal injury actions relating to Bextra® pursuant to 28 U.S.C. § 1407 and assigned the litigation to the Honorable Charles R. Breyer of the United States District Court for the Northern District of California (the "MDL Court"). *See In re Bextra & Celebrex Mktg., Sales Pracs. & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). Because Plaintiffs allege personal injuries from Bextra®, this case will be subject to transfer to that court as a "tag-along action." *See id.* at 1377, n.1; RULES 1.1 & 7.4(A) OF RULES FOR MULTIDISTRICT LITIGATION UNDER 28 U.S.C. § 1407, 1999 F.R.D. 425 (J.P.M.L. 2001).

**B.    Plaintiffs' Lawsuit**

On April 9, 2007, Plaintiffs Laurine and John Kreitz filed this personal injury action against Pfizer in the 36th Judicial District Court of Aransas County, Texas, Cause No. A-07-0075-CV-A, alleging they sustained damages as a result of Laurine Kreitz's use of Bextra®. *See* PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 1 (Exhibit 2B). Plaintiffs contend that Pfizer, the manufacturer of Bextra®, is liable for their alleged injuries under theories of negligence, strict liability, negligent misrepresentation, fraud, and breach of warranties. *See generally* PETITION at 6-11.

Plaintiffs' lawsuit also names as defendants twenty-one (21) current or former Pfizer field representatives (often called "detailers") from around and outside the state, whom Plaintiffs allege share their Texas citizenship.[1] As Pfizer detailers, the named employees are responsible for making physicians aware of Pfizer's products, so that the doctors can consider whether to prescribe them for particular patients. *See, e.g.,* DECLARATION OF JACQUELINE GUERRERO ("GUERRERO DECL.") ¶ 3 (Exhibit 6A). Plaintiffs maintain that these individual employees

---

[1] Two of the named detailers – Kari McLuhan and Jill Guidry – are not Texas citizens, but rather are citizens of Arizona and Louisiana, respectively. *See* DECLARATION OF KARI A. MCLUHAN ("MCLUHAN DECL.") ¶ 3 (Exhibit 6H); DECLARATION OF JILL GUIDRY ("GUIDRY DECL.") at ¶ 3 (Exhibit 6S).

"called on doctors and hospitals" and "were in a position to make representations about the risks associated with the use of BEXTRA®," and then obliquely suggest – with no specific supporting factual allegations – that "Defendants" failed to advise those unnamed health care providers of certain risks. *See* PETITION at 6; *see, e.g., Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 & n. 3 (May 21, 2007) (holding that under Rule 8 a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level"). The gravamen of Plaintiffs' complaint against these employees, thus, is that they failed to warn of potential risks of Bextra®.

Plaintiffs, however, also plead generally that "Defendants" are liable under product liability and breach of warranty theories. Assuming these theories are directed at the detailers as well as Pfizer, they are not viable in this case under Texas law *given that the factual proof submitted with this removal negates any possible suggestion that the individual employees are "sellers" of prescription drugs.*

Plaintiffs and Pfizer are of diverse citizenship. The individual Pfizer detailer employees have been improperly joined[2] in an effort to obstruct Pfizer's statutory right to removal. Pfizer acknowledges that this Court previously entered orders remanding certain actions involving non-diverse detailers in the Vioxx® litigation upon a finding they were not improperly joined. *See, e.g., Del Bosque v. Merck & Co., Inc.*, No. C-06-510, 2006 WL 3487400 (S.D. Tex. Dec. 1, 2006). As demonstrated below, however, this case is distinguishable from those prior decisions on a number of grounds. For instance, this Court held that the removing defendant in those cases failed to provide any reason why the plaintiffs could not recover against its local representatives

---

[2] Courts historically have called this the "fraudulent joinder" doctrine. However, in *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc), the Fifth Circuit Court of Appeals adopted the term "improper joinder" as being more consistent with the related statutory language. Pfizer, consequently, uses this phraseology in this Notice.

under Texas' product liability laws. *Id*. at *2 n.2. The same is not true here. *See* discussion, *infra*, Part III.C.1. Unlike the defendant in *Del Bosque*, Pfizer has presented specific declaration evidence rebutting Plaintiffs' scant factual allegations involving the detailers. Among other things, that evidence establishes that the Pfizer detailers are not "sellers" of Bextra® under Texas law, but rather are employees of Pfizer – which, in turn, is the distributor of Bextra® and the "seller" of the product in question. Accordingly, there is no reasonable possibility they could be liable to Plaintiffs based on the theories alleged in the complaint. *See, e.g.,* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 cmt. g (1998) (stating that a product distributor's sales personnel are not subject to individual liability as seller of a product under terms of the Restatement). In fact, to hold the individual employees liable in the circumstances presented would run contrary to the well-established notion that an agent is not subject to liability for torts committed by the agent's principal. *See, e.g., Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (explaining "'individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.'") (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)). "[T]here is no principle of 'respondeat inferior.'" RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. d (2006).[3]

In comparable cases, as set forth below, one Texas federal court after another has held that similar allegations against drug manufacturers' individual employees have no reasonable possibility of success under Texas law. As the Eleventh Circuit Court of Appeals recently held, it has become a "common strategy" for plaintiffs in pharmaceutical product liability cases to name local detailers as defendants in an effort to defeat the diverse drug manufacturer's right to remove a case to federal court. *See Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005). A

---

[3] Moreover, *Del Bosque* occurred before the Supreme Court's decision in *Bell Atlantic* clarified the factual pleading required to state a claim with respect to Rule 8, even apart from the heightened requirements under Rule 9. *See infra* at Part III.D.

federal MDL Court overseeing one such pharmaceutical product liability litigation bluntly characterized such tactics as "a sham, at the unfair expense not only of [the diverse pharmaceutical company] but of the many individuals . . . that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the pharmaceutical company], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002). Those decisions found the detailers to be improperly joined. Likewise, the improper joinder of these individual employees in the current case does not defeat diversity jurisdiction.[4]

This action is one in which this Court has original subject matter jurisdiction under the provisions of 28 U.S.C. § 1332, and is one which may be removed to this Court by Pfizer pursuant to the provisions of 28 U.S.C. § 1441(a), in that, excluding the improperly joined defendants, it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Copies of all process, pleadings, and orders filed in state court are attached hereto.

---

[4] Indeed, Plaintiffs' counsel has named *the same twenty-one detailers* in at least eleven different cases filed all over the State of Texas – from Starr County in the south to Tarrant County in the north – despite the fact that some of the named defendants never even detailed Bextra® at all, *see, e.g.,* DECLARATION OF FRANCISCO MEZA ("MEZA DECL.") ¶ 4 (Exhibit 6J); DECLARATION OF JACK BARINEAU ("BARINEAU DECL.") ¶ 3 (Exhibit 6K), and many others never detailed the product in certain geographic areas. *See, e.g.,* DECLARATION OF BOB DAVIS ("DAVIS DECL.") ¶ 7 (attesting he never detailed Bextra in Aransas County) (Exhibit 6B); DECLARATION OF KATHRYN TRUITT ("TRUITT DECL.") ¶ 8 (same) (Exhibit 6G); DECLARATION OF KARI A. MCLUHAN ("MCLUHAN DECL.") ¶ 9 (same) (Exhibit 6H); DECLARATION OF REYNALDO RIOJAS ("RIOJAS DECL.") ¶ 8 (same) (Exhibit 6I); DECLARATION OF ERICA ZEPLIN ("ZEPLIN DECL.") ¶ 7 (same) (Exhibit 6L); DECLARATION OF W. LANCE GOODSON ("GOODSON DECL.") ¶ 7 (same) (Exhibit 6N); DECLARATION OF KEELY RODRIGUEZ ("RODRIGUEZ DECL.") ¶ 7 (same) (Exhibit 6O); DECLARATION OF LEAH SILVA ("SILVA DECL.") ¶ 7 (same) (Exhibit 6P); DECLARATION OF DANIEL PONCE ("PONCE DECL.") ¶ 7 (same) (Exhibit 6Q). The fact that Plaintiffs' counsel in these cases have indiscriminately thrown the same Pfizer detailers into their lawsuits despite lacking any factual connection to their alleged injuries reflects their scattershot approach to attempting to defeat federal jurisdiction.

## II.

### Diversity of Citizenship

Plaintiffs Laurine and John Kreitz are, and were at the time this suit was filed, residents of Aransas County and citizens of the State of Texas, *see* PETITION at 2, and, thus, they are Texas citizens for purposes of determining federal diversity jurisdiction.

Defendant Pfizer Inc. was at the time this suit was filed, and is presently, a corporation organized under Delaware law with its principal place of business in New York.  *See* PETITION at 2.  It therefore is considered a citizen of both Delaware and New York for jurisdictional purposes.  *See* 28 U.S.C. § 1332(c)(1).

Defendant employee Kari A. McLuhan is, and was at the time this suit was filed, a resident and citizen of the State of Arizona.  *See* MCLUHAN DECL. at ¶ 3 (Exhibit 6H).

Defendant employee Jill Guidry is, and was at the time this suit was filed, a resident and citizen of the State of Louisiana.[5]  *See* GUIDRY DECL. at ¶ 3 (Exhibit 6S).

Defendant employees Jacqueline Guerrero, Bob Davis, Jeanne L. Jalufka, Kyle M. Nelson, Jason D. Hahn, Robert G. Vial, Kathryn K. Truitt, Reynaldo Riojas, Francisco Meza, Jack Barineau, Erica Zeplin, Deborah Quinones, W. Lance Goodson, Keely Rodriguez, Leah Silva, Daniel Ponce, Celeste Escobar, Daniel Townsend, and Lynsey Adame (collectively referred to as the "detailers") were at the time this suit was filed, and are presently, residents and citizens of the State of Texas.  *See* PETITION at 2-4.  However, they are improperly joined in an attempt to prevent removal, and therefore, their citizenship is disregarded for purposes of determining diversity jurisdiction.  A non-diverse defendant is deemed to be improperly joined when there is no reasonable basis to predict that the plaintiff could establish a cause of action against that party in state court.  *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th

---

[5] In any event, Defendants McLuhan and Guidry are improperly joined and/or nominal parties for the same reasons discussed below with respect to the other detailers.

Cir. 2004) (en banc). As discussed below, there is no reasonable basis to predict that Plaintiffs could establish a claim against the in-state employee detailers named as defendants in this case.

**III.**

**The Detailer Defendants
Are Improperly Joined**

**A.    The improper joinder standard.**

The improper joinder doctrine prevents plaintiffs from defeating diversity jurisdiction simply by naming a defendant who shares a plaintiff's state citizenship. 28 U.S.C. § 1441(b) (providing for removal jurisdiction in diversity cases "if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought") (emphasis added); *see generally Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) ("The Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right."); *Legg*, 428 F.3d at 1320 (recognizing "common strategy" in pharmaceutical product liability actions of naming non-diverse local defendants against whom there is no legitimate claim in an effort to defeat pharmaceutical company's removal rights); *see also McKinney v. Bd. Of Md. Cmty. College*, 955 F.2d 924, 928 (4th Cir. 1992) ("Congress created the removal process to protect defendants. It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.").

Improper joinder is established by, *inter alia*, the "'inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)); *accord Boone v Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005). In other words, removal is appropriate and the citizenship of a non-diverse defendant is disregarded where "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. The Fifth Circuit has

emphasized that "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Id.* at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)). There must be a "*reasonable* basis" for predicting that the plaintiff might establish the non-diverse defendant's liability on the pleaded claims to warrant remand. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (emphasis added).

Further, merely pleading a cause of action against a non-diverse defendant is insufficient to show that the plaintiff has a reasonable possibility of recovery against that party. The court is authorized to look beyond the pleadings and engage in a summary judgment-type inquiry to determine whether improper joinder exists. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462-63 (5th Cir. 2003) ("For fraudulent joinder *vel non*, it is well established that the district court may 'pierce the pleadings' and consider summary judgment type evidence."); *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 389-90 (5th Cir. 2000) ("*Badon I*") ("[W]e have consistently recognized that diversity removal may be based on evidence outside the pleadings."); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 n.18 (5th Cir. 1995) (collecting cases that authorize court to look beyond pleadings); *Legg*, 60 F.3d at 1322-23 (holding that the district court committed legal error and abused its discretion in failing to consider undisputed affidavits submitted by detailers of defendant drug manufacturer in support of the removal of a product liability action).

B.    **The Plaintiffs' allegations.**

Whether removal to federal court is appropriate is determined "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Aside from listing the individual employee detailers in the "Parties" section of the Petition, Plaintiffs' *sole mention* of the detailers appears in the following two sentences:

The Sales Representative Defendants called on doctors and hospitals and were in the business of profiting from the design, manufacture, marketing, distribution,

8

and/or sales of the prescription drug BEXTRA®.  The Sales Representative Defendants were in a position to make representations about the risks associated with the use of BEXTRA®.

PETITION at 5-6.  The remainder of the Petition's allegations refers merely to "Defendants" generally, without pleading any specific factual support for a claim against any individual employee.[6]

### C.    Plaintiffs fail to state any viable claims against the detailer defendants.

#### 1.    *Any product-liability or breach of warranty-type claims cannot establish liability on behalf of the employee detailers.*

Plaintiffs' claims against the detailer employees fail as a matter of Texas substantive law.  For instance, Plaintiffs allege generally that "Defendants" are liable under product liability and breach of warranty theories.  *See* PETITION at 6-8, 10-11.  Assuming *arguendo* these allegations are directed at the individual Pfizer employees, they do not state a valid claim because the detailers are not "sellers" of the product in question.  Rather, the evidence establishes they simply are employees of the product's "seller" – which is Pfizer.  *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, *10 (E.D. Pa. July 6, 2004) ("While the product's 'seller' owes the consumer a duty to warn of a product's dangers, [the pharmaceutical manufacturer], and not the sales representatives, was the 'seller.'") (applying Texas law); *see also Gordon v. Pfizer Inc.*, No. CV-06-RRA-703-E, 2006 WL 2337002, at *7 (N.D. Ala. May 22, 2006) (holding that Pfizer's detailer's "affidavit constitutes affirmative proof . . . that he is not a

---

[6] In any event, these kinds of general allegations against "Defendants," without alleging any actionable facts specific to the detailers, do not state a claim against the in-state defendants sufficient to defeat diversity jurisdiction.  *See, e.g., Griggs*, 181 F.3d at 699 (affirming decision denying remand where state-court complaint did not allege actionable facts specific to non-diverse defendant).  Indeed, Plaintiffs do not specifically allege that any individual detailers ever called upon or communicated with them or with their prescribing physician.  This is an essential element of their causation case – the alleged acts of the employees must have caused or contributed to the plaintiff having taken the drug.  As set forth below, the employee defendants' declarations have negated that they ever communicated with Plaintiffs.  Thus, if they are to establish causation, Plaintiffs must show that the detailers caused the doctor to prescribe the drug, a necessary element of causation that they do not allege.  Nor do they allege that the prescribing physician relied on any representations from the named detailers when making his or her decision to prescribe the drug.  Indeed, Plaintiffs do not even *identify* the relevant health care provider.

'seller' or 'manufacturer.' To the contrary, he is simply a 'detailer' on behalf of his employer, Pfizer" and therefore is fraudulently joined); *DaCosta v. Novartis AG*, No. CV-01-800-BR, 2002 WL 31957424, *8 (D. Or. Mar. 1, 2002) (holding pharmaceutical detailers "merely an employee" of pharmaceutical company and was not strictly liable for drugs he promoted); *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160-61 (S.D. Miss. 1997) (holding there was no reasonable basis to predict state law would impose strict liability upon the employees of businesses who sell products to consumers; "Such employees are not 'in the business of selling products' but rather are employed by companies that are 'in the business of selling products for use or consumption.'") (quoting RESTATEMENT (SECOND) OF TORTS § 402(A) (1965)).

      **a.**     **The detailer employees are not "sellers" of prescription drugs under Texas law.**

Only the "seller" of a product may be held strictly liable under Texas law for injuries caused to the end-consumer. *See, e.g., Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (explaining that only those engaged in the business of designing, manufacturing or selling a product, or otherwise introducing the product into the channels of commerce, are subject to strict products liability); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex. 1978) (same). Likewise, only the "seller" is liable under a breach of warranty theory, *see, e.g., Klo-Zik Co. v. General Motors Corp.*, 677 F. Supp. 499, 507–08 (E.D. Tex. 1987) ("It is apparent that S&S does not qualify as a seller with regard to the trucks and may not be held on an implied warranty theory in that respect."); *Arceneaux v. Lykes Bros. Steamship Co., Inc.*, 890 S.W.2d 191, 196 n. 2 (Tex. App.—Beaumont 1994, writ denied) ("With respect to liability for breach of implied warranties, the fact that the product designer was not a seller of the product *is* dispositive. Implied warranties are given only by the actual sellers of products, not by others who have played some other role in the distribution of the product.") (emphasis in original), or under a 402B misrepresentation theory. *See* RESTATEMENT (SECOND) OF TORTS § 402B (1965);

*Crocker v. Winthrop Lab.*, 514 S.W.2d 429, 431 (Tex. 1974) (adopting § 402B and explaining that section applies to misrepresentation by "seller" of chattels).

A "seller" is one who is engaged in the business of distributing or otherwise placing the product into the stream of commerce. TEX. CIV. PRAC. & REM. CODE § 82.001(3) (defining "seller"); *see also Barajas*, 927 S.W.2d at 613; *Urquidez*, 570 S.W.2d at 375. Thus, it is not enough that a party simply was a link in the chain of distribution that ultimately placed the product in the hands of a consumer. *See, e.g., Cobb v. Dallas Fort Worth Med. Center-Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App.–Waco 2001, no pet.) (explaining that, for purposes of a strict liability claim, a hospital defendant was not "in the business" of selling transpedicular hardware used during surgical procedure; rather, product was connected with provision of medical services).

The evidence tendered with this removal establishes that the detailer defendants are not "sellers" of Bextra®. The detailers are *employees* of the business (Pfizer) that allegedly distributed the product in question. *See, e.g.,* GUERRERO DECL. ¶ 3 (Exhibit 6A). Their job simply was to "make the physician aware of certain of Pfizer's products. . . ." *Id.* They never personally sold the drug to health care professionals, pharmacies, or anyone else, and did not have any involvement in the design, manufacture, or testing of Bextra®. GUERRERO DECL. at ¶ 10 (Exhibit 6A); DAVIS DECL. at ¶ 10 (Exhibit 6B); JALUFKA DECL. at ¶ 11 (Exhibit 6C); NELSON DECL. at ¶ 11 (Exhibit 6D); HAHN DECL. at ¶ 11 (Exhibit 6E); VIAL DECL. at ¶ 11 (Exhibit 6F); TRUITT DECL. at ¶ 11 (Exhibit 6G); MCLUHAN DECL. at ¶ 12 (Exhibit 6H); RIOJAS DECL. at ¶ 11 (Exhibit 6I); MEZA DECL. at ¶ 4 (Exhibit 6J); BARINEAU DECL. at ¶ 3 (Exhibit 6K); ZEPLIN DECL. at ¶ 10 (Exhibit 6L); QUINONES DECL. at ¶ 8 (Exhibit 6M); GOODSON DECL. at ¶ 10 (Exhibit 6N); RODRIGUEZ DECL. at ¶ 10 (Exhibit 6O); SILVA DECL. at ¶ 10 (Exhibit 6P); PONCE DECL. at ¶ 10 (Exhibit 6Q); ESCOBAR DECL. at ¶ 10 (Exhibit 6R); GUIDRY DECL. at ¶ 12 (Exhibit

11

6S);  TOWNSEND DECL. at ¶ 10 (Exhibit 6T); ADAME DECL. at ¶ 10 (Exhibit 6U).  Further, it was Pfizer – their employer – that provided *all* of the information and material the field representatives used to "detail" Pfizer's drugs.  *See, e.g.,* GUERRERO DECL. at ¶ 5.

In short, the detailers are in the business of providing services to, and are agents of, their employer, which, in turn, is in the business of putting particular products into the stream of commerce.  *See, e.g., Gordon*, 2006 WL 2337002, at *7 (holding that Pfizer field representatives "are not considered to be sellers or suppliers of the prescription drugs they represent" but are "simply a 'detailer' on behalf of [their] employer."); *DaCosta*, 2002 WL 31957424, *8 (holding detailer was "merely an employee" of pharmaceutical company and was not strictly liable for drugs he promoted); *McCurtis*, 968 F. Supp. at 1160 (holding there was no reasonable basis to predict state law would impose strict liability upon the employees of businesses who sell products to consumers; "Such employees are not 'in the business of selling products' but rather are employed by companies that are 'in the business of selling products for use or consumption.'") (quoting RESTATEMENT (SECOND) OF TORTS § 402(A) (1965)); *see also Crocker v. Winthrop Lab.*, 514 S.W.2d 429, 430, 433 (Tex. 1974) (holding pharmaceutical company liable under 402B misrepresentation theory as "seller" of prescription drug based on representations by its employee-agent drug sales representative).  Even though the detailers' services might make information available to facilitate commercial distribution of Pfizer's products, they are not themselves subject to individual liability as the "seller" of their employer's prescription drugs.

Texas law is clear that service providers are not "sellers" under Texas law.  *See, e.g., Ames v. Ford Motor Co.*, 299 F. Supp. 2d 678, 679 (S.D. Tex. 2003); *Loyd v. ECO Resources, Inc.*, 956 S.W.2d 110, 133 (Tex. App.–Houston [14th Dist.] 1997, no writ); *Neavauex v. Park Place Hospital, Inc.*, 656 S.W.2d 923, 926 (Tex. App.–Beaumont 1983, writ ref'd n.r.e.).  Nor are entities that indirectly facilitate commercial distribution of a product, such as financing

companies and financing "lessors," considered "sellers" under Texas law. *See, e.g., Cole v. Elliot Equip. Corp.*, 653 F.2d 1031, 1034-35 (5th Cir. 1981); *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 498 (Tex. App.–San Antonio 2004, pet. denied); *Wynn v. Kensington Mortgage and Fin. Corp.*, 697 S.W.2d 47, 50 (Tex. App.–Austin 1985, no writ). These principles of Texas law have equal applicability here, where the detailers supply only services to their employer – the product's distributor – that might facilitate the product's distribution on behalf of the employer. *See Barajas*, 927 S.W.2d at 616 ("Imposition of strict liability demands more than an incidental role in the overall marketing program of the product.").

Furthermore, detailers have no ownership of or title to the drugs they promote, and Plaintiffs do not allege otherwise. The medications for which the detailers provide information are the company's, and it is the company that controls distribution into the stream of commerce. *Cf. FFE Transp. Serv. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004) (explaining that in providing refrigerated trailer to its contractor, company conferred "*only possession of the trailer, not a right of control*," and while in possession of the trailer, contractor "acted solely as [company's] agent to accomplish its business purpose.") (emphasis added); *Loyd*, 956 S.W.2d at 130 (stating that, under Texas law, "[t]he right of control is an important factor in determining the existence of a legal duty, and it is often the deciding factor.").

The Third Restatement makes the point more directly: "Persons assisting or providing services to product distributors, while indirectly facilitating commercial distribution of products, are not subject to liability under the rules of this Restatement." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 cmt. g (1998) (emphasis added). In particular, "[s]ales personnel" are excluded from the class of those who "sell[] or otherwise distribute[]" a product, and are not subject to strict products liability. *Id.*; *see also* AM. L. PROD. LIAB. 3D § 5.45 (1987) ("[T]he 'sellers' [for purposes of strict liability] are the businesses, not employees who act solely as

13

agents for their principals."). Although the Texas Supreme Court has not yet had occasion specifically to address section 20 or comment g, its rationale is consistent with Texas law, as discussed above. Moreover, as the Fifth Circuit has noted, "[t]he Texas Supreme Court has long looked to the Restatement of Torts as an influential guide in products liability law, and has recently heavily relied on the refinements in such law reflected in Restatement Third, Torts: Products Liability." *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 334 (5th Cir. 1998) (citing *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-89 (Tex. 1967); *Caterpillar Inc. v. Shears*, 911 S.W.2d 379, 381-83 (Tex. 1995); *Barajas*, 927 S.W.2d at 613, 616).[7]

For all of these reasons, Pfizer – and not any individual detailer – is deemed the "seller" of the drug. Because the detailers are not considered "sellers" of the prescription pharmaceutical product at issue, they are not liable to Plaintiffs under Texas product liability or breach of warranty laws. Indeed, to hold otherwise, and subject the individual employees to liability under such theories, would run contrary to the well-established notion that an agent is not subject to liability for torts committed by the agent's principal – "there is no principle of 'respondeat inferior.'" RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. d (2006); *see also Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (explaining "'individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.'") (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)). Consequently, there is no reasonable possibility Plaintiffs could recover against the detailers under these theories in state court.

---

[7] Since the publication of the Third Restatement, various Texas courts, including the Texas Supreme Court, have cited various provisions of the Third Restatement as authoritative. *See, e.g., Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 172 n.1, 2, 3, 183 n.23, 183 n.28, 185 n.41, 189 n.47, 191 n.52 (Tex. 2004) (citing §§ 2, 2 cmt. i, j; 6 cmt. B; 2(c)); *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 683 (Tex. 2004) (citing § 5); *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 n.9 (Tex. 1999) (citing § 2(b)); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 n.26 (Tex. 1999) (citing § 2 cmt. f); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 666-67 n.23 (Tex. 1999) (citing § 2 cmt. n); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998) (citing § 2(b)).

**b.    Even assuming the detailers could be considered "non-manufacturing sellers," the evidence establishes they are not liable to Plaintiffs.**

Even assuming *arguendo* that the detailers could be deemed "non-manufacturing sellers" under Texas law (and they cannot for the reasons stated above), as of 2003, Texas eliminated liability for "downstream" sellers who sold a product alleged to be defectively designed or manufactured by another except in very limited circumstances, none of which are applicable here. Section 82.003(a) of the Texas Civil Practice and Remedies Code, as amended, now states:

(a)    A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

(1)    that the seller participated in the design of the product;

(2)    that the seller altered or modified the product and the claimant's harm resulted from the alteration or modification;

(3)    that the seller installed the product, or had the product installed on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4)    that:

(A)    the seller exercised substantial control over the content of a warning or instruction that accompanied the product;

(B)    the warning or instruction was inadequate; and

(C)    the claimant's harm resulted from the inadequacy of the warning or instruction;

(5)    that:

(A)    the seller made an express factual representation about an aspect of the product;

(B)    the representation was incorrect;

(C)    the claimant relied on the representation in obtaining or using the product; and

(D)    if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6)    that:

(A)    the seller actually knew of a defect to the product at the time the seller supplied the product; and

(B)    the claimant's harm resulted from the defect; or

(7)    that the manufacturer of the product is:

(A)    insolvent; or

(B)    not subject to the jurisdiction of the court.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003 (Vernon 2005). Plaintiffs do not allege that the detailers could be held liable under subsections (2), (3), or (7) of the statute. Further, Pfizer's

evidence establishes that none of the other four possible exceptions – subsections (1), (4), (5), and (6) – apply here with regard to the named representatives who detailed Bextra®. The detailers had no involvement in the design of Bextra® (as required by (1)); no control over content of the package inserts or other written warnings (as required by (4)); made no representations about Bextra® to Plaintiffs (as required by (5)); and had no knowledge that the product was defective and did not "supply" the product to Plaintiff (as required by (6)). *See* GUERRERO DECL. at ¶¶ 5, 8-12 (Exhibit 6A); DAVIS DECL. at ¶¶ 5, 8-12 (Exhibit 6B); JALUFKA DECL. at ¶¶ 6, 9-13 (Exhibit 6C); NELSON DECL. at ¶¶ 6, 9-13 (Exhibit 6D); HAHN DECL. at ¶ 6, 9-12 (Exhibit 6E); VIAL DECL. at ¶¶ 6, 9-12 (Exhibit 6F); TRUITT DECL. at ¶¶ 6, 9-12 (Exhibit 6G); MCLUHAN DECL. at ¶¶ 7, 10-14 (Exhibit 6H);  RIOJAS DECL. at ¶¶ 6, 9-13 (Exhibit 6I); ZEPLIN DECL. at ¶¶ 5, 8-11 (Exhibit 6L); QUINONES DECL. at ¶¶ 4, 7-10 (Exhibit 6M); GOODSON DECL. at ¶¶ 5, 8-11 (Exhibit 6N); RODRIGUEZ DECL. at ¶¶ 5, 8-12 (Exhibit 6O); SILVA DECL. at ¶¶ 5, 8-12 (Exhibit 6P); PONCE DECL. at ¶ 5, 8-12 (Exhibit 6Q); ESCOBAR DECL. at ¶¶ 5, 8-12 (Exhibit 6R); GUIDRY DECL. at ¶¶ 7, 10-14 (Exhibit 6S);  TOWNSEND DECL. at ¶¶ 5, 8-12 (Exhibit 6T); ADAME DECL. at ¶¶ 5, 8-12 (Exhibit 6U).  Thus, again, there is no reasonable possibility Plaintiffs could establish a claim against them in state court.  *See, e.g., Garcia v. Nissan Mtr. Co., Ltd.*, No. M-05-59, 2006 WL 869944, *4 (S.D. Tex. Mar. 30, 2006) (holding that undisputed declaration from non-diverse defendant establishing it lacked knowledge of defect that potentially could make it liable under § 83.002(a)(6) demonstrated improper joinder).

### 2.  *Plaintiffs' failure-to-warn and misrepresentation claims also do not state cognizable claims against the detailers under Texas law.*

Although vaguely drafted, the gist of Plaintiff's complaint against the detailers appears to be that they passed along – and did not correct – allegedly incorrect information provided by Pfizer regarding the safety and risk profile of Bextra® to unidentified health care providers.  *See, e.g.,* PETITION 5-6 (stating that detailer defendants "called on doctors and hospitals" regarding

16

Bextra® and "were in a position to make representations about the risks" associated with use of that drug). These allegations fail to state viable claims under Texas law because they are based on the mistaken premise that the Pfizer representatives *individually* owed physicians (and patients) a duty to warn about risks of taking Bextra®. It is Pfizer – the seller of Bextra® – that owed a duty to warn prescribing physicians of known or foreseeable side effects associated with that drug.[8] Pfizer contends that it fulfilled this duty, but even if it did not, the detailer employees are not personally liable for Pfizer's failure to warn. Employees do not assume individual, personal liability in the absence of an independent duty merely by participating in their employer's alleged failure to provide adequate information about its products. "'[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty,'" *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)), or when the agent knowingly participates in fraudulent or tortious conduct. *See Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied).

The duty to warn is owed by the product's "seller." *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 305 (Tex. App. – Houston [1st Dist.] 1999, pet. denied). As discussed above, however, the detailers are not "sellers" of Bextra® under Texas law, and owe no independent duty to warn apart from that owed by their employer. *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, *10 (E.D. Pa. July 6, 2004) ("While the product's 'seller' owes the consumer a duty to warn of a product's dangers, [the pharmaceutical manufacturer], and not the

---

[8] The learned intermediary doctrine establishes that Pfizer's duty is to communicate appropriate warnings to the prescribing physician; Pfizer had no duty to warn patients directly. *See, e.g., Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 91 (Tex. App. – Texarkana 2000, no pet.). Although Pfizer contends the detailer defendants owed no duty to warn, even if they did owe such a duty, the learned intermediary doctrine would apply to them as well. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 288-90 (S.D.N.Y. 2001) (extending learned intermediary doctrine to detailers under Mississippi law); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000) ( same).

sales representatives, was the 'seller.' . . . . Accordingly, the sales representatives owed no independent duty to warn under Texas law."); *see also, e.g., In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) ("[S]ales representatives are not considered 'sellers' under Mississippi law, but rather, employees of the businesses who are sellers.").

Indeed, pharmaceutical detailers cannot possibly owe an individual duty to warn. They have no control over the content of the FDA-approved (and FDA-mandated) package insert or other written warnings supplied to health care providers by Pfizer. *See, e.g.,* GUERRERO DECL. at ¶ 4 (Exhibit 6A). Even assuming, *arguendo*, that a detailer could be responsible for giving oral warnings, this would require unfettered, personal access to physicians, which detailers lack – some physicians refuse to meet with detailers at all; others meet with them for less than ten minutes. *Id.* at ¶ 3. Imposing on detailers an individual duty to warn would require them to spend their brief visits – assuming they even got one – reiterating every known side effect contained in the product's FDA-approved labeling in order to avoid practically unlimited personal liability. Moreover, it makes no sense to make a non-physician detailer personally liable for failing to give oral warnings to a medically-trained professional about a prescription drug that is exhaustively described in FDA-approved prescribing information in an FDA-approved format. For the reasons discussed above, Texas law does not require this absurd result.

 Numerous Texas federal courts have held that prescription drug users have no reasonable possibility of establishing the personal liability of individual detailers based on these theories and have found that they are improperly joined in an action against their employer, the manufacturer. Even prior to the creation of MDL-1699, the late Judge Howell Cobb issued four different orders in the Celebrex®/Bextra® litigation finding improper joinder in cases removed to the Eastern District of Texas based on virtually identical allegations. *See Hebert v. Pfizer Inc.*, No. 1:05-CV-418-HC, slip op. at 1-2 (E.D. Tex. Aug. 18, 2005) (Exhibit 7A); *Pickens v. Pfizer Inc.*, No. 1:05-

CV-528-HC, slip op. at 1-2 (E.D. Tex. Aug. 18, 2005) (Exhibit 7B); *Knight v. Pfizer Inc.*, No. 1:05-CV-529-HC, slip op. at 1-2 (E.D. Tex. Aug. 17, 2005) (Exhibit 7C); *Boudreaux v. Pfizer Inc.*, No. 1:05-CV-369-HC, slip op. at 1-2 (E.D. Tex. July 17, 2005) (Exhibit 7D).

Other Texas federal courts also have found that no viable claim existed against individual detailers when faced with substantially similar issues of improper joinder.  *See, e.g., Budd v. Wyeth*, Case No. A-03-CA-465-SS, slip op. at 6 (W.D. Tex. Sept. 17, 2003) (Sparks, J.) ("[B]ecause the detailers do not have duty to research and ensure the safety [sic] fen-phen separate from Wyeth's duty, [plaintiff] does not have a reasonable possibility of success on her misrepresentation claims against the detailers under Texas law.") (Exhibit 7E); *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004) (Cummings, J.) (concluding that, under Texas law, plaintiff had "no reasonable possibility of success on any claims for negligence on the part of [Wyeth's] sales representatives.") (Exhibit 7F); *Northcutt v. Wyeth*, No. H-03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003) (Rosenthal, J.) ("There is no allegation nor presentation of any facts that would create an independent duty owing from these individual employees to Northcutt, apart from the duty owing by Wyeth, that was violated.") (Exhibit 7G); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D. Tex. Sept. 5, 2003) (Smith, Jr., J.) ("Plaintiffs have identified no duty under Texas law which either Defendant owed to Plaintiffs or violated.") (Exhibit 7H); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004) (Hoyt, J.) ("The Court is of the opinion that these sales representatives cannot warrant or make representations about pharmaceutical products that would override the disclosure that is required of and made by the manufacturer of the drugs.") (Exhibit 7I).  The detailer employees named in this case likewise are improperly joined.

Any negligent misrepresentation claim fails for an additional reason.  To recover for negligent misrepresentation, a plaintiff actually must have received and relied upon the alleged

misrepresentation. *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 396 (Tex. App. – Amarillo 2000, no pet.). Plaintiffs have not alleged that the detailers made any representations regarding Bextra® directly to them. Indeed, the detailers' declarations confirm they did not.[9] Nor have Plaintiffs even alleged that the detailers made any alleged misrepresentations to the prescribing doctor that the doctor passed along to them. But Plaintiffs could not recover from the detailers as an "indirect recipient" of a misrepresentation in any event. Texas has adopted Section 552 of the Restatement (Second) of Torts, which limits liability for negligent misrepresentation to "the person or one of a limited group of persons for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it[.]" RESTATEMENT (SECOND) OF TORTS § 552(2)(a) (1977); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting Section 552). As interpreted by Texas courts, "the Restatement requires actual knowledge of the recipient's identity and a specific intent on the part of the alleged tortfeasor that the claimant would rely on the misrepresentation." *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 696 (Tex. App.–Eastland 2002, no pet.). Even a claim for fraud requires that the defendant intend that the plaintiff receive and rely upon the allegedly false communication. *Great Plains Trust Co.*, 313 F.3d at 322. Plaintiffs have not alleged (and cannot seriously contend) that the detailers were aware of their specific identities, much less that they made representations to their physician with the specific intent that they be repeated to, and relied upon by them.

---

[9] *See* GUERRERO DECL. at ¶ 8 (Exhibit 6A); DAVIS DECL. at ¶ 8 (Exhibit 6B); JALUFKA DECL. at ¶ 9 (Exhibit 6C); NELSON DECL. at ¶ 9 (Exhibit 6D); HAHN DECL. at ¶ 9 (Exhibit 6E); VIAL DECL. at ¶ 9 (Exhibit 6F); TRUITT DECL. at ¶ 9 (Exhibit 6G); MCLUHAN DECL. at ¶ 10 (Exhibit 6H); RIOJAS DECL. at ¶ 9 (Exhibit 6I); MEZA DECL. at ¶ 4 (Exhibit 6J); BARINEAU DECL. at ¶ 3 (Exhibit 6K); ZEPLIN DECL. at ¶ 8 (Exhibit 6L); QUINONES DECL. at ¶ 9 (Exhibit 6M); GOODSON DECL. at ¶ 8 (Exhibit 6N); RODRIGUEZ DECL. at ¶ 8 (Exhibit 6O); SILVA DECL. at ¶ 8 (Exhibit 6P); PONCE DECL. at ¶ 8 (Exhibit 6Q); ESCOBAR DECL. at ¶ 8 (Exhibit 6R); GUIDRY DECL. at ¶ 10 (Exhibit 6S); TOWNSEND DECL. at ¶ 8 (Exhibit 6T); ADAME DECL. at ¶ 8 (Exhibit 6U).

Finally, even if Plaintiffs could recover from the detailers for any statements they made to Plaintiffs' doctor, they do not allege that the doctor relied on them. This is an essential element of their causation case – the alleged acts of the employees must have caused or contributed to the plaintiff having taken the drug. Thus, if they are to establish causation, Plaintiffs must allege (and show) that the detailers caused the doctor to prescribe the drug. Plaintiffs' omission of this causation element alone is fatal to their misrepresentation claim against the detailers. *See LaRue v. GeneScreen, Inc.*, 957 S.W.2d 958, 962 (Tex. App.—Beaumont 1997, writ denied) (affirming trial court's dismissal of negligent misrepresentation claim where plaintiff failed to plead reliance); *see also In re Rezulin*, 133 F. Supp. 2d at 283 (holding defendant detailers fraudulently joined under misrepresentation theory where plaintiffs failed to plead scienter or time and place of alleged misrepresentations).

**3.    *Any allegation of "knowing" misrepresentation or fraud against the local defendants also is rebutted by the detailers' sworn declarations.***

The detailers also are improperly joined because any allegation of "knowing" misconduct – and there is none – is rebutted by Pfizer's proof. The detailers' sworn declarations are clear that they "never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient" and "never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user."[10] GUERRERO DECL. at ¶ 12 (Exhibit 6A); DAVIS DECL. at ¶ 12 (Exhibit 6B); JALUFKA DECL. at ¶ 13 (Exhibit 6C); NELSON DECL. at ¶ 13 (Exhibit 6D); HAHN DECL. at ¶ 12 (Exhibit 6E); VIAL DECL. at ¶ 12 (Exhibit 6F); TRUITT DECL. at ¶ 12 (Exhibit 6G); RIOJAS DECL. at ¶ 13 (Exhibit 6I); ZEPLIN DECL. at ¶ 11 (Exhibit 6L); QUINONES DECL. at ¶ 10 (Exhibit 6M); GOODSON DECL. at ¶ 11 (Exhibit 6N); RODRIGUEZ DECL.

---

[10] Two of the detailers named by Plaintiffs never marketed, distributed, sold, or promoted Bextra®. *See* DECLARATION OF FRANCISCO MEZA ("MEZA DECL.") ¶ 4 (Exhibit 6J); DECLARATION OF JACK BARINEAU ("BARINEAU DECL.") ¶ 3 (Exhibit 6K). Neither defendant ever called on a single physician or health care provider regarding that drug. *Id.*

at ¶ 12 (Exhibit 6O); SILVA DECL. at ¶ 12 (Exhibit 6P); PONCE DECL. at ¶ 12 (Exhibit 6Q); ESCOBAR DECL. at ¶ 12 (Exhibit 6R); TOWNSEND DECL. at ¶ 12 (Exhibit 6T); ADAME DECL. at ¶ 12 (Exhibit 6U). Indeed, all of the information and material the representatives used to detail Pfizer's drugs was derived exclusively from the education provided to them by Pfizer. *See, e.g.,* GUERRERO DECL. at ¶ 5[11] (Exhibit 6A). They did not, as field representatives, conduct independent research regarding the drugs they detailed. *Id.* at ¶ 6. They have no knowledge that any of the information provided to them by Pfizer about Bextra® is incorrect. *Id.* at ¶ 9.

The detailers' declarations negate any allegation that they knowingly participated in any tortious conduct. When presented with similar proof, Texas federal courts have held that it established that the individual pharmaceutical representatives were improperly joined. *See, e.g., Kollman v. Wyeth*, No. A-04-CA-034-SS, slip op. at (W.D. Tex. Mar. 15, 2004) (holding non-diverse detailer defendant fraudulently joined where removing defendant had negated the facts that might form the basis for a state law claim against the detailer) (Exhibit 7J); *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7-8 (N.D. Tex. Feb. 17, 2004) (holding that plaintiff's fraud and misrepresentation claims were rebutted by declarations from non-diverse detailers and that those defendants were fraudulently joined) (Exhibit 7F); *Nightingale v. Wyeth, Inc.*, No. W-03-CA-203, slip op. at 3 (W.D. Tex. Sept. 5, 2003) (holding non-diverse detailer defendants fraudulently joined where plaintiffs had not presented anything to refute those defendants' sworn testimony that no misrepresentations were made regarding the uses of the drugs in question) (Exhibit 7H). Other federal courts have agreed. *See, e.g., Legg v. Wyeth*, 428 F.3d 1317, 1323-24 (11th Cir. 2005) (concluding that there was no reasonable possibility of recovery against nondiverse detailer where detailer had submitted sworn statement refuting plaintiff's claims and plaintiff had not provided any contrary evidence); *McCluskey v. Merck & Co., Inc.*, No. 07-AR-0232-S, slip

---

[11] All of the non-diverse representatives who detailed Bextra® have attested to these same facts in their declarations.

op. at 11-13 (N.D. Ala. Mar. 7, 2007) (holding allegations of fraud and fraudulent misrepresentation rebutted by Pfizer detailers' uncontested declarations) (Exhibit 7K); *Gordon*, 2006 WL 2337002, at *7 (same); *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20765, 2004 WL 1824357, *4 (E.D. Pa. Aug. 12, 2004) (holding that allegations of knowing participation in fraudulent or tortious conduct were rebutted by non-diverse detailer defendants' sworn testimony); *Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRD (M.D. Fla. May 17, 2004) (magistrate's report and recommendation), *adopted by Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRJ (M.D. Fla. June 24, 2004) (holding that plaintiff's fraud claim against non-diverse detailers did not defeat removal where allegations of fraud were rebutted by uncontested affidavits of detailers) (Exhibit 7L).

> **D.    Further, Plaintiffs' conclusory allegations against the detailers, unsupported by any specific factual basis, are insufficient to state a claim against those defendants.**

"[P]leadings matter when fraudulent joinder . . . issues are decided." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 328 (5th Cir. 2002). Indeed, the United States Supreme Court recently emphasized that ordinary pleading rules "require[] a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 n.3 (May 21, 2007) (addressing FED. R. CIV. P. 8). Thus, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65.

In keeping with these principles, "[c]onclusory allegations, wholly lacking in specific factual support" are insufficient to defeat an improper joinder removal. *Jernigan v. Ashland Oil*

*Co.*, 989 F.2d 812, 817 (5th Cir. 1993); *see also Great Plains Trust Co.*, 313 F.3d at 313 (stating that Fifth Circuit, in undertaking an improper joinder inquiry, "will not . . . 'accept as true conclusory allegations or unwarranted deductions of fact.'") (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "Failure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party." *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) (citing *Doe v. Cloverleaf Mall*, 829 F. Supp. 866, 870 (S.D. Miss. 1993)); *see also Kyger v. Veravest Investments, Inc.*, No. 4:04-CV-94-A, 2004 WL 1043111, *2 (N.D. Tex. May 6, 2004) ("Speculative and conclusory allegations do not state a cause of action without factual support. Fraudulent joinder will be found where a plaintiff has failed to plead any specific acts of negligence against the non-diverse defendant.") (citations omitted); *Staples v. Merck & Co.*, 270 F. Supp. 2d 833, (N.D. Tex. 2003) ("[W]hen plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted.") (citation omitted); *Hernandez Castellanos v. Bridgestone Corp.*, 215 F. Supp. 2d 862, 864-65 (S.D. Tex. 2002) (concluding that terse, conclusory allegation of negligence against non-diverse defendant without any supporting factual allegations did not defeat removal); *Addison v. Allstate Ins. Co.*, 58 F. Supp. 2d 729, 732-33 (S.D. Miss. 1999) (concluding non-diverse defendant was fraudulently joined where plaintiff failed to allege any factual basis for claim of liability); *see also* FED. R. CIV. P. 9(b) (requiring averments of fraud to be pled with particularity).

Plaintiffs' Petition does not allege *any* case-specific fact supporting a claim against the detailers. For instance, Plaintiffs do not identify *a single doctor* whom the detailers purportedly misled, much less identify *where or when* such misrepresentations took place, the specific content of the representations, or how they caused their alleged injuries. Absent specific

allegations tying the detailer employees to their claims, there is no reasonable basis to predict that Plaintiffs could recover against them under Texas law.  *Cf. Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d 833, 840-41 (N.D. Tex. 2003) ("In general, Plaintiffs cannot assert merely speculative and conclusory allegations in order to sustain a valid negligent misrepresentation claim.") (citation omitted); *Sohmer v. American Medical Security, Inc.*, No. 3:02-CV-1680, 2002 WL 31323763, *2-3 (N.D. Tex. Oct. 15, 2002) (concluding that speculative and conclusory allegations of negligent misrepresentation did not support a cause of action against non-diverse insurance agency and finding agency fraudulently joined).

Plaintiffs' allegations are so devoid of specific fact, it is impossible even to tell how they are connected to the detailer defendants.  For instance, as noted above, Plaintiffs do not identify the physician who allegedly prescribed the drugs.  Under virtually identical circumstances, U.S. Magistrate Judge Dennis Green, of the Western District of Texas, recognized that this omission warrants a finding of improper joinder:

> First, as for all of Plaintiff's causes of action, she has failed to demonstrate the proper connection between Plaintiff and the detail representatives.  Under Texas law, Plaintiff's complaint "must at least provide sufficient factual information that the defendant is able to prepare a defense."  How can the detail representatives prepare for a defense in this case without the name of Plaintiff's physician?

U.S. Magistrate's Report and Recommendation, *Moffett v. Wyeth*, No. DR-03-CV-069, slip op. at 4 (W.D. Tex. Dec. 17, 2003) (internal citation omitted) (Exhibit 7M).  The Court therefore held that "[b]ecause Plaintiff has failed to give sufficient factual information so that Defendant can prepare for a defense, a finding of fraudulent joinder is warranted."[12]  *Id.*  A similar conclusion also recently was reached by Judge Hilda G. Tagle in a removed case pending in the Southern District of Texas, Brownsville Division.  *See Morrow v. Wyeth*, No. B-05-209, 2005 WL

---

[12]   The District Court in *Moffett* elected to stay the case in order to permit the MDL court to resolve the jurisdictional issues; it consequently chose not to adopt the magistrate judge's report and recommendation.  The MDL Court subsequently denied the plaintiff's remand motion after transfer.  *See Moffett v. Wyeth*, No. 04-20181, slip op. (E.D. Pa. Sept. 10, 2004) (PTO 3925).

2621555, at *5 (S.D. Tex. Oct. 13, 2005).  Plaintiffs here likewise have failed to give sufficient information to demonstrate a connection between themselves and the detailers, warranting a finding of improper joinder.

## IV.

## Amount in Controversy

The amount-in-controversy requirement of 28 U.S.C. § 1332(a) is plainly satisfied. Plaintiffs allege that, as a result of ingesting Bextra®, Laurine Kreitz sustained serious and permanent injuries.  PETITION at 1.  They are seeking unlimited compensatory damages for, *inter alia*, physical pain and mental anguish, medical expenses, and loss of consortium.  *Id.* at 12. They also seek unlimited punitive damages for Pfizer's alleged "gross negligence."  *Id.* at 11.  It is facially apparent from the petition that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of interest and costs.  *See, e.g., De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (stating that where it is "facially apparent" from the state-court petition that the amount in controversy exceeds the jurisdictional minimum, then the defendant need only point such fact out to successfully bear its burden ); *see also Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (concluding that district court did not err in finding that personal injury claims exceeded $75,000 where the claimant alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization."); *Morrow v. Wyeth*, No. B-05-209, 2005 WL 2621555, *3 (S.D. Tex. Oct. 13, 2005) (unpublished) (concluding that amount-in-controversy was satisfied in pharmaceutical product liability case where plaintiff alleged "severe injuries," including "serious injuries to his central nervous system"); *Matney v. Wenger Corp.*, 957 F. Supp. 942, 943 (S.D. Tex. 1997) (holding that a products liability complaint asserting

claims for personal injury, past and future medical expenses, mental anguish, and exemplary damages met the amount-in-controversy threshold).

## V.

### Consent to Removal

The detailer defendants are improperly joined in an attempt to defeat diversity and prevent removal.  Consequently, their consent is not required for removal.  *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Farias v. Bexar Co. Bd. of Trustees*, 925 F.2d 866, 871 (5th Cir. 1991).  In any event, those detailers who have been served at the time of removal (Defendants Jalufka, Vial, Zeplin, Goodson, and Adame) consent to removal of this cause to this Court.  *See Nixon v. Wheatley*, 368 F. Supp. 2d 635, 639 (E.D. Tex. 2005) (holding that statement in notice of removal that defendants, who were represented by the same counsel, joined the removal was sufficient to satisfy unanimity requirement).  The consent of the unserved defendants is not required.  *Getty Oil Corp. v. Ins. Co. of North Am.*, 841 F.2d 1254, 1262 n.9 (5th Cir. 1988).

## VI.

### Removal is Timely

Pfizer is the only properly joined defendant in this case, and all other defendants, as discussed above, are improperly joined.  Pfizer was first served with citation on May 7, 2007, less than 30 days before its Notice of Removal is being filed.  Accordingly, this removal is timely.  *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999).

## VII.

### Proper Court for Removal

The United States District Court for the Southern District of Texas, Corpus Christi Division, embraces Aransas County, the county in which the state court action is now pending. *See* 28 U.S.C. § 124(b)(6). Thus, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

## VIII.

### Conclusion

Upon filing of this Notice of the removal of this cause, written notice of the filing is being given by Defendant to Plaintiffs and counsel, and is being filed with the Clerk of the state court in which this cause was originally filed, as required by 28 U.S.C. § 1446(d). A copy of those notices with proof of service of them is attached hereto as Exhibits 2(J) and 2(K).

WHEREFORE, Defendant Pfizer hereby removes the above-styled action pending against it in the 36th Judicial District Court of Aransas County, Texas, to this Honorable Court.

Respectfully submitted,

*/s/ Kenneth J. Ferguson*_____
Kenneth J. Ferguson
Attorney-in-charge
State Bar No. 06918100
Southern District I.D. No. 12703
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]
E-mail: kjf@ctw.com

*signed with permission by Leslie A. Benitez

28

**OF COUNSEL:**
Leslie A. Benitez
State Bar No. 02134300
Southern District I.D. No. 10017
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
Southern District I.D. No. 25675
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
Southern District I.D. No. 26762
E-mail: ah1@ctw.com
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]

**ATTORNEYS FOR DEFENDANTS**
**PFIZER INC., JEANNE L. JALUFKA,**
**ROBERT G. VIAL, ERICA ZEPLIN,**
**W. LANCE GOODSON,**
**AND LYNSEY ADAME**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on the 1st day of June, 2007, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D). Service on those parties who are not known to be users of the electronic filing system of the Southern District of Texas was accomplished in the manner listed below on June 1, 2007.

***Via Certified Mail/Return Receipt Requested***

Kathryn Snapka
Greg W. Turman
Richard B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78476
***Attorneys for Plaintiffs***

_____/s/ Leslie A. Benitez_____

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

See Attached.

**DEFENDANTS**

See Attached.

**(b)** County of Residence of First Listed Plaintiff    Aransas County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**©)** Attorney's (Firm Name, Address, and Telephone Number)

See Attached

Attorneys (If Known)

See Attached.

## II. BASIS OF JURISDICTION     (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

X   4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT     (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | X 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893  Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN     (Place an "X" in One Box Only)

☐ 1  Original
Proceeding

X 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. § 1332 (Diversity of citizenship between citizens of different states where amount in controversy exceeds $75,000)

Brief description of cause:
Product liability/Personal Injury action involving prescription drug Bextra®

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

June 1, 2007

SIGNATURE OF ATTORNEY OF RECORD

*/s/ Kenneth J. Ferguson (signed with permission by Leslie A. Benitez)*

**FOR OFFICE USE ONLY**

RECEIPT #              AMOUNT                      APPLYING IFP                      JUDGE                      MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

© Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example:     U.S. Civil Statute: 47 USC 553
                                                                                                    Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## LIST OF PARTIES AND ATTORNEYS

**I. (a) <u>Plaintiffs</u>**

Laurine Kreitz
John C. Kreitz

**<u>Defendants</u>**

Pfizer Inc. [incorrectly named as "Pfizer, Inc."]
Jacqueline Guerrero
Bob Davis
Jeanne Jalufka
Kyle M. Nelson
Jason D. Hahn
Robert G. Vial
Kathryn K. Truitt
Kari A. McLuhan
Reynaldo Riojas
Francisco Meza
Jack Barineau
Erica Zeplin
Deborah Quinones
W. Lance Goodson
Keely Rodriguez
Leah Silva
Daniel Ponce
Celeste Escobar
Jill Guidry
Daniel Townsend
Lynsey Adame

**I. (c) <u>LIST OF ATTORNEYS</u>**

**ATTORNEYS FOR PLAINTIFF**
Kathryn Snapka
State Bar No. 18781200
Greg W. Turman
State Bar No. 00785123
Rick B. Waterhouse, Jr.
State Bar No. 00788624
Aditi Anita Shahani
State Bar No. 24041898
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
(361) 888-7676
(361) 884-8545 (Fax)

**ATTORNEYS FOR DEFENDANTS PFIZER INC., JEANNE L. JALUFKA, ROBERT G. VIAL, ERICA ZEPLIN, W. LANCE GOODSON, and LYNSEY ADAME**

Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
Southern District I.D. No. 12703
Leslie A. Benitez
State Bar No. 02134300
Southern District I.D. No. 10017
Kelly R. Kimbrough
State Bar No. 00794984
Southern District I.D No. 25675
J. Andrew Hutton
State Bar No. 24012878
Southern District I.D No. 26762
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 (Fax)


**ATTORNEYS FOR ALL OTHER DEFENDANTS**
Unknown at this time

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and | § | |
| JOHN C. KREITZ, | § | |
| | § | CIVIL ACTION NO. C-07-242 |
| Plaintiffs, | § | |
| | § | JURY REQUESTED |
| v. | § | |
| | § | *Pending Transfer to MDL-1699* |
| PFIZER, INC., ET AL., | § | *(In re Bextra and Celebrex Marketing,* |
| | § | *Sales Practices and Prods. Liab. Litig.)* |
| Defendants. | § | |

## EXHIBITS TO DEFENDANT PFIZER INC.'S NOTICE OF REMOVAL

EXHIBIT 1    List of All Parties & Status of Case

EXHIBIT 2    Certified copy of state court docket sheet and copy of state court file

EXHIBIT 3    List of Attorneys

EXHIBIT 4    Record of Parties Requesting Trial by Jury

EXHIBIT 5    State Court Information

EXHIBIT 6    Declaration Evidence Cited in Notice of Removal

EXHIBIT 7    Unpublished District Court Orders Cited in Notice of Removal

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ, | §<br>§<br>§ | CIVIL ACTION NO. _____ |
| Plaintiffs, | §<br>§ | JURY REQUESTED |
| v. | §<br>§ | *Pending Transfer to MDL-1699* |
| PFIZER, INC., ET AL., | §<br>§ | *(In re Bextra and Celebrex Marketing,*<br>*Sales Practices and Prods. Liab. Litig.)* |
| Defendants. | § | |

## LIST OF ALL PARTIES & STATUS OF CASE

### Status of Case

The above referenced matter currently is pending in the 36th Judicial District Court of Aransas County, Texas, styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, Cause No. A-07-0075-CV-A.

### Plaintiffs

Laurine Kreitz
John C. Kreitz

### Defendants

Pfizer Inc. [incorrectly named as "Pfizer, Inc."]
Jacqueline Guerrero
Bob Davis
Jeanne L. Jalufka
Kyle M. Nelson
Jason D. Hahn
Robert G. Vial
Kathryn K. Truitt
Kari A. McLuhan
Reynaldo Riojas
Francisco Meza
Jack Barineau
Erica Zeplin
Deborah Quinones
W. Lance Goodson
Keely Rodriguez
Leah Silva

**<u>Defendants (cont.)</u>**

Daniel Ponce
Celeste Escobar
Jill Guidry
Daniel Townsend
Lynsey Adame

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LAURINE KREITZ and         §
JOHN C. KREITZ,                 §
                          §     CIVIL ACTION NO. _____
        Plaintiffs,        §
                          §     JURY REQUESTED
v.                        §
                          §     *Pending Transfer to MDL-1699*
PFIZER, INC., ET AL.,       §     *(In re Bextra and Celebrex Marketing,*
                          §     *Sales Practices and Prods. Liab. Litig.)*
        Defendants.      §

## INDEX OF STATE COURT PLEADINGS

A.     Certified Copy of Docket Sheet

B.     Plaintiffs' Original Petition

C.     Citations

D.     Defendant Pfizer Inc.'s Motion to Transfer Venue and, Subject Thereto, Original Answer

E.     Defendant W. Lance Goodson's Motion to Transfer Venue and, Subject Thereto, Original Answer

F.     Defendant Robert G. Vial's Motion to Transfer Venue and, Subject Thereto, Original Answer

G.     Defendant Lynsey Adame's Motion to Transfer Venue and, Subject Thereto, Original Answer

H.     Defendant Jeanne L. Jalufka's Motion to Transfer Venue and, Subject Thereto, Original Answer

I.     Defendant Erica Zeplin's Motion to Transfer Venue and, Subject Thereto, Original Answer

J.     Notice to Plaintiffs of Filing Notice of Removal

K.     Notice to State Court of Filing Notice of Removal

EXHIBIT 2(A)

CASE NO. A-07-0075-CV-A

# CIVIL DOCKET

S/M Inc., Dallas 1-800-648-7022

| NUMBER OF CASE | STYLE OF CASE | ATTORNEYS | KIND OF ACTION | DATE OF FILING | | |
|---|---|---|---|---|---|---|
| | | | | Month | Day | Year |
| A-07-0075-CV-A | Laurie Kreig et al | Kathryn Angele | Suit for Damage | 4 | 9 | 07 |
| | | Plaintiff. | | | | |
| | VS | | | Jury Demanded by | | |
| | Pfizer, Inc. et al | | | Jury Fee, $ | | |
| | | Defendant. | | Paid by | | |

| | | | | Minute Book | |
|---|---|---|---|---|---|
| | | | | Vol. | Page |

PROCESS

| FEE BOOK | |
|---|---|
| Vol. | Page |

| DATE OF ORDERS | | |
|---|---|---|
| Mo. | Day | Year |

ORDERS OF COURT

STATE OF TEXAS
COUNTY OF ARANSAS
Pam Heard, District Clerk of Aransas County, Texas, do hereby certify that the foregoing is a true, correct and complete copy of the instrument herewith as it appears of record in the District Clerk's office of Aransas County, Texas, this 8 day of may, 20 07.
PAM HEARD, DISTRICT CLERK
Aransas County, Texas

By Jamie Smith , Deputy

CAUSE NO. *A-07-0075-CV-A*

*Laurine Kreitz et al*      VS  *Pfizer Inc et al*

| INSTRUMENT | ATTORNEY | FILED |
|---|---|---|
| *Orig Petition* | | *4-9-07* |
| *Cover Letter* | | *4-9-07* |
| *Cover Letter* | | *4-25-07* |
| *16- Citations Issued via Atty* | | ✓ |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

STATE OF TEXAS
COUNTY OF ARANSAS
Pam Heard, District Clerk of Aransas County, Texas, do here-
by certify that the foregoing is a true, correct and complete
copy of the instrument herewith as it appears of record in the
District Clerk's office of Aransas
County, Texas, this __8__ day of __May__, 20_07_.
PAM HEARD, DISTRICT CLERK
Aransas County, Texas
By __Jessie Pruitt__, Deputy

# EXHIBIT 2(B)

CAUSE NO. *A-07-0075-CV-A*

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ | §<br>§ | IN THE DISTRICT COURT |
| | § | |
| VS. | §<br>§ | *36*th JUDICIAL DISTRICT |
| | § | |
| PFIZER, INC., JACQUELINE GUERRERO,<br>BOB DAVIS, JEANNE L. JALUFKA,<br>KYLE M. NELSON, JASON D. HAHN,<br>ROBERT G. VIAL, KATHRYN K. TRUITT,<br>KARI A. MCLUHAN, REYNALDO RIOJAS,<br>FRANCISCO MEZA, JACK BARINEAU,<br>ERICA ZEPLIN, DEBORAH QUINONES,<br>W. LANCE GOODSON, KEELY RODRIGUEZ,<br>LEAH SILVA, DANIEL PONCE,<br>CELESTE ESCOBAR, JILL GUIDRY,<br>DANIEL TOWNSEND and LYNSEY ADAME | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br><br><br><br><br>ARANSAS COUNTY, TEXAS |

## **PLAINTIFFS' ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs Laurine Kreitz and John C. Kreitz (hereinafter referred to as "Plaintiffs"), and for cause of action would respectfully show unto the Court and the Jury the following:

## I.

This case is to be designated as a Level III case pursuant to Texas Rule of Civil Procedure 190.4.

## II.
## INTRODUCTION

This action arises from the sales, distribution, and/or prescribing of Bextra®, an osteoarthritis and pain-relief drug.  Plaintiff Laurine Kreitz was prescribed Bextra® for the relief of pain and as a result of the ingestion of Bextra®, she suffered from serious and permanent injuries.

FILED

*9* day of *apr* 20 *07*
at *11:03* o'clock *a* M

Pam Heard, District Clerk
Dist. Court, Aransas Co., Texas
By _____ Deputy

## II.
## PARTIES

Plaintiffs are individuals residing in Rockport, Texas and are citizens of the State of Texas and residents of Aransas County, Texas.

Defendant Pfizer at all times herein mentioned was and is a corporation incorporated, operating and existing under the laws of incorporation of the State of Delaware, with its principal place of business in New York, New York, continuously and purposefully doing business in the State of Texas for monetary profit. At all times herein mentioned, Defendant Pfizer, in interstate commerce and in this judicial district, purposefully marketed, designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as BEXTRA®. Pfizer may be served with process by and through its registered agent, CT Corporation Systems, 350 N. St. Paul, Dallas, Texas 75201.

Defendant Jacqueline Guerrero is an individual who may be served with process at her place of residence which is believed to be 7227 Westlyn Dr., San Antonio, Texas 78227-2809.

Defendant Bob Davis is an individual who may be served with process at his place of residence which is believed to be 13330 Blanco Rd., San Antonio, Texas 78216-2193.

Defendant Jeanne L. Jalufka is an individual who may be served with process at her place of residence which is believed to be 4032 Castle Valley Dr., Corpus Christi, Texas 78410-3629.

Defendant Kyle M. Nelson is an individual who may be served with process at his place of residence which is unknown at this time.

2

Defendant Jason D. Hahn is an individual who may be served with process at his place of residence which is unknown at this time.

Defendant Robert G. Vial is an individual who may be served with process at his place of residence which is believed to be 116 Trail Ridge Dr., Sandia, Texas 78383-4036.

Defendant Kathryn K. Truitt is an individual who may be served with process at her place of residence which is believed to be 3045 Manna Bay Dr., League City, Texas 77573-2737.

Defendant Kari A. McLuhan is an individual who may be served with process at her place of residence which is believed to be 13 Golf House Rd., Laguna Vista, Texas 78578.

Defendant Reynaldo Riojas is an individual who may be served with process at his place of residence which is believed to be 102 Chipinque, San Antonio, Texas 78237-8909.

Defendant Francisco Meza is an individual who may be served with process at his place of residence which is believed to be 4839 Brandeis St., San Antonio, Texas 78249-1714.

Defendant Jack Barineau is an individual who may be served with process at his place of residence which is believed to be 804 Cold Springs Ct., Murphy, Texas 75094-4379.

Defendant Erica Zeplin is an individual who may be served with process at her place of residence which is believed to be 4340 Camden Ave., Dallas, Texas 75206-5404.

Defendant Deborah Quinones is an individual who may be served with process at her place of residence which is unknown at this time.

Defendant W. Lance Goodson is an individual who may be served with process at his place of residence which is believed to be 7413 N. 17th St., McAllen, Texas 78504-3528.

Defendant Keely Rodriguez is an individual who may be served with process at her place of residence which is believed to be 226 Creekbend Dr., Brownsville, Texas 78521-4328.

3

Defendant Leah Silva is an individual who may be served with process at her place of residence which is believed to be 3700 Cole Ave., Dallas, Texas 75204-4543.

Defendant Daniel Ponce is an individual who may be served with process at his place of residence which is unknown at this time.

Defendant Celeste Escobar is an individual who may be served with process at her place of residence which is unknown at this time.

Defendant Jill Guidry is an individual who may be served with process at 10058 Clarks Air Field, Justin, Texas 76247-2999.

Defendant Daniel Townsend is an individual who may be served with process at his place of residence which is believed to be 106 Gazelle Lk., San Antonio, Texas 78245-2790.

Defendant Lynsey Adame is an individual who may be served with process at her place of residence which is believed to be 6122 Lost Creek Dr., Corpus Christi, Texas 78413-2915.

## III.
## JURISDICTION AND VENUE

This Court has jurisdiction over this case as all parties are residents of or are doing business in the State of Texas, and the damages sought are within the jurisdictional limits of this Court. Plaintiffs seek recovery of monetary damages for injuries to Plaintiff Laurine Kreitz sustained as a result of the Defendants' negligence and gross negligence in an amount in excess of the minimum jurisdictional limits of this Court.

Venue is proper in Aransas County, Texas, pursuant to the Texas Civil Practice and Remedies Code, Sections 15.002(1) and 15.005, in that all or a substantial part of the events or omissions giving rise to the claim occurred in Aransas County, Texas.

4

## IV.
## FACTUAL ALLEGATIONS

Defendants were and are in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling its product, BEXTRA®. Defendants, at all times relevant hereto, designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold BEXTRA® in Texas.

Plaintiff Laurine Kreitz ingested BEXTRA® that was manufactured, marketed and distributed by Defendants, and sustained serious injuries as a result.

At all times relevant herein, Plaintiff Laurine Kreitz was unaware of the serious side effects and dangerous properties of the drug as set forth herein.

The product in question was designed, formulated, patented, marketed, sold, tested, warranted, and ultimately distributed by Defendant Pfizer as BEXTRA®.

BEXTRA® is in a class of drugs called non-steroidal and anti-inflammatory drugs ("NSAIDs") with selective cyclooxygenase 2 inhibitory properties (COX-2 Inhibitor). It was approved by the Food and Drug Administration on November 16, 2001, for the treatment and management of symptoms of osteoarthritis and rheumatoid arthritis in adults.

Defendant Pfizer did not withdraw BEXTRA® prior to April 7, 2005, despite scientific studies documenting greater than triple the risk of heart attacks, strokes and death in connection with the use of BEXTRA®. On or about April 7, 2005, the United States Food and Drug Administration had to ask Pfizer to pull BEXTRA® from the market because of safety concerns with the drug, including cardiovascular risks suffered by persons such as Plaintiff Laurine Kreitz.

The Sales Representative Defendants called on doctors and hospitals and were in the business of profiting from the design, manufacture, marketing, distribution, and/or sales of the

5

prescription drug BEXTRA®. The Sales Representative Defendants were in a position to make representations about the risks associated with the use of BEXTRA®.

Defendants materially breached their obligations to consumers, such as Plaintiff Laurine Kreitz, including but not limited to its design, testing, manufacture, warning, marketing, warranting and sale of BEXTRA®.

Defendants expressly and/or impliedly warranted to the market, including Plaintiff Laurine Kreitz, by and through statements made by Defendants, orally and in publications, package inserts and other written materials to the health care community, that BEXTRA® was safe, effective, fit and proper for it intended use.

Defendants were aware of the substantial risks of taking BEXTRA®, but failed to fully disclose same.

## V.
## STRICT PRODUCTS LIABILITY

Plaintiff Laurine Kreitz ingested BEXTRA®, a medication that was manufactured, distributed, sold, prescribed and/or otherwise put into the stream of commerce by Defendants. Plaintiffs would show that a defective condition of BEXTRA® rendered it unreasonably dangerous, and that said BEXTRA® was in the defective condition at the time it left the hands of Defendants.

Plaintiff Laurine Kreitz was unaware of the significant hazards and defects in the BEXTRA® medication. Therefore, the BEXTRA® medication was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the periods that Plaintiff Laurine Kreitz was taking BEXTRA®, the medication was being utilized in a manner which was intended by Defendant Pfizer.

6

Defendants designed, manufactured, sold and/or placed into the stream of commerce a product, which reached Plaintiff Laurine Kreitz in the same or substantially same condition which was represented to be safe and free from latent defects.

Defendants are strictly liable to Plaintiff Laurine Kreitz for designing, manufacturing, and placing into the stream of commerce the BEXTRA® which was unreasonably dangerous for its reasonably forseeable use at the time it left the control of Defendants because of the design defects that were producing causes of the injuries to Plaintiff Laurine Kreitz.

The product in question was defectively marketed by Defendants with respect to their failure to warn, adequately warn, or instruct in the safe use of the product and such defects were producing causes of the injuries to Plaintiff Laurine Kreitz.

Plaintiffs, therefore, invoke the Doctrine of Strict Liability, Section 402A, Restatement (Second) of Torts, and as adopted by the Supreme Court of Texas.

Defendants were negligent in the design and marketing of the BEXTRA®. Defendants knew, or in the exercise of ordinary care should have known, that the product was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used. Defendants were negligent and such negligence proximately caused Plaintiffs to suffer injuries and damages.

Defendants owed Plaintiff Laurine Kreitz the duty of reasonable care when it tested, designed, manufactured, distributed and marketed the BEXTRA®. Defendants violated their duty proximately causing Plaintiffs to suffer injuries and damages.

Defendants are also strictly liable to Plaintiffs under Section 402B of the Restatement (Second) of Torts in misrepresenting to the public that their product was safe and without defect, which statement and representation was false and involved a material fact concerning the

character or quality of the product in question, and upon which representations Plaintiff Laurine Kreitz constructively relied and which constituted a producing cause of the injury at issue.

Further, each of the above and foregoing acts or omissions of Defendants constituted such an entire want of care as to establish that the acts or omissions were the result of actual conscious indifference to the rights, safety, or welfare of the person or persons affected.

## VI.
## FRAUD

Defendants fraudulently represented to the general public, as well as healthcare professionals, that BEXTRA® was a safe and effective drug.  Defendants made this representation while knowing that, if healthcare professionals and consumers knew of the serious risks associated with the ingestion of BEXTRA®, they would not prescribe and/or ingest this drug.  Defendants knew its representations to be false, and Plaintiff Laurine Kreitz acted in actual and justifiable reliance on such material misrepresentations and was injured as a result.

## VII.
## NEGLIGENCE

Defendants negligently manufactured, designed, tested, labeled, packaged, distributed, promoted, marketed, advertised, sold, or otherwise placed into the stream of commerce BEXTRA® which they knew, or in the exercise of ordinary care, should have known was highly harmful to Plaintiff Laurine Kreitz's health and well being.

Defendants had a duty to Plaintiff Laurine Kreitz to exercise reasonable care in the design, manufacturing, marketing, sale, testing and/or distribution of BEXTRA®.  Defendant Pfizer breached its duty to adequately and properly test BEXTRA® before and after placing it on the market and negligently failed to adequately warn consumers of the serious thrombotic and cardiovascular side effects of BEXTRA® ingestion.

8

Despite the fact that Defendants knew, or should have known that BEXTRA® could cause unreasonably dangerous risks and side effects of which Plaintiff Laurine Kreitz would not be aware, Defendants nevertheless advertised, marketed, sold and distributed BEXTRA® knowing that there were safer alternative products.

Defendants' negligence and breach of duties owed to Plaintiff Laurine Kreitz proximately caused Plaintiffs' injuries and damages.

## VIII.
## NEGLIGENT MISREPRESENTATION

Defendants misrepresented to Plaintiff Laurine Kreitz and her prescribing physician the safety and effectiveness of BEXTRA® and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of BEXTRA®.

Defendants made misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that BEXTRA® had defects, dangers, and characteristics that were other than what Defendants had represented to Plaintiff Laurine Kreitz. Defendants also had a post-sale duty to warn Plaintiff Laurine Kreitz and the public about the potential risks and complications associated with BEXTRA® in a timely manner.

Defendants knew or should have known that these representations were false and made the representations with the intent or purpose that Plaintiff Laurine Kreitz would rely on them, leading to the use of BEXTRA®.

At the time of Defendants' fraudulent misrepresentations, Plaintiff Laurine Kreitz was unaware of the falsity of the statements being made and believed them to be true. Plaintiff Laurine Kreitz had no knowledge of the information concealed and/or suppressed by Defendants.

9

Plaintiff Laurine Kreitz justifiably relied on and/or was induced by the misrepresentations and/or active concealment and, consequently, Plaintiff Laurine Kreitz ingested BEXTRA® to her detriment.

Defendants made the misrepresentations and actively concealed information about the defects and dangers of BEXTRA® with the intention and specific desire that consumers such as Plaintiff Laurine Kreitz would rely on such in selecting BEXTRA® as treatment.

As a direct and proximate result of the fraudulent acts, omissions, and misrepresentations of Defendants, Plaintiffs suffered significant injuries and damages.

## IX.
## EXPRESS WARRANTY

Defendants breached their express warranties made with regard to BEXTRA®. Defendants distributed this drug to consumers for the ordinary purpose for which such drugs are used. Defendants had a legal duty to Plaintiffs, and the public in general, to disclose their knowledge of the serious risks of ingesting BEXTRA® as marketed. This breach of duty by Defendants proximately caused the injuries and damages to Plaintiffs.

## X.
## IMPLIED WARRANTY

**A.    WARRANTY OF MERCHANTABILITY.**

Defendants breached their implied warranty of merchantability. Defendants sold and/or distributed this drug to Plaintiff Laurine Kreitz and other consumers, for the ordinary purpose for which such drug is used by consumers. BEXTRA® was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such drugs are used. A defect or defects in the use of this drug for its ordinary purpose caused injuries to Plaintiffs.

**B.    WARRANTY OF FITNESS.**

10

Defendants breached their implied warranty of fitness. Defendants sold and/or distributed BEXTRA®, and, at the time of the sale and/or distribution of this drug, Defendants knew or had reason to know of a particular purpose for which the drug was to be used. The BEXTRA® was not reasonably fit and/or suitable for the use in that it caused injuries to Plaintiffs. Defendants sale and/or distribution of a product which was not safe for its intended use proximately caused injuries and damages to Plaintiffs.

## XI.
## PUNITIVE DAMAGES

At all times relevant hereto, Defendants actually knew of the defective nature of BEXTRA® as set forth herein and continued to design, manufacture, market, distribute and sell BEXTRA® so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable serious harm caused by BEXTRA®. Defendants' conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, and/or willful and intentional disregard for the safety and rights of Plaintiff Laurine Kreitz, as well as the general public and/or consumers of BEXTRA®. Plaintiffs therefore, are entitled to punitive damages for such gross negligence.

## XII.
## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues in this case.

## XIII.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon trial hereof, the Court grant:

11

1.     Judgment against Defendants for actual damages, as set forth above, in an amount in excess of the minimum jurisdictional limits of this Honorable Court;

2.     Interest on said Judgment, at the legal rate from the date of the Judgment;

3.     Plaintiffs' costs of this suit;

4.     Past and future pain and anguish of Plaintiff Laurine Kreitz;

5.     Past medical expenses of Plaintiff Laurine Kreitz;

6.     Future medical expenses of Plaintiff Laurine Kreitz;

7.     Loss of consortium of Plaintiff Laurine Kreitz;

8.     Loss of consortium of Plaintiff John C. Kreitz;

9.     Prejudgment interest as allowed by law;

10.    any additional damages and punitive damages under the facts set forth in this or any amended pleading(s); and

11.    for such other and further relief to which Plaintiffs may be justly entitled, both in law and in equity.

Respectfully submitted,

**SNAPKA, TURMAN & WATERHOUSE, L.L.P.**
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
(361) 888-7676
(361) 884-8545 - FAX

By: _____
Kathryn Snapka
State Bar No. 18781200
Greg W. Turman
State Bar No. 00785123
Rick Waterhouse
State Bar No. 00788624

12

Aditi Anita Shahani
State Bar No. 24041898

13

# EXHIBIT 2(C)

General Citation P/S

edoc Technologies, Inc. Austin, Tx

# SERVE

**36TH DISTRICT COURT**

**LAURINE KREITZ AND JOHN C. KREITZ**

VS.

**ARANSAS COUNTY, TEXAS**

**DOCKET NO. A-07-0075-CV-A**

**PFIZER, INC., ET AL**



## CITATION

PFIZER, INC
CT CORP SYSTEMS, AGENT
350 N. ST. PAUL
DALLAS, TX 75201-

TEXAS CIVIL PROCESS, INC.
Came to Hand 5/15/07
Delivered this 5 Day 7/07
P.O. Box 3785
Corpus Christi, Tx. 78463-3785
By _Dave E John_
Process Server

    You are hereby commanded to appear before the 36TH DISTRICT COURT of ARANSAS County, Texas by filing a written answer to the Plaintiff's PLAINTIFF'S ORIGINAL PETITION on or before 10 o'clock A.M. of the Monday next after expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause numbered A-07-0075-CV-A, styled LAURINE KREITZ AND JOHN C. KREITZ, Plaintiff/Petitioner, vs PFIZER, INC., ET AL,Defendant/Respondent, filed in said court on APRIL 9, 2007.

The name and address of the attorney for plaintiff/petitioner, or the address of plaintiff/petitioner is: KATHRYN SNAPKA, P.O. DRAWER 23017, CORPUS CHRISTI, TX 78403

NOTICE TO DEFENDANT: You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday  next following the expiration of twenty days after you were served this citation and petition, a default  judgment may be taken against you.

WITNESS,PAM HEARD, Clerk of the 36TH DISTRICT COURT of ARANSAS County, Texas.

Issued and given under my hand and seal this the 9th day of April, 2007.

PAM HEARD, District Clerk of ARANSAS County, Texas.
301 N. LIVE OAK STREET  ROCKPORT, TX 78382

By _____ Deputy

### OFFICER/AUTHORIZED PERSON RETURN

Came to hand on the _____ day of _____, _____, at _____ o'clock____ M. Executed at (address) _____ in the County of _____ Texas, at _____ o'clock _____.M. on the _____ day of _____, _____ by delivering to _____ defendant, in person, a true copy of this Citation together with the accompanying _____ copy(ies) of the _____ Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.
FEE: $ _____

Delivered by:_____

_____County, Texas

By_____Deputy

_____Affiant

gencit.rcv

edoc Technologies, Inc. Austin, Tx

**LAURINE KREITZ AND JOHN C. KREITZ**

vs.

**PFIZER, INC., ET AL**

**36TH DISTRICT COURT**

**ARANSAS COUNTY, TEXAS**

**DOCKET NO. A-07-0075-CV-A**

**CITATION**

# SERVE

JEANNE L. JALUFKA
4032 CASTLE VALLEY DR.
OR WHEREVER SHE MAY BE FOUND
CORPUS CHRISTI, TX 78401-3629

You are hereby commanded to appear before the 36TH DISTRICT COURT of ARANSAS County, Texas by filing a written answer to the Plaintiff's PLAINTIFFS' ORIGINAL PETITION on or before 10 o'clock A.M. of the Monday next after expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause numbered A-07-0075-CV-A, styled LAURINE KREITZ AND JOHN C. KREITZ, Plaintiff/Petitioner, vs PFIZER, INC., ET AL, Defendant/Respondent, filed in said court on APRIL 9, 2007.

The name and address of the attorney for plaintiff/petitioner, or the address of plaintiff/petitioner is: KATHRYN SNAPKA, PO DRAWER 23017, 606 N. CARANCAHUA, SUITE 1511, CORPUS CHRISTI, TX 78403

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

WITNESS, PAM HEARD, Clerk of the 36TH DISTRICT COURT of ARANSAS County, Texas.

Issued and given under my hand and seal this the 25th day of April, 2007.

PAM HEARD, District Clerk of ARANSAS County, Texas.
301 N. LIVE OAK STREET  ROCKPORT, TX 78382

By _Jenice Pruitt_____ Deputy

### OFFICER/AUTHORIZED PERSON RETURN

Came to hand on the _____ day of _____, _____, at _____ o'clock____M. Executed at (address) _____ in the County of_____ Texas, at _____ o'clock ____.M. on the _____ day of _____, _____ by delivering to _____ defendant, in person, a true copy of this Citation together with the accompanying _____ copy(ies) of the _____ Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.
FEE: $ _____

Delivered by:_____

_____ County, Texas

TEXAS CIVIL PROCESS, INC.
Came to Hand _4/30/07_ _6:pm_ _Jn R Pruey_ Deputy
Affiant
Delivered this _1_ Day _May, 2007_   _SC1537_
P.O. Box 3785   _9:04 AM_   _5/2/07_
Corpus Christi, Tx. 78463-3785
By_____Jn R Pruey_ SC1537_____   _8:56 AM_
Process Server

General Citation P/S                                                                                    edoc Technologies, Inc. Austin, Tx

LAURINE KREITZ AND JOHN C. KREITZ                                        36TH DISTRICT COURT

vs.                                                                                                    ARANSAS COUNTY, TEXAS

PFIZER, INC., ET AL                                                                          DOCKET NO. A-07-0075-CV-A

CITATION                                    **SERVE**

ROBERT G. VIAL
116 TRAIL RIDGE DR.
OR WHEREVER HE MAY BE FOUND
SANDIA, TX 78383-4036

    You are hereby commanded to appear before the 36TH DISTRICT COURT of ARANSAS County, Texas by filing a written answer to the Plaintiff's PLAINTIFFS' ORIGINAL PETITION on or before 10 o'clock A.M. of the Monday next after expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause numbered A-07-0075-CV-A, styled LAURINE KREITZ AND JOHN C. KREITZ, Plaintiff/Petitioner, vs PFIZER, INC., ET AL,Defendant/Respondent, filed in said court on APRIL 9, 2007.

The name and address of the attorney for plaintiff/petitioner, or the address of plaintiff/petitioner is: KATHRYN SNAPKA, PO DRAWER 23017, 606 N. CARANCAHUA, SUITE 1511, CORPUS CHRISTI, TX 78403

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

WITNESS,PAM HEARD, Clerk of the 36TH DISTRICT COURT of ARANSAS County, Texas.

Issued and given under my hand and seal this the 25th day of April, 2007.

PAM HEARD, District Clerk of ARANSAS County, Texas.
301 N. LIVE OAK STREET  ROCKPORT, TX 78382

By _Janice Pruitt_ Deputy

### OFFICER/AUTHORIZED PERSON RETURN

Came to hand on the _____ day of_____, _____, at _____ o'clock_____M. Executed at (address) _____ in the County of _____ Texas, at _____ o'clock ____.M. on the _____ day of _____, _____ by delivering to _____ defendant, in person, a true copy of this Citation together with the accompanying _____ copy(ies) of the _____ Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.
FEE: $ _____

                                                Delivered by:_____

_____ County, Texas

_____ Deputy

gencit.rcv

TEXAS CIVIL PROCESS, INC.
Came to Hand _4/30/07 @ 1:?? pm_
Delivered this _4_ Day _May_ 2007
_@ 5:55 pm_
P.O. Box 3785
Corpus Christi, Tx 78463-3785
By _____
Process Server

General Citation P/S                                                                    edoc Technologies, Inc. Austin, Tx

**LAURINE KREITZ AND JOHN C. KREITZ**

vs.

**PFIZER, INC., ET AL**



**36TH DISTRICT COURT**

**ARANSAS COUNTY, TEXAS**

**DOCKET NO. A-07-0075-CV-A**

# SERVE

**CITATION**

W. LANCE GOODSON
7413 N. 17TH ST.
OR WHEREVER HE MAY BE FOUND
MCALLEN, TX  78504-3528

    You are hereby commanded to appear before the 36TH DISTRICT COURT of ARANSAS County, Texas by filing a written answer to the Plaintiff's PLAINTIFFS' ORIGINAL PETITION  on or before 10 o'clock A.M. of the Monday next after expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause numbered A-07-0075-CV-A, styled LAURINE KREITZ AND JOHN C. KREITZ, Plaintiff/Petitioner, vs PFIZER, INC., ET AL,Defendant/Respondent, filed in said court on APRIL 9, 2007.

The name and address of the attorney for plaintiff/petitioner, or the address of plaintiff/petitioner is: KATHRYN SNAPKA, PO DRAWER 23017, 606 N. CARANCAHUA, SUITE 1511, CORPUS CHRISTI, TX 78403

NOTICE TO DEFENDANT: You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday  next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

WITNESS,PAM HEARD, Clerk of the 36TH DISTRICT COURT of ARANSAS County, Texas.

Issued and given under my hand and seal this the 25th day of April, 2007.

PAM HEARD, District Clerk of ARANSAS County, Texas.
301 N. LIVE OAK STREET  ROCKPORT, TX 78382

By _Jessica Pruitt_____ Deputy

#### OFFICER/AUTHORIZED PERSON RETURN
Came to hand on the  12  day of  MAY_____ ,  2007 , at  10:50  o'clock  A  M. Executed at (address)
P .M. on the  14  day of  MAY_____ ,  2007 by delivering to _____ Texas, at  6:20PM o'clock
defendant, in person, a true copy of this Citation together with the accompanying _____ copy(ies) of the
_____ Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.
FEE: $ _____

Delivered by _Brett Miller_____

_____ County, Texas

By_____ Deputy

_____ Affiant

gencit.rcv

08/30/2002  21:08   2019908497                    JASON WOLF                                    PAGE  02

edoc Technologies, Inc, Austin, Tx

General Citation P/S

**36TH DISTRICT COURT**

LAURINE KREITZ AND JOHN C. KREITZ

VS.



**ARANSAS COUNTY, TEXAS**

PFIZER, INC., ET AL

**DOCKET NO. A-07-0075-CV-A**

## CITATION

# SERVE

ERICA ZEPLIN
4340 CAMDEN AVE.
OR WHEREVER SHE MAY BE FOUND
DALLAS, TX 75206-5404

You are hereby commanded to appear before the 36TH DISTRICT COURT of ARANSAS County, Texas by filing a written answer to the Plaintiff's PLAINTIFFS' ORIGINAL PETITION on or before 10 o'clock A.M. of the Monday next after expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause numbered A-07-0075-CV-A, styled LAURINE KREITZ AND JOHN C. KREITZ, Plaintiff/Petitioner, vs PFIZER, INC., ET AL,Defendant/Respondent, filed in said court on APRIL 9, 2007.

The name and address of the attorney for plaintiff/petitioner, or the address of plaintiff/petitioner is: KATHRYN SNAPKA, PO DRAWER 23017, 606 N. CARANCAHUA, SUITE 1511, CORPUS CHRISTI, TX 78403

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

WITNESS,PAM HEARD, Clerk of the 36TH DISTRICT COURT of ARANSAS County, Texas.

Issued and given under my hand and seal this 25th day of April, 2007.

PAM HEARD, District Clerk of ARANSAS County, Texas.
301 N. LIVE OAK STREET  ROCKPORT, TX 78382

By _Jennie Pruitt_ Deputy

## OFFICER/AUTHORIZED PERSON RETURN

Came to hand on the _____ day of _____, _____, at _____ o'clock____ M. Executed at (address)
_____ In the County of_____ Texas, at _____ o'clock
_____.M. on the _____ day of _____, _____ by delivering to _____
defendant, in person, a true copy of this Citation together with the accompanying _____ copy(ies) of the
_____ Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.
FEE: $ _____

Delivered by:_____

genolt.rcv

**TEXAS CIVIL PROCESS, INC.** _____ County, Texas
Came to Hand_____ by _____
Delivered this ____ Day_____ Deputy
P.O. Box 3785
Corpus Christi, Tx. 78463-3785
By_____
     Process Server

# EXHIBIT 2(D)

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| PFIZER, INC., JACQUELINE GUERRERO, | § | |
| BOB DAVIS, JEANNE L. JALUFKA, | § | |
| KYLE M. NELSON, JASON D. HAHN, | § | ARANSAS COUNTY, TEXAS |
| ROBERT G. VIAL, KATHRYN K. TRUITT, | § | |
| KARI A. McLUHAN, REYNALDO RIOJAS, | § | |
| FRANCISCO MEZA, JACK BARINEAU, | § | |
| ERICA ZEPLIN, DEBORAH QUINONES, | § | |
| W. LANCE GOODSON, | § | |
| KEELY RODRIGUEZ, LEAH SILVA, | § | |
| DANIEL PONCE, CELESTE ESCOBAR, | § | |
| JILL GUIDRY, DANIEL TOWNSEND, | § | |
| and LYNSEY ADAME, | § | |
| | § | |
| Defendants. | § | 36th JUDICIAL DISTRICT |

**DEFENDANT PFIZER INC.'S MOTION TO TRANSFER VENUE
AND, SUBJECT THERETO, ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Pfizer Inc. (incorrectly named as "Pfizer, Inc." and hereinafter

referred to as "Pfizer" or "Defendant") and files this its Motion to Transfer Venue and, Subject

Thereto, Original Answer to Plaintiffs' Original Petition. Defendant respectfully would show the

Court as follows:

FILED

25 day of May 2007
it 11:58 o'clock A M

Pam Heard, District Clerk
Dist Court, Aransas County, Texas
Deputy

**I.**

**MOTION TO TRANSFER VENUE**

This is a pharmaceutical product liability case involving Bextra®, a prescription

medication co-promoted and marketed at times by Pfizer. Plaintiffs Laurine and John Kreitz

allege they sustained personal injuries as a result of Laurine Kreitz's use of Bextra®, *see*

PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 1, and assert Pfizer is liable for those injuries

under theories of strict liability, negligence, misrepresentation, fraud, and breach of warranties. *Id.* at 6-11. Plaintiffs also assert certain vague claims against twenty-one (21) current or former Pfizer field sales representatives whom Plaintiffs assert detailed Bextra® to unidentified "doctors and hospitals." *See id.* at 5-6.

Plaintiffs' Petition is sufficiently imprecise to raise concerns that venue may not be proper in Aransas County. Their petition includes only a vague and conclusory assertion that "all or a substantial part of the events or omissions giving rise to the claim occurred in Aransas County, Texas," *see id.* at 4, without any specific factual allegations supporting their contention that venue in Aransas County is appropriate. It therefore is far from clear that this suit was filed in the proper venue. Consequently, pursuant to Rule 86 of the Texas Rules of Civil Procedure, Defendant files this Motion to preserve its right to challenge venue if the facts establish that venue in Aransas County is not proper.

Pfizer is a corporation. A suit against a corporation, whether foreign or domestic, may properly be brought in either (1) the county of the corporation's "principal office" in Texas, or (2) the county where "all or a substantial part of the events or omissions giving rise to the claim occurred . . . ." TEX. CIV. PRAC. & REM. CODE. ANN. § 15.002(a) (Vernon 2005). Additionally, when an individual defendant is sued, venue is proper in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person. *Id.* If none of these provisions apply, venue is proper in the county in which the plaintiff resided at the time of the accrual of the cause of action. *Id.* In this case, Defendant:

(1)     specifically denies that the county of suit is, or was at the time that Plaintiffs' purported causes of action accrued, the county of this or any other defendant's principal office in Texas;

(2)     specifically denies that all or a substantial part of the events or omissions giving rise to Plaintiffs' purported claims occurred in the county of suit;

(3)     specifically denies that any individual defendant resided in the county of suit at the time Plaintiffs' purported causes of action accrued; and

(4)     specifically denies that Plaintiffs resided in the county of suit at the time Plaintiffs' purported causes of action accrued.

Given the early stage of this proceeding at the time of this Motion, and the imprecise nature of Plaintiffs' pleadings, Defendant cannot identify for the Court the county of proper venue for Plaintiffs' claims. Defendant, therefore, requests that it be permitted reasonable time to obtain venue facts and conduct venue discovery. Defendant reserves the right to amend this motion to assert the proper county to which this case should be transferred after it has had sufficient time to discover the venue facts necessary to determine the county of proper venue.

## II.

## SUBJECT TO MOTION TO
## TRANSFER VENUE, ORIGINAL ANSWER

**A.    General Denial Pursuant to Texas Rule of Civil Procedure 92**

Subject to its Motion to Transfer Venue, Defendant denies each and every allegation made against it and demands strict proof of same by a preponderance of the evidence.

**B.    Affirmative Defenses**

Defendant reserves the right to rely upon any of the following or additional defenses to claims asserted by Plaintiffs to the extent that such defenses are supported by information developed through discovery or evidence at trial. Defendant affirmatively shows that:

### First Defense

1.     The Petition fails to state a claim upon which relief can be granted.

### Second Defense

2.     Bextra® is a prescription medical product. The federal government has preempted the field of law applicable to the labeling and warning of prescription medical products. Defendant's labeling and warning of Bextra® was at all times in compliance with applicable

3

federal law. Plaintiffs' causes of action against Defendant, therefore, fail to state a claim upon which relief can be granted; such claims, if allowed, would conflict with applicable federal law and violate the Supremacy Clause of the United States Constitution.

### Third Defense

3.    At all relevant times, Defendant provided proper warnings, information and instructions for the drug in accordance with generally recognized and prevailing standards in existence at the time.

### Fourth Defense

4.    At all relevant times, Defendant's warnings and instructions with respect to the use of Bextra® conformed to the generally recognized, reasonably available, and reliable state of knowledge at the time the drug was manufactured, marketed and distributed.

### Fifth Defense

5.    Plaintiffs' action is time-barred as it is filed outside of the time permitted by the applicable Statute of Limitations, and same is plead in full bar of any liability as to Defendant.

### Sixth Defense

6.    Plaintiffs' action is barred by the statute of response.

### Seventh Defense

7.    Plaintiffs' claims against Defendant are barred to the extent Plaintiff was contributorily negligent, actively negligent or otherwise failed to mitigate her damages, and any recovery by Plaintiff should be diminished accordingly.

### Eighth Defense

8.    The proximate cause of the loss complained of by Plaintiffs is not due to any acts or omissions on the part of Defendant. Rather, said loss is due to the acts or omissions on the part

of non-parties unrelated to Defendant and for whose acts or omissions Defendant is not liable in any way.

### Ninth Defense

9.     The acts and/or omissions of unrelated non-parties as alleged constituted independent, intervening causes for which Defendant cannot be liable.

### Tenth Defense

10.    Any injuries or expenses incurred by Plaintiffs were not caused by Bextra®, but were proximately caused, in whole or in part, by an idiosyncratic reaction, operation of nature, or act of God.

### Eleventh Defense

11.    Defendant affirmatively denies it violated any duty owed to the Plaintiffs.

### Twelfth Defense

12.    A manufacturer has no duty to warn patients or the general public of any risk, contraindication, or adverse effect associated with the use of a prescription medical product. Rather, the law requires that all such warnings and appropriate information be given to the prescribing physician and the medical profession, which act as a "learned intermediary" in determining the use of the product.  Bextra® is a prescription medical product, available only on the order of a licensed physician.  Bextra® provided an adequate warning to Plaintiffs' treating and prescribing physicians.

### Thirteenth Defense

13.    The product at issue was not in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

### Fourteenth Defense

14.    Bextra® was at all times material to the Petition reasonably safe and reasonably fit for its intended use and the warnings and instructions accompanying Bextra® at the time of the occurrence of the injuries alleged by Plaintiffs were legally adequate for its approved usages.

### Fifteenth Defense

15.    Plaintiffs' causes of action are barred in whole or in part by the lack of a defect as the Bextra® allegedly ingested by Plaintiff was prepared in accordance with the applicable standard of care.

### Sixteenth Defense

16.    Plaintiffs' alleged injuries/damages, if any, were the result of misuse or abnormal use of the product Bextra® after the product left the control of Defendant and any liability of Defendant is therefore barred.

### Seventeenth Defense

17.    Plaintiffs' alleged damages were not caused by any failure to warn on the part of Defendant.

### Eighteenth Defense

18.    Plaintiffs' alleged injuries/damages, if any, were the result of preexisting or subsequent conditions unrelated to Bextra®.

### Nineteenth Defense

19.    Plaintiff knew or should have known of any risk associated with Bextra®; therefore, the doctrine of assumption of the risk bars or diminishes any recovery.

**Twentieth Defense**

20.    Plaintiffs are barred from recovering against Defendant because Plaintiffs' claims are preempted in accordance with the Supremacy Clause of the United States Constitution and by the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 et. seq.

**Twenty-first Defense**

21.    Plaintiffs' claims are barred in whole or in part under the applicable state law because the subject pharmaceutical product at issue was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

**Twenty-second Defense**

22.    The manufacture, distribution and sale of the pharmaceutical product referred to in Plaintiffs' Petition were at all times in compliance with all federal regulations and statutes, and Plaintiffs' causes of action are preempted.

**Twenty-third Defense**

23.    Plaintiffs' claims are barred in whole or in part by the deference given to the primary jurisdiction of the Food and Drug Administration over the subject pharmaceutical product at issue under applicable federal laws, regulations, and rules.

**Twenty-fourth Defense**

24.    Plaintiffs' claims are barred in whole or in part because there is no private right of action concerning matters regulated by the Food and Drug Administration under applicable federal laws, regulations, and rules.

**Twenty-fifth Defense**

25.    Plaintiffs' claims are barred in whole or in part because Defendant provided adequate "direction or warnings" as to the use of the subject pharmaceutical product within the meaning of Comment j to Section 402A of the Restatement (Second) of Torts.

### Twenty-sixth Defense

26.    Plaintiffs' claims are barred or limited to a product liability failure to warn claim because Bextra® is a prescription pharmaceutical drug and falls within the ambit of Restatement (Second) of Torts § 402A, Comment k.

### Twenty-seventh Defense

27.    Plaintiffs' claims are barred in whole or in part because the subject pharmaceutical product at issue "provides net benefits for a class of patients" within the meaning of Comment f to § 6 of the Restatement (Third) of Torts: Products Liability.

### Twenty-eighth Defense

28.    Plaintiffs' claims are barred under § 4, et seq., of the Restatement (Third) of Torts: Products Liability.

### Twenty-ninth Defense

29.    To the extent that Plaintiffs are seeking punitive damages, Plaintiffs have failed to plead facts sufficient under the law to justify an award of punitive damages.

### Thirtieth Defense

30.    The imposition of punitive damages in this case would violate Defendant's rights to procedural due process under both the Fourteenth Amendment of the United States Constitution and Article I, § 17 of the Constitution of the State of Texas, and would additionally violate Defendant's right to substantive due process under the Fourteenth Amendment of the United States Constitution.

### Thirty-first Defense

31.    Plaintiffs' claims for punitive damages are barred, in whole or in part, by the Fifth and Fourteenth Amendments to the United States Constitution and are subject to all provisions of Texas law.

**Thirty-second Defense**

32.     The imposition of punitive damages in this case would violate the First Amendment to the United States Constitution.

**Thirty-third Defense**

33.     Plaintiffs' punitive damage claims are preempted by federal law.

**Thirty-fourth Defense**

34.     In the event that reliance was placed upon Defendant's nonconformance to an express representation, this action is barred as there was no reliance upon representations, if any, of Defendant.

**Thirty-fifth Defense**

35.     Plaintiffs failed to provide Defendant with timely notice of any alleged nonconformance to any express representation.

**Thirty-sixth Defense**

36.     To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

**Thirty-seventh Defense**

37.     Plaintiffs' claims are barred, in whole or in part, because the advertisements, if any, and labeling with respect to the subject pharmaceutical products were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

**Thirty-eighth Defense**

38.     To the extent that Plaintiffs seeks punitive damages for the conduct which allegedly caused injuries asserted in the Petition, punitive damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process

protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, the Full Faith and Credit Clause of the United States Constitution, and applicable provisions of the Constitution of the State of Texas.    Any law, statute, or other authority purporting to permit the recovery of punitive damages in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and/or the amount, if any; (2) is void for vagueness in that it failed to provide adequate advance notice as to what conduct will result in punitive damages; (3)  permits recovery of punitive-damages based on out-of state conduct, conduct that complied with applicable law, or conduct that was not directed, or did not proximately cause harm, to Plaintiff; (4) permits recovery of punitive damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiffs and to the amount of compensatory damages, if any; (5) permits jury consideration of net worth or other financial information relating to Defendant; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any punitive damages awards; (7) lacks constitutionally sufficient standards for appellate review of punitive damages awards; and (8) otherwise fails to satisfy Supreme Court precedent, including, without limitation, Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 111 (1991), TXO Production Corp. v. Alliance Resources, Inc., 509 U.S. 443 (1993); BMW of North America, Inc. v. Gore, 519 U.S. 559 (1996); and State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S 408.

### Thirty-ninth Defense

39.    The methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of Bextra®, if any, used in this case, included adequate warnings and instructions

with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

## Fortieth Defense

40.    The claims asserted in the Petition are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the art industry standards existing at the time of the sale.

## Forty-first Defense

41.    The claims asserted in the Petition are barred, in whole or in part, because Bextra® was not unreasonably dangerous or defective, was suitable for the purpose for which it was intended, and was distributed with adequate and sufficient warnings.

## Forty-second Defense

42.    Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, and/or estoppel.

## Forty-third Defense

43.    Plaintiffs' claims are barred because Plaintiffs' injuries, if any, were the result of the pre-existing and/or unrelated medical, genetic and/or environmental conditions, diseases or illnesses, subsequent medical conditions or natural courses of conditions of Plaintiff, and were independent of or far removed from Defendant's conduct.

## Forty-fourth Defense

44.    The claims asserted in the Petition are barred, in whole or in part, because Bextra® did not proximately cause injuries or damages to Plaintiffs.

11

**Forty-fifth Defense**

45.    The claims asserted in the Petition are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendant's conduct.

**Forty-sixth Defense**

46.    The claims asserted in the Petition are barred, in whole or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

**Forty-seventh Defense**

47.    The claims must be dismissed because Plaintiff would have taken Bextra® even if the product labeling contained the information that Plaintiffs contend should have been provided.

**Forty-eighth Defense**

48.    The claims asserted in the Petition are barred because the utility of Bextra® outweighed its risks.

**Forty-ninth Defense**

49.    Plaintiffs' damages, if any, are barred or limited by the payments received from collateral sources.

**Fiftieth Defense**

50.    Defendant's liability, if any, can only be determined after the percentages of responsibility of all persons who caused or contributed toward Plaintiffs' alleged damages, if any, are determined.  Defendant seeks an adjudication of the percentage of fault of the claimants and each and every other person whose fault could have contributed to the alleged injuries and damages, if any, of Plaintiffs.

### Fifty-first Defense

51.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

### Fifty-second Defense

52.    The claims asserted in the Petition are barred, in whole or in part, because Bextra® is comprehensively regulated by the FDA pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and regulations promulgated there under, and Plaintiffs' claims conflict with the FDCA, with the regulations promulgated by FDA to implement the FDCA, with the purposes and objectives of the FDCA and FDA's implementing regulations, and with the specific determinations by FDA specifying the language that should be used in the labeling accompanying Bextra®.    Accordingly, Plaintiffs' claims are preempted by the Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States.

### Fifty-third Defense

53.    Plaintiffs' fraud and misrepresentation allegations are not stated with the degree of particularity, as required by both the state and federal rules.

### Fifty-fourth Defense

54.    Plaintiffs' causes of action are barred by Chapter 82 of the Texas Civil Practice & Remedies Code, including but not limited to §§ 82.001, 82.003, and 82.007.

### Fifty-fifth Defense

55.    Plaintiffs' causes of action are barred by Texas Civil Practice & Remedies Code § 16.012.

**Fifty-sixth Defense**

56.    This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

**Fifty-seventh Defense**

57.    If Plaintiffs settle with any other person or entity, then Defendant reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice and Remedies Code.

**Fifty-eighth Defense**

58.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

**Fifty-ninth Defense**

59.    Plaintiffs' claims are barred in whole or in part because any alleged defect was not known or not reasonably scientifically knowable at the time the product was distributed.

**Sixtieth Defense**

60.    Plaintiffs' claims are barred by their failure to comply with conditions precedent to the right to recover.

**Sixty-first Defense**

61.    Plaintiffs' claims are barred in whole or in part by the doctrine of informed consent. Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks.  Specifically, Plaintiff gave informed consent to the prescribing physicians before taking Bextra®, alone or in combination with any other drug(s).

### Sixty-second Defense

62.     The duty to obtain Plaintiffs' informed consent prior to prescribing Bextra® alone or in combination with any other drug(s) rested solely with the prescribing physicians.

### Sixty-third Defense

63.     Plaintiffs may not assert a claim against Defendant for negligent misrepresentation as Plaintiffs did not suffer a pecuniary loss as a result of any alleged misrepresentation by Defendant.

### Sixty-forth Defense

64.     Plaintiffs' claims of negligent misrepresentation are barred by the failure to justifiably rely on any alleged misrepresentation of Defendant.

### Sixty-fifth Defense

65.     Plaintiffs' claims of misrepresentation are barred because any alleged misrepresentation on which Plaintiffs relied did not constitute a misrepresentation of material facts.

### Sixty-sixth Defense

66.     Plaintiffs did not rely on any alleged express or implied warranty.

### Sixty-seventh Defense

67.     Plaintiffs failed to notify Defendant of any alleged breach of warranty within a reasonable time after they discovered or should have discovered any such alleged breach and are, therefore, barred from any recovery for such claims.

### Seventy-eighth Defense

68.     Defendant specifically denies that it received any notice of any alleged breach of warranty from Plaintiffs within a reasonable time after Plaintiffs discovered or should have discovered any such alleged breach and Plaintiffs are, therefore, barred from any recovery for such claims.

### Sixty-ninth Defense

69.    Plaintiffs' claims for breach of warranty are barred in whole or in part by the Defendant's disclaimers.

### Seventieth Defense

70.    Plaintiffs' claims for breach of warranty are barred in whole or in part because they are not in privity with Defendant.

### Seventy-first Defense

71.    Defendant asserts the defenses of expiration, limitation, and exclusion to any applicable express or implied warranty, if any be proved.

### Seventy-second Defense

72.    Plaintiffs' claims are barred in whole or in part because any warranties, if made, are excluded through course of dealing, course of performance and/or usage of trade.

### Seventy-third Defense

73.    Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption. The manufacture, marketing, and labeling of Bextra® was and is controlled by federal law, and Defendant was at all times in compliance and obedience with applicable federal law.  If Plaintiffs' causes of action against Defendant are permitted and allowed, they would impede, impair, interfere with, frustrate and/or burden the effectiveness of federal law regulating the field of prescription drugs and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article I, Section 8, respectively, as set forth in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).  Plaintiffs' claims, in whole or in part, are preempted, or barred by applicable federal law, including any claim based in whole or in part on:

(a)    any allegation of negligence *per se* or that Defendant violated federal regulations, including any regulations promulgated or enforced by the Food and Drug Administration;

(b)    any allegation that Defendant committed "fraud" on, or otherwise misled, made misrepresentations to, concealed material information from, or violated reporting requirements imposed by any agency of the federal government, including the Food and Drug Administration;

(c)    any allegation that Bextra® was not "safe and effective" or that the risks of the drug outweighed its benefits;

(d)    any allegation that Defendant failed to give Plaintiff's healthcare providers adequate warnings concerning the risks associated with Bextra®; and/or

(e)    any allegation that, if accepted, would impose standards of care in addition to, or different from, those imposed by federal law, including federal regulations promulgated by the Food and Drug Administration.

### Seventy-fourth Defense

74.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

### Seventy-fifth Defense

75.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of primary jurisdiction and exhaustion of administrative remedies, because the FDA has exclusive or primary jurisdiction over the matters asserted in the Petition.

### Seventy-sixth Defense

76.    Plaintiffs have failed to allege conduct warranting imposition of punitive damages under Texas law.

### Seventy-seventh Defense

77.    The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague

or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

### Seventy-eighth Defense

78.    Plaintiffs' claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Defendant's rights under each of the following constitutional provisions:

    (a)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

    (b)    the Takings Clause of the Fifth Amendment of the United States Constitution;

    (c)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

    (d)    the Equal Protection Clause of the Fourteenth Amendment; as well as the various provisions of the Texas Constitution, including but not limited to art. I §§ 3, 13, 14, 16 and 19.

### Seventy-ninth Defense

79.    As set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), the Due Process Clause of the United States Constitution protects Defendant from any award of damages that:

    (a)    is based, in whole or in part, on conduct which did not harm Plaintiff;

    (b)    is based, in whole or in part, on conduct and/or harm that occurred wholly outside Texas;

    (c)    is based, in whole or in part, on conduct that is the exclusive province of federal law;

    (d)    is based, in whole or in part, on comparisons of the relative wealth of Defendant and Plaintiffs; or

    (e)    is grossly disproportionate to the harm suffered by Plaintiffs.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

**Eightieth Defense**

80.    Plaintiffs' claims for punitive or exemplary damages are subject to the limitations and requirements of Chapter 41 of the Texas Civil Practice and Remedies Code, including the cap on exemplary damages set out in Section 41.008(b).

**Eighty-first Defense**

81.    Plaintiffs' claims for punitive damages are in contravention of Defendant's rights under each of the following constitutional provisions:

(a)    the Commerce Clause of Article I, Section 8 of the United States Constitution;

(b)    the Contracts Clause of Article I, Section 10 of the United States Constitution;

(c)    the prohibition against *ex post facto* laws embodied in Article I, Section 10 of the United States Constitution;

(d)    the Supremacy Clause of Article VI of the United States Constitution;

(e)    the Free Speech Clause of the First Amendment of the United States Constitution;

(f)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(g)    the Takings Clause of the Fifth Amendment of the United States Constitution;

(h)    the Right to Counsel of the Sixth Amendment of the United States Constitution;

(i)    the Excessive Fines Clause of Eighth Amendment of the United States Constitution;

(j)     the Right to Trial by Jury contained in the Seventh Amendment of the United States Constitution;

(k)     the Equal Protection Clause of the Fourteenth Amendment;

(l)     as well as the various provisions of the Texas Constitution, including but not limited to Art. I. §§ 3, 13, 14, 16, and 19.

### Eighty-second Defense

82.    Because of the lack of clear standards, the imposition of punitive damages against Defendant is unconstitutionally vague and/or overbroad.

### Eighty-third Defense

83.    No act or omission of Defendant was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

### Eighty-fourth Defense

84.    To the extent Plaintiffs' claim for punitive damages is premised on alleged violations of FDA regulations, such claim is preempted by federal law and by the authority set out in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

### Eighty-fifth Defense

85.    With respect to Plaintiffs' demand for punitive damages, Defendant specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

### Eighty-sixth Defense

86.    Defendant reserves the right to supplement its assertion of defenses as it continues with its factual investigation of Plaintiffs' claims.

III.

**JURY DEMAND**

Subject to its Motion to Transfer Venue, Defendant hereby demands a trial by jury.

IV.

**PRAYER**

WHEREFORE, Defendant prays that this cause shall be transferred to a county of proper venue, that Plaintiffs take nothing by their suit, that Defendant be discharged with its costs expended in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,**
**A PROFESSIONAL CORPORATION**

By: _____
Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT PFIZER INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 24th day of May, 2007:

***Via Certified Mail, Return Receipt Requested***

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
***Attorneys for Plaintiffs***



# EXHIBIT 2(E)

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ,<br><br>      Plaintiffs,<br><br>v.<br><br>PFIZER, INC., JACQUELINE GUERRERO,<br>BOB DAVIS, JEANNE L. JALUFKA,<br>KYLE M. NELSON, JASON D. HAHN,<br>ROBERT G. VIAL, KATHRYN K. TRUITT,<br>KARI A. McLUHAN, REYNALDO RIOJAS,<br>FRANCISCO MEZA, JACK BARINEAU,<br>ERICA ZEPLIN, DEBORAH QUINONES,<br>W. LANCE GOODSON,<br>KEELY RODRIGUEZ, LEAH SILVA,<br>DANIEL PONCE, CELESTE ESCOBAR,<br>JILL GUIDRY, DANIEL TOWNSEND,<br>and LYNSEY ADAME,<br><br>      Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br><br><br>ARANSAS COUNTY, TEXAS<br><br>**FILED**<br>25 day of May 2007<br>at 11:58 o'clock A M<br><br>Pam Heard, District Clerk<br>Dist Court, Aransas County, Texas<br>By ___ Deputy<br><br>36th JUDICIAL DISTRICT |

**DEFENDANT W. LANCE GOODSON'S MOTION TO TRANSFER VENUE
AND, SUBJECT THERETO, ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

    NOW COMES Defendant W. Lance Goodson (hereinafter referred to as "Defendant")

and files this his Motion to Transfer Venue and, Subject Thereto, Original Answer to Plaintiffs'

Original Petition. Defendant would respectfully show the Court as follows:

**I.**

**MOTION TO TRANSFER VENUE**

    This is a pharmaceutical product liability case involving Bextra®, a prescription

medication co-promoted and marketed at times by Defendant Pfizer Inc. ("Pfizer"). Plaintiffs

Laurine and John Kreitz allege they sustained personal injuries as a result of Laurine Kreitz's use

of Bextra®, *see* PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 1, and assert Pfizer is liable for

1

those injuries under theories of strict liability, negligence, misrepresentation, fraud, and breach of warranties. *Id.* at 6-11. Plaintiffs also assert certain vague claims against twenty-one (21) current or former Pfizer field sales representatives, including Defendant, whom Plaintiffs assert detailed Bextra® to unidentified "doctors and hospitals." *See id.* at 5-6.

Plaintiffs' Petition is sufficiently imprecise to raise concerns that venue may not be proper in Aransas County. Their petition includes only a vague and conclusory assertion that "all or a substantial part of the events or omissions giving rise to the claim occurred in Aransas County, Texas," *see id.* at 4, without any specific factual allegations supporting their contention that venue in Aransas County is appropriate. It therefore is far from clear that this suit was filed in the proper venue. Consequently, pursuant to Rule 86 of the Texas Rules of Civil Procedure, Defendant files this Motion to preserve his right to challenge venue if the facts establish that venue in Aransas County is not proper.

Pfizer is a corporation. A suit against a corporation, whether foreign or domestic, may properly be brought in either (1) the county of the corporation's "principal office" in Texas, or (2) the county where "all or a substantial part of the events or omissions giving rise to the claim occurred . . . ." TEX. CIV. PRAC. & REM. CODE. ANN. § 15.002(a) (Vernon 2005). Additionally, when an individual defendant is sued, venue is proper in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person. *Id.* If none of these provisions apply, venue is proper in the county in which the plaintiff resided at the time of the accrual of the cause of action. *Id.* In this case, Defendant:

(1)  specifically denies that the county of suit is, or was at the time that Plaintiffs' purported causes of action accrued, the county of any defendant's principal office in Texas;

(2)  specifically denies that all or a substantial part of the events or omissions giving rise to Plaintiffs' purported claims occurred in the county of suit;

(3)    specifically denies that any individual defendant resided in the county of suit at the time Plaintiffs' purported causes of action accrued; and

(4)    specifically denies that Plaintiffs resided in the county of suit at the time Plaintiffs' purported causes of action accrued.

Given the early stage of this proceeding at the time of this Motion, and the imprecise nature of Plaintiffs' pleadings, Defendant cannot identify for the Court the county of proper venue for Plaintiffs' claims. Defendant, therefore, requests that he be permitted reasonable time to obtain venue facts and conduct venue discovery. Defendant reserves the right to amend this motion to assert the proper county to which this case should be transferred after he has had sufficient time to discover the venue facts necessary to determine the county of proper venue.

## II.

## SUBJECT TO MOTION TO
## TRANSFER VENUE, ORIGINAL ANSWER

**A.    General Denial Pursuant to Texas Rule of Civil Procedure 92**

Subject to his Motion to Transfer Venue, Defendant denies each and every allegation made against him and demands strict proof of same by a preponderance of the evidence.

**B.    Affirmative Defenses**

Subject to his Motion to Transfer Venue, and without assuming the burden of proof of such defenses that he would not otherwise have, Defendant affirmatively asserts the following defenses:

1.    Plaintiffs' Petition fails to state a claim against Defendant upon which relief can be granted.

2.    Plaintiffs' causes of action are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

3.    Plaintiffs' claims against Defendant are barred under Section 20, comment g of the Restatement (Third) of Torts: Products Liability.

3

4.    Plaintiffs' causes of action are barred by Chapter 82 of the Texas Civil Practice & Remedies Code, including but not limited to §§ 82.001, 82.003, and 82.007.

5.    Plaintiffs' causes of action are barred by Texas Civil Practice & Remedies Code § 16.012.

6.    Plaintiffs' causes of action are barred in whole or in part by the doctrines of laches, waiver and/or estoppel.

7.    Plaintiffs' recovery, if any, is barred entirely, or should be reduced, by Plaintiffs' comparative negligence.

8.    The damages alleged by Plaintiffs were caused, solely or partially, or proximately caused by some person or third party for whom Defendant is not legally responsible.

9.    This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

10.   If Plaintiffs settle with any other person or entity, then Defendant reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice and Remedies Code.

11.   Plaintiffs' alleged damages resulted from new and independent, unforeseeable, superseding and/or intervening causes unrelated to any conduct of Defendant.

12.   Plaintiffs' alleged damages were not proximately caused by any act or omission of Defendant.

13.   The producing causes of the damages Plaintiffs allegedly suffered were acts or omissions of some person, cause or entity other than Defendant.

14.    Plaintiffs' alleged damages were the result of pre-existing and/or unrelated conditions that were independent of, or far removed from, any conduct of Defendant.

15.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' damages, if any, were caused by changes and/or alterations to the product at issue made by persons not within Defendant's control.

16.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, the methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of the Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

17.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the art industry standards existing at the time of the sale.

18.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and based on the state of scientific,

5

medical, and technological knowledge at the time that Bextra® was marketed, Bextra® was reasonably safe for its normal and foreseeable use at all relevant times.

19.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, any claims by Plaintiffs for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

20.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are governed, in whole or in part, by Sections 2 and 4 of the Restatement (Third) of Torts: Product Liability (including the comments thereto) because Defendant complied with all applicable statutes and with the requirements and regulations of the Food and Drug Administration.

21.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Section 402A, comments j and/or k of the Restatement (Second) of Torts.

22.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Sections 2, 4, and 6 *et seq.* of the Restatement (Third) of Torts:

Product Liability. Alternatively, Plaintiffs' claims are barred because the product's benefits outweighed its risks.

23.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because Bextra® "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts: Product Liability.

24.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

25.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because any alleged defect was not known or not reasonably scientifically knowable at the time the product was distributed.

26.    To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

27.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendant's conduct.

28. The damages, if any, recoverable by Plaintiffs must be reduced by any amount of damages legally caused by Plaintiffs' failure to mitigate such damages in whole or in part.

29. Plaintiffs' claims are barred in whole or in part by the unforeseeable product misuse and/or abnormal or unintended use of the product.

30. Plaintiffs' claims are barred by their failure to comply with conditions precedent to the right to recover.

31. Plaintiffs' claims are barred because Defendant's conduct is not the producing cause, a proximate cause, or a cause-in-fact of Plaintiffs' alleged injuries.

32. Plaintiffs' claims are barred in whole or in part by intervening and/or superseding acts.

33. Plaintiffs' claims are barred in whole or in part by the assumption of the risk associated with the purchase and/or use of the product.

34. Plaintiffs' claims are barred in whole or in part by the failure to heed warnings and/or failure to follow instructions.

35. Plaintiffs' claims are barred in whole or in part by the doctrine of informed consent. Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks. Specifically, Plaintiff gave informed consent to the prescribing physician before taking Bextra®, alone or in combination with any other drug(s).

36. Plaintiffs' injuries, if any, were caused by an idiosyncratic reaction to the product.

37. The duty to obtain Plaintiff's informed consent prior to prescribing Bextra®, alone or in combination with any other drug(s), rested solely with the prescribing physicians.

38.  Plaintiffs may not assert a claim against Defendant for negligent misrepresentation as Plaintiffs did not suffer a pecuniary loss as a result of any alleged misrepresentation by Defendant.

39.  Plaintiffs' claims of negligent misrepresentation are barred by the Plaintiffs' failure to justifiably rely on any alleged misrepresentation of Defendant.

40.  Plaintiffs' claims of misrepresentation are barred because any alleged misrepresentation on which Plaintiffs relied did not constitute a misrepresentation of material facts.

41.  Plaintiffs' claims of fraud are barred by reason of Plaintiff's failure to allege circumstances constituting fraud with particularity, as required under both the state and federal rules.

42.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff did not rely on any alleged express or implied warranty.

43.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs failed to notify Defendant of any alleged breach of warranty within a reasonable time after they discovered or should have discovered any such alleged breach and are, therefore, barred from any recovery for such claims.

44.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any

product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part by the relevant disclaimers.

45.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part because they are not in privity with Defendant.

46.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Defendant asserts the defenses of expiration, limitation, and exclusion to any applicable express or implied warranty, if any be proved.

47.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part because any warranties, if made, are excluded through course of dealing, course of performance, and/or usage of trade.

48.    Defendant expressly denies that any third party engaging in the acts alleged by Plaintiffs were acting as Defendant's agent or servant, at the instruction of Defendant, or within the Defendant's control.  Therefore, Plaintiffs' claims, to the extent they seek recovery for the acts or omissions of such third parties, are barred in whole or in part as a matter of law.

49.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole

or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

50.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption. The manufacture, marketing, and labeling of Bextra® was and is controlled by federal law, and the conduct relating to the product at issue was at all times in compliance and obedience with applicable federal law. If Plaintiffs' causes of action against Defendant are permitted and allowed, they would impede, impair, interfere with, frustrate and/or burden the effectiveness of federal law regulating the field of prescription drugs and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article I, Section 8, respectively, as set forth in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Plaintiffs' claims, in whole or in part, are preempted, or barred by applicable federal law, including any claim based in whole or in part on:

(a)     any allegation of negligence *per se* or that Defendant violated federal regulations, including any regulations promulgated or enforced by the Food and Drug Administration;

(b)     any allegation that Defendant committed "fraud" on, or otherwise misled, made misrepresentations to, concealed material information from, or violated reporting requirements imposed by any agency of the federal government, including the Food and Drug Administration;

(c)     any allegation that Bextra® was not "safe and effective" or that the risks of the drug outweighed its benefits;

(d)    any allegation that Defendant failed to give Plaintiffs' healthcare providers adequate warnings concerning the risks associated with Bextra®; and/or

(e)    any allegation that, if accepted, would impose standards of care in addition to, or different from, those imposed by federal law, including federal regulations promulgated by the Food and Drug Administration.

51.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

52.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrines of primary jurisdiction and exhaustion of administrative remedies, because the FDA has exclusive or primary jurisdiction over the matters asserted in the Petition.

53.    The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

54.    Plaintiffs' claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Defendant's rights under each of the following constitutional provisions:

12

(a)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(b)    the Takings Clause of the Fifth Amendment of the United States Constitution;

(c)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

(d)    the Equal Protection Clause of the Fourteenth Amendment; as well as the various provisions of the Texas Constitution, including but not limited to art. I §§ 3, 13, 14, 16 and 19.

55.    As set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), the Due Process Clause of the United States Constitution protects Defendant from any award of damages that:

(a)    is based, in whole or in part, on conduct which did not harm the Plaintiffs;

(b)    is based, in whole or in part, on conduct and/or harm that occurred wholly outside Texas;

(c)    is based, in whole or in part, on conduct that is the exclusive province of federal law;

(d)    is based, in whole or in part, on comparisons of the relative wealth of Defendant and Plaintiffs; or

(e)    is grossly disproportionate to the harm suffered by Plaintiffs.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State*

13

*Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

56.     Plaintiffs' claims for punitive or exemplary damages are subject to the limitations and requirements of Chapter 41 of the Texas Civil Practice and Remedies Code, including the cap on exemplary damages set out in Section 41.008(b).

57.     Plaintiffs' claims for punitive damages are in contravention of Defendant's rights under each of the following constitutional provisions:

    (a)    the Commerce Clause of Article I, Section 8 of the United States Constitution;

    (b)    the Contracts Clause of Article I, Section 10 of the United States Constitution;

    (c)    the prohibition against *ex post facto* laws embodied in Article I, Section 10 of the United States Constitution;

    (d)    the Supremacy Clause of Article VI of the United States Constitution;

    (e)    the Free Speech Clause of the First Amendment of the United States Constitution;

    (f)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

    (g)    the Takings Clause of the Fifth Amendment of the United States Constitution;

    (h)    the Right to Counsel of the Sixth Amendment of the United States Constitution;

    (i)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

    (j)    the Right to Trial by Jury contained in the Seventh Amendment of the United States Constitution;

    (k)    the Equal Protection Clause of the Fourteenth Amendment;

    (l)    as well as the various provisions of the Texas Constitution, including but not limited to Art. I. §§ 3, 13, 14, 16, and 19.

58. Because of the lack of clear standards, the imposition of punitive damages against Defendant is unconstitutionally vague and/or overbroad.

59. No act or omission of Defendant was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

60. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and to the extent Plaintiffs' claim for punitive damages is premised on alleged violations of FDA regulations, such claim is preempted by federal law and by the authority set out in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

61. With respect to Plaintiffs' demand for punitive damages, Defendant specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

62. Defendant reserves the right to supplement his assertion of defenses as he continues with his factual investigation of Plaintiffs' claims.

### III.

### <u>JURY DEMAND</u>

Subject to his Motion to Transfer Venue, Defendant hereby demands a trial by jury.

IV.

## PRAYER

WHEREFORE, Defendant prays that this cause shall be transferred to a county of proper venue, that Plaintiffs take nothing by their suit, that Defendant be discharged with his costs expended in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,
A PROFESSIONAL CORPORATION**

By: _____

Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT
W. LANCE GOODSON**

16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 24th day of May, 2007:

***Via Certified Mail, Return Receipt Requested***

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
***Attorneys for Plaintiffs***

17

# EXHIBIT 2(F)

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| PFIZER, INC., JACQUELINE GUERRERO, | § | |
| BOB DAVIS, JEANNE L. JALUFKA, | § | |
| KYLE M. NELSON, JASON D. HAHN, | § | ARANSAS COUNTY, TEXAS |
| ROBERT G. VIAL, KATHRYN K. TRUITT, | § | |
| KARI A. McLUHAN, REYNALDO RIOJAS, | § | |
| FRANCISCO MEZA, JACK BARINEAU, | § | |
| ERICA ZEPLIN, DEBORAH QUINONES, | § | |
| W. LANCE GOODSON, | § | |
| KEELY RODRIGUEZ, LEAH SILVA, | § | |
| DANIEL PONCE, CELESTE ESCOBAR, | § | |
| JILL GUIDRY, DANIEL TOWNSEND, | § | |
| and LYNSEY ADAME, | § | |
| | § | |
| Defendants. | § | 36th JUDICIAL DISTRICT |

**FILED**

25 day of May 20 07
at 11:58 o'clock A M

Pam Heard, District Clerk
Dist Court, Aransas County, Texas
By J. Smith                     Deputy

## DEFENDANT ROBERT G. VIAL'S MOTION TO TRANSFER VENUE AND, SUBJECT THERETO, ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Robert G. Vial (hereinafter referred to as "Defendant") and files this his Motion to Transfer Venue and, Subject Thereto, Original Answer to Plaintiffs' Original Petition. Defendant would respectfully show the Court as follows:

### I.

### MOTION TO TRANSFER VENUE

This is a pharmaceutical product liability case involving Bextra®, a prescription medication co-promoted and marketed at times by Defendant Pfizer Inc. ("Pfizer"). Plaintiffs Laurine and John Kreitz allege they sustained personal injuries as a result of Laurine Kreitz's use of Bextra®, *see* PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 1, and assert Pfizer is liable for

1

those injuries under theories of strict liability, negligence, misrepresentation, fraud, and breach of warranties. *Id.* at 6-11. Plaintiffs also assert certain vague claims against twenty-one (21) current or former Pfizer field sales representatives, including Defendant, whom Plaintiffs assert detailed Bextra® to unidentified "doctors and hospitals." *See id.* at 5-6.

Plaintiffs' Petition is sufficiently imprecise to raise concerns that venue may not be proper in Aransas County. Their petition includes only a vague and conclusory assertion that "all or a substantial part of the events or omissions giving rise to the claim occurred in Aransas County, Texas," *see id.* at 4, without any specific factual allegations supporting their contention that venue in Aransas County is appropriate. It therefore is far from clear that this suit was filed in the proper venue. Consequently, pursuant to Rule 86 of the Texas Rules of Civil Procedure, Defendant files this Motion to preserve his right to challenge venue if the facts establish that venue in Aransas County is not proper.

Pfizer is a corporation. A suit against a corporation, whether foreign or domestic, may properly be brought in either (1) the county of the corporation's "principal office" in Texas, or (2) the county where "all or a substantial part of the events or omissions giving rise to the claim occurred . . . ." TEX. CIV. PRAC. & REM. CODE. ANN. § 15.002(a) (Vernon 2005). Additionally, when an individual defendant is sued, venue is proper in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person. *Id.* If none of these provisions apply, venue is proper in the county in which the plaintiff resided at the time of the accrual of the cause of action. *Id.* In this case, Defendant:

(1)    specifically denies that the county of suit is, or was at the time that Plaintiffs' purported causes of action accrued, the county of any defendant's principal office in Texas;

(2)    specifically denies that all or a substantial part of the events or omissions giving rise to Plaintiffs' purported claims occurred in the county of suit;

2

(3)    specifically denies that any individual defendant resided in the county of suit at the time Plaintiffs' purported causes of action accrued; and

(4)    specifically denies that Plaintiffs resided in the county of suit at the time Plaintiffs' purported causes of action accrued.

Given the early stage of this proceeding at the time of this Motion, and the imprecise nature of Plaintiffs' pleadings, Defendant cannot identify for the Court the county of proper venue for Plaintiffs' claims.  Defendant, therefore, requests that he be permitted reasonable time to obtain venue facts and conduct venue discovery.  Defendant reserves the right to amend this motion to assert the proper county to which this case should be transferred after he has had sufficient time to discover the venue facts necessary to determine the county of proper venue.

## II.

## SUBJECT TO MOTION TO
## TRANSFER VENUE, ORIGINAL ANSWER

### A.    General Denial Pursuant to Texas Rule of Civil Procedure 92

Subject to his Motion to Transfer Venue, Defendant denies each and every allegation made against him and demands strict proof of same by a preponderance of the evidence.

### B.    Affirmative Defenses

Subject to his Motion to Transfer Venue, and without assuming the burden of proof of such defenses that he would not otherwise have, Defendant affirmatively asserts the following defenses:

1.    Plaintiffs' Petition fails to state a claim against Defendant upon which relief can be granted.

2.    Plaintiffs' causes of action are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

3.    Plaintiffs' claims against Defendant are barred under Section 20, comment g of the Restatement (Third) of Torts: Products Liability.

3

4.    Plaintiffs' causes of action are barred by Chapter 82 of the Texas Civil Practice & Remedies Code, including but not limited to §§ 82.001, 82.003, and 82.007.

5.    Plaintiffs' causes of action are barred by Texas Civil Practice & Remedies Code § 16.012.

6.    Plaintiffs' causes of action are barred in whole or in part by the doctrines of laches, waiver and/or estoppel.

7.    Plaintiffs' recovery, if any, is barred entirely, or should be reduced, by Plaintiffs' comparative negligence.

8.    The damages alleged by Plaintiffs were caused, solely or partially, or proximately caused by some person or third party for whom Defendant is not legally responsible.

9.    This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

10.   If Plaintiffs settle with any other person or entity, then Defendant reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice and Remedies Code.

11.   Plaintiffs' alleged damages resulted from new and independent, unforeseeable, superseding and/or intervening causes unrelated to any conduct of Defendant.

12.   Plaintiffs' alleged damages were not proximately caused by any act or omission of Defendant.

13.   The producing causes of the damages Plaintiffs allegedly suffered were acts or omissions of some person, cause or entity other than Defendant.

14.     Plaintiffs' alleged damages were the result of pre-existing and/or unrelated conditions that were independent of, or far removed from, any conduct of Defendant.

15.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' damages, if any, were caused by changes and/or alterations to the product at issue made by persons not within Defendant's control.

16.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, the methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of the Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

17.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the art industry standards existing at the time of the sale.

18.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and based on the state of scientific,

5

medical, and technological knowledge at the time that Bextra® was marketed, Bextra® was reasonably safe for its normal and foreseeable use at all relevant times.

19.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, any claims by Plaintiffs for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

20.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are governed, in whole or in part, by Sections 2 and 4 of the Restatement (Third) of Torts: Product Liability (including the comments thereto) because Defendant complied with all applicable statutes and with the requirements and regulations of the Food and Drug Administration.

21.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Section 402A, comments j and/or k of the Restatement (Second) of Torts.

22.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Sections 2, 4, and 6 *et seq.* of the Restatement (Third) of Torts:

Product Liability. Alternatively, Plaintiffs' claims are barred because the product's benefits outweighed its risks.

23.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because Bextra® "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts: Product Liability.

24.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

25.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because any alleged defect was not known or not reasonably scientifically knowable at the time the product was distributed.

26.   To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

27.   Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendant's conduct.

28.   The damages, if any, recoverable by Plaintiffs must be reduced by any amount of damages legally caused by Plaintiffs' failure to mitigate such damages in whole or in part.

29.   Plaintiffs' claims are barred in whole or in part by the unforeseeable product misuse and/or abnormal or unintended use of the product.

30.   Plaintiffs' claims are barred by their failure to comply with conditions precedent to the right to recover.

31.   Plaintiffs' claims are barred because Defendant's conduct is not the producing cause, a proximate cause, or a cause-in-fact of Plaintiffs' alleged injuries.

32.   Plaintiffs' claims are barred in whole or in part by intervening and/or superseding acts.

33.   Plaintiffs' claims are barred in whole or in part by the assumption of the risk associated with the purchase and/or use of the product.

34.   Plaintiffs' claims are barred in whole or in part by the failure to heed warnings and/or failure to follow instructions.

35.   Plaintiffs' claims are barred in whole or in part by the doctrine of informed consent. Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks.  Specifically, Plaintiff gave informed consent to the prescribing physician before taking Bextra®, alone or in combination with any other drug(s).

36.   Plaintiffs' injuries, if any, were caused by an idiosyncratic reaction to the product.

37.   The duty to obtain Plaintiff's informed consent prior to prescribing Bextra®, alone or in combination with any other drug(s), rested solely with the prescribing physicians.

38.  Plaintiffs may not assert a claim against Defendant for negligent misrepresentation as Plaintiffs did not suffer a pecuniary loss as a result of any alleged misrepresentation by Defendant.

39.  Plaintiffs' claims of negligent misrepresentation are barred by the Plaintiffs' failure to justifiably rely on any alleged misrepresentation of Defendant.

40.  Plaintiffs' claims of misrepresentation are barred because any alleged misrepresentation on which Plaintiffs relied did not constitute a misrepresentation of material facts.

41.  Plaintiffs' claims of fraud are barred by reason of Plaintiff's failure to allege circumstances constituting fraud with particularity, as required under both the state and federal rules.

42.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff did not rely on any alleged express or implied warranty.

43.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs failed to notify Defendant of any alleged breach of warranty within a reasonable time after they discovered or should have discovered any such alleged breach and are, therefore, barred from any recovery for such claims.

44.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any

product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part by the relevant disclaimers.

45.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part because they are not in privity with Defendant.

46.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Defendant asserts the defenses of expiration, limitation, and exclusion to any applicable express or implied warranty, if any be proved.

47.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part because any warranties, if made, are excluded through course of dealing, course of performance, and/or usage of trade.

48.    Defendant expressly denies that any third party engaging in the acts alleged by Plaintiffs were acting as Defendant's agent or servant, at the instruction of Defendant, or within the Defendant's control.  Therefore, Plaintiffs' claims, to the extent they seek recovery for the acts or omissions of such third parties, are barred in whole or in part as a matter of law.

49.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole

10

or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

50. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption. The manufacture, marketing, and labeling of Bextra® was and is controlled by federal law, and the conduct relating to the product at issue was at all times in compliance and obedience with applicable federal law. If Plaintiffs' causes of action against Defendant are permitted and allowed, they would impede, impair, interfere with, frustrate and/or burden the effectiveness of federal law regulating the field of prescription drugs and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article I, Section 8, respectively, as set forth in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Plaintiffs' claims, in whole or in part, are preempted, or barred by applicable federal law, including any claim based in whole or in part on:

(a) any allegation of negligence *per se* or that Defendant violated federal regulations, including any regulations promulgated or enforced by the Food and Drug Administration;

(b) any allegation that Defendant committed "fraud" on, or otherwise misled, made misrepresentations to, concealed material information from, or violated reporting requirements imposed by any agency of the federal government, including the Food and Drug Administration;

(c) any allegation that Bextra® was not "safe and effective" or that the risks of the drug outweighed its benefits;

11

(d)     any allegation that Defendant failed to give Plaintiffs' healthcare providers adequate warnings concerning the risks associated with Bextra®; and/or

(e)     any allegation that, if accepted, would impose standards of care in addition to, or different from, those imposed by federal law, including federal regulations promulgated by the Food and Drug Administration.

51.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

52.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrines of primary jurisdiction and exhaustion of administrative remedies, because the FDA has exclusive or primary jurisdiction over the matters asserted in the Petition.

53.     The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

54.     Plaintiffs' claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Defendant's rights under each of the following constitutional provisions:

(a)  the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(b)  the Takings Clause of the Fifth Amendment of the United States Constitution;

(c)  the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

(d)  the Equal Protection Clause of the Fourteenth Amendment; as well as the various provisions of the Texas Constitution, including but not limited to art. I §§ 3, 13, 14, 16 and 19.

55.  As set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), the Due Process Clause of the United States Constitution protects Defendant from any award of damages that:

(a)  is based, in whole or in part, on conduct which did not harm the Plaintiffs;

(b)  is based, in whole or in part, on conduct and/or harm that occurred wholly outside Texas;

(c)  is based, in whole or in part, on conduct that is the exclusive province of federal law;

(d)  is based, in whole or in part, on comparisons of the relative wealth of Defendant and Plaintiffs; or

(e)  is grossly disproportionate to the harm suffered by Plaintiffs.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State*

*Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

56.    Plaintiffs' claims for punitive or exemplary damages are subject to the limitations and requirements of Chapter 41 of the Texas Civil Practice and Remedies Code, including the cap on exemplary damages set out in Section 41.008(b).

57.    Plaintiffs' claims for punitive damages are in contravention of Defendant's rights under each of the following constitutional provisions:

(a)    the Commerce Clause of Article I, Section 8 of the United States Constitution;

(b)    the Contracts Clause of Article I, Section 10 of the United States Constitution;

(c)    the prohibition against *ex post facto* laws embodied in Article I, Section 10 of the United States Constitution;

(d)    the Supremacy Clause of Article VI of the United States Constitution;

(e)    the Free Speech Clause of the First Amendment of the United States Constitution;

(f)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(g)    the Takings Clause of the Fifth Amendment of the United States Constitution;

(h)    the Right to Counsel of the Sixth Amendment of the United States Constitution;

(i)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

(j)    the Right to Trial by Jury contained in the Seventh Amendment of the United States Constitution;

(k)    the Equal Protection Clause of the Fourteenth Amendment;

(l)    as well as the various provisions of the Texas Constitution, including but not limited to Art. I. §§ 3, 13, 14, 16, and 19.

58.   Because of the lack of clear standards, the imposition of punitive damages against Defendant is unconstitutionally vague and/or overbroad.

59.   No act or omission of Defendant was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

60.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against him because he did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and to the extent Plaintiffs' claim for punitive damages is premised on alleged violations of FDA regulations, such claim is preempted by federal law and by the authority set out in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

61.   With respect to Plaintiffs' demand for punitive damages, Defendant specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

62.   Defendant reserves the right to supplement his assertion of defenses as he continues with his factual investigation of Plaintiffs' claims.

## III.

## <u>JURY DEMAND</u>

Subject to his Motion to Transfer Venue, Defendant hereby demands a trial by jury.

IV.

**PRAYER**

WHEREFORE, Defendant prays that this cause shall be transferred to a county of proper venue, that Plaintiffs take nothing by their suit, that Defendant be discharged with his costs expended in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,
A PROFESSIONAL CORPORATION**

By: _____

Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT
ROBERT G. VIAL**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 24th day of May, 2007:

### *Via Certified Mail, Return Receipt Requested*

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
*Attorneys for Plaintiffs*



# EXHIBIT 2(G)

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ,<br><br>    Plaintiffs,<br><br>v.<br><br>PFIZER, INC., JACQUELINE GUERRERO,<br>BOB DAVIS, JEANNE L. JALUFKA,<br>KYLE M. NELSON, JASON D. HAHN,<br>ROBERT G. VIAL, KATHRYN K. TRUITT,<br>KARI A. McLUHAN, REYNALDO RIOJAS,<br>FRANCISCO MEZA, JACK BARINEAU,<br>ERICA ZEPLIN, DEBORAH QUINONES,<br>W. LANCE GOODSON,<br>KEELY RODRIGUEZ, LEAH SILVA,<br>DANIEL PONCE, CELESTE ESCOBAR,<br>JILL GUIDRY, DANIEL TOWNSEND,<br>and LYNSEY ADAME,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br><br>ARANSAS COUNTY, TEXAS<br><br><br>36th JUDICIAL DISTRICT |



FILED

___ day of _____ 20__
at ___ o'clock __ __ M
Pam Heard, District Clerk
Dist Court, Aransas County, Texas
By _____ Deputy

**DEFENDANT LYNSEY ADAME'S MOTION TO TRANSFER VENUE
AND, SUBJECT THERETO, ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

    NOW COMES Defendant Lynsey Adame (hereinafter referred to as "Defendant") and files this her Motion to Transfer Venue and, Subject Thereto, Original Answer to Plaintiffs' Original Petition. Defendant would respectfully show the Court as follows:

**I.**

**MOTION TO TRANSFER VENUE**

    This is a pharmaceutical product liability case involving Bextra®, a prescription medication co-promoted and marketed at times by Defendant Pfizer Inc. ("Pfizer"). Plaintiffs Laurine and John Kreitz allege they sustained personal injuries as a result of Laurine Kreitz's use of Bextra®, *see* PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 1, and assert Pfizer is liable for

1

those injuries under theories of strict liability, negligence, misrepresentation, fraud, and breach of warranties. *Id.* at 6-11. Plaintiffs also assert certain vague claims against twenty-one (21) current or former Pfizer field sales representatives, including Defendant, whom Plaintiffs assert detailed Bextra® to unidentified "doctors and hospitals." *See id.* at 5-6.

Plaintiffs' Petition is sufficiently imprecise to raise concerns that venue may not be proper in Aransas County. Their petition includes only a vague and conclusory assertion that "all or a substantial part of the events or omissions giving rise to the claim occurred in Aransas County, Texas," *see id.* at 4, without any specific factual allegations supporting their contention that venue in Aransas County is appropriate. It therefore is far from clear that this suit was filed in the proper venue. Consequently, pursuant to Rule 86 of the Texas Rules of Civil Procedure, Defendant files this Motion to preserve her right to challenge venue if the facts establish that venue in Aransas County is not proper.

Pfizer is a corporation. A suit against a corporation, whether foreign or domestic, may properly be brought in either (1) the county of the corporation's "principal office" in Texas, or (2) the county where "all or a substantial part of the events or omissions giving rise to the claim occurred . . . ." Tex. Civ. Prac. & Rem. Code. Ann. § 15.002(a) (Vernon 2005). Additionally, when an individual defendant is sued, venue is proper in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person. *Id.* If none of these provisions apply, venue is proper in the county in which the plaintiff resided at the time of the accrual of the cause of action. *Id.* In this case, Defendant:

(1) specifically denies that the county of suit is, or was at the time that Plaintiffs' purported causes of action accrued, the county of any defendant's principal office in Texas;

(2) specifically denies that all or a substantial part of the events or omissions giving rise to Plaintiffs' purported claims occurred in the county of suit;

    (3)      specifically denies that any individual defendant resided in the county of suit at the time Plaintiffs' purported causes of action accrued; and

    (4)      specifically denies that Plaintiffs resided in the county of suit at the time Plaintiffs' purported causes of action accrued.

Given the early stage of this proceeding at the time of this Motion, and the imprecise nature of Plaintiffs' pleadings, Defendant cannot identify for the Court the county of proper venue for Plaintiffs' claims. Defendant, therefore, requests that she be permitted reasonable time to obtain venue facts and conduct venue discovery. Defendant reserves the right to amend this motion to assert the proper county to which this case should be transferred after she has had sufficient time to discover the venue facts necessary to determine the county of proper venue.

## II.

## SUBJECT TO MOTION TO
## TRANSFER VENUE, ORIGINAL ANSWER

**A.    General Denial Pursuant to Texas Rule of Civil Procedure 92**

Subject to her Motion to Transfer Venue, Defendant denies each and every allegation made against her and demands strict proof of same by a preponderance of the evidence.

**B.    Affirmative Defenses**

Subject to her Motion to Transfer Venue, and without assuming the burden of proof of such defenses that she would not otherwise have, Defendant affirmatively asserts the following defenses:

1.    Plaintiffs' Petition fails to state a claim against Defendant upon which relief can be granted.

2.    Plaintiffs' causes of action are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

3.    Plaintiffs' claims against Defendant are barred under Section 20, comment g of the Restatement (Third) of Torts: Products Liability.

4.   Plaintiffs' causes of action are barred by Chapter 82 of the Texas Civil Practice & Remedies Code, including but not limited to §§ 82.001, 82.003, and 82.007.

5.   Plaintiffs' causes of action are barred by Texas Civil Practice & Remedies Code § 16.012.

6.   Plaintiffs' causes of action are barred in whole or in part by the doctrines of laches, waiver and/or estoppel.

7.   Plaintiffs' recovery, if any, is barred entirely, or should be reduced, by Plaintiffs' comparative negligence.

8.   The damages alleged by Plaintiffs were caused, solely or partially, or proximately caused by some person or third party for whom Defendant is not legally responsible.

9.   This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

10.  If Plaintiffs settle with any other person or entity, then Defendant reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice and Remedies Code.

11.  Plaintiffs' alleged damages resulted from new and independent, unforeseeable, superseding and/or intervening causes unrelated to any conduct of Defendant.

12.  Plaintiffs' alleged damages were not proximately caused by any act or omission of Defendant.

13.  The producing causes of the damages Plaintiffs allegedly suffered were acts or omissions of some person, cause or entity other than Defendant.

14.    Plaintiffs' alleged damages were the result of pre-existing and/or unrelated conditions that were independent of, or far removed from, any conduct of Defendant.

15.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' damages, if any, were caused by changes and/or alterations to the product at issue made by persons not within Defendant's control.

16.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, the methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of the Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

17.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the art industry standards existing at the time of the sale.

18.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and based on the state of scientific,

5

medical, and technological knowledge at the time that Bextra® was marketed, Bextra® was reasonably safe for its normal and foreseeable use at all relevant times.

19.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, any claims by Plaintiffs for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

20.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are governed, in whole or in part, by Sections 2 and 4 of the Restatement (Third) of Torts: Product Liability (including the comments thereto) because Defendant complied with all applicable statutes and with the requirements and regulations of the Food and Drug Administration.

21.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Section 402A, comments j and/or k of the Restatement (Second) of Torts.

22.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Sections 2, 4, and 6 *et seq*. of the Restatement (Third) of Torts:

Product Liability. Alternatively, Plaintiffs' claims are barred because the product's benefits outweighed its risks.

23.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because Bextra® "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts: Product Liability.

24.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

25.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because any alleged defect was not known or not reasonably scientifically knowable at the time the product was distributed.

26.    To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

27.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendant's conduct.

7

28.   The damages, if any, recoverable by Plaintiffs must be reduced by any amount of damages legally caused by Plaintiffs' failure to mitigate such damages in whole or in part.

29.   Plaintiffs' claims are barred in whole or in part by the unforeseeable product misuse and/or abnormal or unintended use of the product.

30.   Plaintiffs' claims are barred by their failure to comply with conditions precedent to the right to recover.

31.   Plaintiffs' claims are barred because Defendant's conduct is not the producing cause, a proximate cause, or a cause-in-fact of Plaintiffs' alleged injuries.

32.   Plaintiffs' claims are barred in whole or in part by intervening and/or superseding acts.

33.   Plaintiffs' claims are barred in whole or in part by the assumption of the risk associated with the purchase and/or use of the product.

34.   Plaintiffs' claims are barred in whole or in part by the failure to heed warnings and/or failure to follow instructions.

35.   Plaintiffs' claims are barred in whole or in part by the doctrine of informed consent. Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks.  Specifically, Plaintiff gave informed consent to the prescribing physician before taking Bextra®, alone or in combination with any other drug(s).

36.   Plaintiffs' injuries, if any, were caused by an idiosyncratic reaction to the product.

37.   The duty to obtain Plaintiff's informed consent prior to prescribing Bextra®, alone or in combination with any other drug(s), rested solely with the prescribing physicians.

38.   Plaintiffs may not assert a claim against Defendant for negligent misrepresentation as Plaintiffs did not suffer a pecuniary loss as a result of any alleged misrepresentation by Defendant.

39.   Plaintiffs' claims of negligent misrepresentation are barred by the Plaintiffs' failure to justifiably rely on any alleged misrepresentation of Defendant.

40.   Plaintiffs' claims of misrepresentation are barred because any alleged misrepresentation on which Plaintiffs relied did not constitute a misrepresentation of material facts.

41.   Plaintiffs' claims of fraud are barred by reason of Plaintiff's failure to allege circumstances constituting fraud with particularity, as required under both the state and federal rules.

42.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff did not rely on any alleged express or implied warranty.

43.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs failed to notify Defendant of any alleged breach of warranty within a reasonable time after they discovered or should have discovered any such alleged breach and are, therefore, barred from any recovery for such claims.

44.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any

product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part by the relevant disclaimers.

45.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part because they are not in privity with Defendant.

46.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Defendant asserts the defenses of expiration, limitation, and exclusion to any applicable express or implied warranty, if any be proved.

47.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part because any warranties, if made, are excluded through course of dealing, course of performance, and/or usage of trade.

48.   Defendant expressly denies that any third party engaging in the acts alleged by Plaintiffs were acting as Defendant's agent or servant, at the instruction of Defendant, or within the Defendant's control.  Therefore, Plaintiffs' claims, to the extent they seek recovery for the acts or omissions of such third parties, are barred in whole or in part as a matter of law.

49.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole

10

or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

50.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption. The manufacture, marketing, and labeling of Bextra® was and is controlled by federal law, and the conduct relating to the product at issue was at all times in compliance and obedience with applicable federal law. If Plaintiffs' causes of action against Defendant are permitted and allowed, they would impede, impair, interfere with, frustrate and/or burden the effectiveness of federal law regulating the field of prescription drugs and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article I, Section 8, respectively, as set forth in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).  Plaintiffs' claims, in whole or in part, are preempted, or barred by applicable federal law, including any claim based in whole or in part on:

  (a)  any allegation of negligence *per se* or that Defendant violated federal regulations, including any regulations promulgated or enforced by the Food and Drug Administration;

  (b)  any allegation that Defendant committed "fraud" on, or otherwise misled, made misrepresentations to, concealed material information from, or violated reporting requirements imposed by any agency of the federal government, including the Food and Drug Administration;

  (c)  any allegation that Bextra® was not "safe and effective" or that the risks of the drug outweighed its benefits;

11

(d)    any allegation that Defendant failed to give Plaintiffs' healthcare providers adequate warnings concerning the risks associated with Bextra®; and/or

(e)    any allegation that, if accepted, would impose standards of care in addition to, or different from, those imposed by federal law, including federal regulations promulgated by the Food and Drug Administration.

51.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

52.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrines of primary jurisdiction and exhaustion of administrative remedies, because the FDA has exclusive or primary jurisdiction over the matters asserted in the Petition.

53.    The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

54.    Plaintiffs' claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Defendant's rights under each of the following constitutional provisions:

     (a)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

     (b)    the Takings Clause of the Fifth Amendment of the United States Constitution;

     (c)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

     (d)    the Equal Protection Clause of the Fourteenth Amendment; as well as the various provisions of the Texas Constitution, including but not limited to art. I §§ 3, 13, 14, 16 and 19.

55.    As set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), the Due Process Clause of the United States Constitution protects Defendant from any award of damages that:

     (a)    is based, in whole or in part, on conduct which did not harm the Plaintiffs;

     (b)    is based, in whole or in part, on conduct and/or harm that occurred wholly outside Texas;

     (c)    is based, in whole or in part, on conduct that is the exclusive province of federal law;

     (d)    is based, in whole or in part, on comparisons of the relative wealth of Defendant and Plaintiffs; or

     (e)    is grossly disproportionate to the harm suffered by Plaintiffs.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State*

*Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

56.  Plaintiffs' claims for punitive or exemplary damages are subject to the limitations and requirements of Chapter 41 of the Texas Civil Practice and Remedies Code, including the cap on exemplary damages set out in Section 41.008(b).

57.  Plaintiffs' claims for punitive damages are in contravention of Defendant's rights under each of the following constitutional provisions:

    (a)    the Commerce Clause of Article I, Section 8 of the United States Constitution;

    (b)    the Contracts Clause of Article I, Section 10 of the United States Constitution;

    (c)    the prohibition against *ex post facto* laws embodied in Article I, Section 10 of the United States Constitution;

    (d)    the Supremacy Clause of Article VI of the United States Constitution;

    (e)    the Free Speech Clause of the First Amendment of the United States Constitution;

    (f)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

    (g)    the Takings Clause of the Fifth Amendment of the United States Constitution;

    (h)    the Right to Counsel of the Sixth Amendment of the United States Constitution;

    (i)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

    (j)    the Right to Trial by Jury contained in the Seventh Amendment of the United States Constitution;

    (k)    the Equal Protection Clause of the Fourteenth Amendment;

    (l)    as well the various provisions of the Texas Constitution, including but not limited to Art. I. §§ 3, 13, 14, 16, and 19.

14

58.     Because of the lack of clear standards, the imposition of punitive damages against

Defendant is unconstitutionally vague and/or overbroad.

59.     No act or omission of Defendant was malicious, willful, wanton, reckless or grossly

negligent and, therefore, any award of punitive damages is barred.

60.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability

theory against her because she did not manufacture, assemble, sell, or distribute any

product at issue. Without waiving said defense and to the extent Plaintiffs' claim for

punitive damages is premised on alleged violations of FDA regulations, such claim is

preempted by federal law and by the authority set out in *Buckman Co. v. Plaintiffs'*

*Legal Comm.*, 531 U.S. 341 (2001).

61.     With respect to Plaintiffs' demand for punitive damages, Defendant specifically

incorporates by reference any and all standards or limitations regarding the

determination and enforceability of punitive damage awards which arose in the

decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm*

*Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

62.     Defendant reserves the right to supplement her assertion of defenses as she continues

with her factual investigation of Plaintiffs' claims.

## III.

## JURY DEMAND

Subject to her Motion to Transfer Venue, Defendant hereby demands a trial by jury.

## IV.

## PRAYER

WHEREFORE, Defendant prays that this cause shall be transferred to a county of proper venue, that Plaintiffs take nothing by their suit, that Defendant be discharged with her costs expended in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,
A PROFESSIONAL CORPORATION**

By: _____
Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT
LYNSEY ADAME**

16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 24th day of May, 2007:

*Via Certified Mail, Return Receipt Requested*

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
*Attorneys for Plaintiffs*



17

EXHIBIT 2(H)

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ,<br><br>   Plaintiffs,<br><br>v.<br><br>PFIZER, INC., JACQUELINE GUERRERO,<br>BOB DAVIS, JEANNE L. JALUFKA,<br>KYLE M. NELSON, JASON D. HAHN,<br>ROBERT G. VIAL, KATHRYN K. TRUITT,<br>KARI A. McLUHAN, REYNALDO RIOJAS,<br>FRANCISCO MEZA, JACK BARINEAU,<br>ERICA ZEPLIN, DEBORAH QUINONES,<br>W. LANCE GOODSON,<br>KEELY RODRIGUEZ, LEAH SILVA,<br>DANIEL PONCE, CELESTE ESCOBAR,<br>JILL GUIDRY, DANIEL TOWNSEND,<br>and LYNSEY ADAME,<br><br>   Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br><br>ARANSAS COUNTY, TEXAS<br><br><br>FILED<br>_25_ day of _May_ 20 _07_<br>at _11:58_ o'clock _A_ M<br>Pam Heard, District Clerk<br>Dist Court, Aransas County, Texas<br>By _S. P._ Deputy<br><br>36th JUDICIAL DISTRICT |

**DEFENDANT JEANNE L. JALUFKA'S MOTION TO TRANSFER VENUE
AND, SUBJECT THERETO, ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

  NOW COMES Defendant Jeanne L. Jalufka (hereinafter referred to as "Defendant") and

files this her Motion to Transfer Venue and, Subject Thereto, Original Answer to Plaintiffs'

Original Petition. Defendant would respectfully show the Court as follows:

**I.**

**MOTION TO TRANSFER VENUE**

  This is a pharmaceutical product liability case involving Bextra®, a prescription

medication co-promoted and marketed at times by Defendant Pfizer Inc. ("Pfizer"). Plaintiffs

Laurine and John Kreitz allege they sustained personal injuries as a result of Laurine Kreitz's use

of Bextra®, *see* PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 1, and assert Pfizer is liable for

1

those injuries under theories of strict liability, negligence, misrepresentation, fraud, and breach of warranties. *Id.* at 6-11. Plaintiffs also assert certain vague claims against twenty-one (21) current or former Pfizer field sales representatives, including Defendant, whom Plaintiffs assert detailed Bextra® to unidentified "doctors and hospitals." *See id.* at 5-6.

Plaintiffs' Petition is sufficiently imprecise to raise concerns that venue may not be proper in Aransas County. Their petition includes only a vague and conclusory assertion that "all or a substantial part of the events or omissions giving rise to the claim occurred in Aransas County, Texas," *see id.* at 4, without any specific factual allegations supporting their contention that venue in Aransas County is appropriate. It therefore is far from clear that this suit was filed in the proper venue. Consequently, pursuant to Rule 86 of the Texas Rules of Civil Procedure, Defendant files this Motion to preserve her right to challenge venue if the facts establish that venue in Aransas County is not proper.

Pfizer is a corporation. A suit against a corporation, whether foreign or domestic, may properly be brought in either (1) the county of the corporation's "principal office" in Texas, or (2) the county where "all or a substantial part of the events or omissions giving rise to the claim occurred . . . ." TEX. CIV. PRAC. & REM. CODE. ANN. § 15.002(a) (Vernon 2005). Additionally, when an individual defendant is sued, venue is proper in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person. *Id.* If none of these provisions apply, venue is proper in the county in which the plaintiff resided at the time of the accrual of the cause of action. *Id.* In this case, Defendant:

(1)    specifically denies that the county of suit is, or was at the time that Plaintiffs' purported causes of action accrued, the county of any defendant's principal office in Texas;

(2)    specifically denies that all or a substantial part of the events or omissions giving rise to Plaintiffs' purported claims occurred in the county of suit;

(3)    specifically denies that any individual defendant resided in the county of suit at the time Plaintiffs' purported causes of action accrued; and

(4)    specifically denies that Plaintiffs resided in the county of suit at the time Plaintiffs' purported causes of action accrued.

Given the early stage of this proceeding at the time of this Motion, and the imprecise nature of Plaintiffs' pleadings, Defendant cannot identify for the Court the county of proper venue for Plaintiffs' claims. Defendant, therefore, requests that she be permitted reasonable time to obtain venue facts and conduct venue discovery. Defendant reserves the right to amend this motion to assert the proper county to which this case should be transferred after she has had sufficient time to discover the venue facts necessary to determine the county of proper venue.

## II.

## SUBJECT TO MOTION TO
## TRANSFER VENUE, ORIGINAL ANSWER

**A.    General Denial Pursuant to Texas Rule of Civil Procedure 92**

Subject to her Motion to Transfer Venue, Defendant denies each and every allegation made against her and demands strict proof of same by a preponderance of the evidence.

**B.    Affirmative Defenses**

Subject to her Motion to Transfer Venue, and without assuming the burden of proof of such defenses that she would not otherwise have, Defendant affirmatively asserts the following defenses:

1.    Plaintiffs' Petition fails to state a claim against Defendant upon which relief can be granted.

2.    Plaintiffs' causes of action are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

3.    Plaintiffs' claims against Defendant are barred under Section 20, comment g of the Restatement (Third) of Torts: Products Liability.

3

4.    Plaintiffs' causes of action are barred by Chapter 82 of the Texas Civil Practice & Remedies Code, including but not limited to §§ 82.001, 82.003, and 82.007.

5.    Plaintiffs' causes of action are barred by Texas Civil Practice & Remedies Code § 16.012.

6.    Plaintiffs' causes of action are barred in whole or in part by the doctrines of laches, waiver and/or estoppel.

7.    Plaintiffs' recovery, if any, is barred entirely, or should be reduced, by Plaintiffs' comparative negligence.

8.    The damages alleged by Plaintiffs were caused, solely or partially, or proximately caused by some person or third party for whom Defendant is not legally responsible.

9.    This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

10.    If Plaintiffs settle with any other person or entity, then Defendant reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice and Remedies Code.

11.    Plaintiffs' alleged damages resulted from new and independent, unforeseeable, superseding and/or intervening causes unrelated to any conduct of Defendant.

12.    Plaintiffs' alleged damages were not proximately caused by any act or omission of Defendant.

13.    The producing causes of the damages Plaintiffs allegedly suffered were acts or omissions of some person, cause or entity other than Defendant.

4

14. Plaintiffs' alleged damages were the result of pre-existing and/or unrelated conditions that were independent of, or far removed from, any conduct of Defendant.

15. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' damages, if any, were caused by changes and/or alterations to the product at issue made by persons not within Defendant's control.

16. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, the methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of the Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

17. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the art industry standards existing at the time of the sale.

18. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and based on the state of scientific,

medical, and technological knowledge at the time that Bextra® was marketed, Bextra® was reasonably safe for its normal and foreseeable use at all relevant times.

19.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, any claims by Plaintiffs for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

20.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are governed, in whole or in part, by Sections 2 and 4 of the Restatement (Third) of Torts: Product Liability (including the comments thereto) because Defendant complied with all applicable statutes and with the requirements and regulations of the Food and Drug Administration.

21.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Section 402A, comments j and/or k of the Restatement (Second) of Torts.

22.   Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Sections 2, 4, and 6 *et seq.* of the Restatement (Third) of Torts:

Product Liability. Alternatively, Plaintiffs' claims are barred because the product's benefits outweighed its risks.

23.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because Bextra® "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts: Product Liability.

24.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

25.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because any alleged defect was not known or not reasonably scientifically knowable at the time the product was distributed.

26.    To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

27.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendant's conduct.

28.  The damages, if any, recoverable by Plaintiffs must be reduced by any amount of damages legally caused by Plaintiffs' failure to mitigate such damages in whole or in part.

29.  Plaintiffs' claims are barred in whole or in part by the unforeseeable product misuse and/or abnormal or unintended use of the product.

30.  Plaintiffs' claims are barred by their failure to comply with conditions precedent to the right to recover.

31.  Plaintiffs' claims are barred because Defendant's conduct is not the producing cause, a proximate cause, or a cause-in-fact of Plaintiffs' alleged injuries.

32.  Plaintiffs' claims are barred in whole or in part by intervening and/or superseding acts.

33.  Plaintiffs' claims are barred in whole or in part by the assumption of the risk associated with the purchase and/or use of the product.

34.  Plaintiffs' claims are barred in whole or in part by the failure to heed warnings and/or failure to follow instructions.

35.  Plaintiffs' claims are barred in whole or in part by the doctrine of informed consent. Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks. Specifically, Plaintiff gave informed consent to the prescribing physician before taking Bextra®, alone or in combination with any other drug(s).

36.  Plaintiffs' injuries, if any, were caused by an idiosyncratic reaction to the product.

37.  The duty to obtain Plaintiff's informed consent prior to prescribing Bextra®, alone or in combination with any other drug(s), rested solely with the prescribing physicians.

38.    Plaintiffs may not assert a claim against Defendant for negligent misrepresentation as Plaintiffs did not suffer a pecuniary loss as a result of any alleged misrepresentation by Defendant.

39.    Plaintiffs' claims of negligent misrepresentation are barred by the Plaintiffs' failure to justifiably rely on any alleged misrepresentation of Defendant.

40.    Plaintiffs' claims of misrepresentation are barred because any alleged misrepresentation on which Plaintiffs relied did not constitute a misrepresentation of material facts.

41.    Plaintiffs' claims of fraud are barred by reason of Plaintiff's failure to allege circumstances constituting fraud with particularity, as required under both the state and federal rules.

42.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff did not rely on any alleged express or implied warranty.

43.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs failed to notify Defendant of any alleged breach of warranty within a reasonable time after they discovered or should have discovered any such alleged breach and are, therefore, barred from any recovery for such claims.

44.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any

product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part by the relevant disclaimers.

45.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part because they are not in privity with Defendant.

46.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Defendant asserts the defenses of expiration, limitation, and exclusion to any applicable express or implied warranty, if any be proved.

47.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part because any warranties, if made, are excluded through course of dealing, course of performance, and/or usage of trade.

48.    Defendant expressly denies that any third party engaging in the acts alleged by Plaintiffs were acting as Defendant's agent or servant, at the instruction of Defendant, or within the Defendant's control.  Therefore, Plaintiffs' claims, to the extent they seek recovery for the acts or omissions of such third parties, are barred in whole or in part as a matter of law.

49.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole

10

or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

50.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption. The manufacture, marketing, and labeling of Bextra® was and is controlled by federal law, and the conduct relating to the product at issue was at all times in compliance and obedience with applicable federal law. If Plaintiffs' causes of action against Defendant are permitted and allowed, they would impede, impair, interfere with, frustrate and/or burden the effectiveness of federal law regulating the field of prescription drugs and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article I, Section 8, respectively, as set forth in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Plaintiffs' claims, in whole or in part, are preempted, or barred by applicable federal law, including any claim based in whole or in part on:

(a)  any allegation of negligence *per se* or that Defendant violated federal regulations, including any regulations promulgated or enforced by the Food and Drug Administration;

(b)  any allegation that Defendant committed "fraud" on, or otherwise misled, made misrepresentations to, concealed material information from, or violated reporting requirements imposed by any agency of the federal government, including the Food and Drug Administration;

(c)  any allegation that Bextra® was not "safe and effective" or that the risks of the drug outweighed its benefits;

(d)    any allegation that Defendant failed to give Plaintiffs' healthcare providers adequate warnings concerning the risks associated with Bextra®; and/or

(e)    any allegation that, if accepted, would impose standards of care in addition to, or different from, those imposed by federal law, including federal regulations promulgated by the Food and Drug Administration.

51.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

52.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrines of primary jurisdiction and exhaustion of administrative remedies, because the FDA has exclusive or primary jurisdiction over the matters asserted in the Petition.

53.    The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

54.    Plaintiffs' claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Defendant's rights under each of the following constitutional provisions:

    (a)     the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

    (b)     the Takings Clause of the Fifth Amendment of the United States Constitution;

    (c)     the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

    (d)     the Equal Protection Clause of the Fourteenth Amendment; as well as the various provisions of the Texas Constitution, including but not limited to art. I §§ 3, 13, 14, 16 and 19.

55.    As set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), the Due Process Clause of the United States Constitution protects Defendant from any award of damages that:

    (a)     is based, in whole or in part, on conduct which did not harm the Plaintiffs;

    (b)     is based, in whole or in part, on conduct and/or harm that occurred wholly outside Texas;

    (c)     is based, in whole or in part, on conduct that is the exclusive province of federal law;

    (d)     is based, in whole or in part, on comparisons of the relative wealth of Defendant and Plaintiffs; or

    (e)     is grossly disproportionate to the harm suffered by Plaintiffs.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State*

*Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

56.    Plaintiffs' claims for punitive or exemplary damages are subject to the limitations and requirements of Chapter 41 of the Texas Civil Practice and Remedies Code, including the cap on exemplary damages set out in Section 41.008(b).

57.    Plaintiffs' claims for punitive damages are in contravention of Defendant's rights under each of the following constitutional provisions:

(a)    the Commerce Clause of Article I, Section 8 of the United States Constitution;

(b)    the Contracts Clause of Article I, Section 10 of the United States Constitution;

(c)    the prohibition against *ex post facto* laws embodied in Article I, Section 10 of the United States Constitution;

(d)    the Supremacy Clause of Article VI of the United States Constitution;

(e)    the Free Speech Clause of the First Amendment of the United States Constitution;

(f)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(g)    the Takings Clause of the Fifth Amendment of the United States Constitution;

(h)    the Right to Counsel of the Sixth Amendment of the United States Constitution;

(i)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

(j)    the Right to Trial by Jury contained in the Seventh Amendment of the United States Constitution;

(k)    the Equal Protection Clause of the Fourteenth Amendment;

(l)    as well as the various provisions of the Texas Constitution, including but not limited to Art. I. §§ 3, 13, 14, 16, and 19.

58.    Because of the lack of clear standards, the imposition of punitive damages against Defendant is unconstitutionally vague and/or overbroad.

59.    No act or omission of Defendant was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

60.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and to the extent Plaintiffs' claim for punitive damages is premised on alleged violations of FDA regulations, such claim is preempted by federal law and by the authority set out in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

61.    With respect to Plaintiffs' demand for punitive damages, Defendant specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

62.    Defendant reserves the right to supplement her assertion of defenses as she continues with her factual investigation of Plaintiffs' claims.

## III.

## **JURY DEMAND**

Subject to her Motion to Transfer Venue, Defendant hereby demands a trial by jury.

IV.

**PRAYER**

WHEREFORE, Defendant prays that this cause shall be transferred to a county of proper venue, that Plaintiffs take nothing by their suit, that Defendant be discharged with her costs expended in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,**
**A PROFESSIONAL CORPORATION**

By: _____
Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT**
**JEANNE L. JALUFKA**

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 24th day of May, 2007:

*<u>Via Certified Mail, Return Receipt Requested</u>*

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
*Attorneys for Plaintiffs*



17

EXHIBIT 2(I)

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>PFIZER, INC., JACQUELINE GUERRERO,<br>BOB DAVIS, JEANNE L. JALUFKA,<br>KYLE M. NELSON, JASON D. HAHN,<br>ROBERT G. VIAL, KATHRYN K. TRUITT,<br>KARI A. McLUHAN, REYNALDO RIOJAS,<br>FRANCISCO MEZA, JACK BARINEAU,<br>ERICA ZEPLIN, DEBORAH QUINONES,<br>W. LANCE GOODSON,<br>KEELY RODRIGUEZ, LEAH SILVA,<br>DANIEL PONCE, CELESTE ESCOBAR,<br>JILL GUIDRY, DANIEL TOWNSEND,<br>and LYNSEY ADAME,<br><br>　　　　Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF<br><br><br><br><br>ARANSAS COUNTY, TEXAS<br><br><br><br>36th JUDICIAL DISTRICT |



**DEFENDANT ERICA ZEPLIN'S MOTION TO TRANSFER VENUE
AND, SUBJECT THERETO, ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Erica Zeplin (hereinafter referred to as "Defendant") and files

this her Motion to Transfer Venue and, Subject Thereto, Original Answer to Plaintiffs' Original

Petition. Defendant would respectfully show the Court as follows:

### I.

### MOTION TO TRANSFER VENUE

This is a pharmaceutical product liability case involving Bextra®, a prescription

medication co-promoted and marketed at times by Defendant Pfizer Inc. ("Pfizer"). Plaintiffs

Laurine and John Kreitz allege they sustained personal injuries as a result of Laurine Kreitz's use

of Bextra®, *see* PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 1, and assert Pfizer is liable for

1

those injuries under theories of strict liability, negligence, misrepresentation, fraud, and breach of warranties. *Id.* at 6-11. Plaintiffs also assert certain vague claims against twenty-one (21) current or former Pfizer field sales representatives, including Defendant, whom Plaintiffs assert detailed Bextra® to unidentified "doctors and hospitals." *See id.* at 5-6.

Plaintiffs' Petition is sufficiently imprecise to raise concerns that venue may not be proper in Aransas County. Their petition includes only a vague and conclusory assertion that "all or a substantial part of the events or omissions giving rise to the claim occurred in Aransas County, Texas," *see id.* at 4, without any specific factual allegations supporting their contention that venue in Aransas County is appropriate. It therefore is far from clear that this suit was filed in the proper venue. Consequently, pursuant to Rule 86 of the Texas Rules of Civil Procedure, Defendant files this Motion to preserve her right to challenge venue if the facts establish that venue in Aransas County is not proper.

Pfizer is a corporation. A suit against a corporation, whether foreign or domestic, may properly be brought in either (1) the county of the corporation's "principal office" in Texas, or (2) the county where "all or a substantial part of the events or omissions giving rise to the claim occurred . . . ." TEX. CIV. PRAC. & REM. CODE. ANN. § 15.002(a) (Vernon 2005). Additionally, when an individual defendant is sued, venue is proper in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person. *Id.* If none of these provisions apply, venue is proper in the county in which the plaintiff resided at the time of the accrual of the cause of action. *Id.* In this case, Defendant:

(1)    specifically denies that the county of suit is, or was at the time that Plaintiffs' purported causes of action accrued, the county of any defendant's principal office in Texas;

(2)    specifically denies that all or a substantial part of the events or omissions giving rise to Plaintiffs' purported claims occurred in the county of suit;

(3)      specifically denies that any individual defendant resided in the county of suit at the time Plaintiffs' purported causes of action accrued; and

(4)      specifically denies that Plaintiffs resided in the county of suit at the time Plaintiffs' purported causes of action accrued.

Given the early stage of this proceeding at the time of this Motion, and the imprecise nature of Plaintiffs' pleadings, Defendant cannot identify for the Court the county of proper venue for Plaintiffs' claims. Defendant, therefore, requests that she be permitted reasonable time to obtain venue facts and conduct venue discovery. Defendant reserves the right to amend this motion to assert the proper county to which this case should be transferred after she has had sufficient time to discover the venue facts necessary to determine the county of proper venue.

## II.

## SUBJECT TO MOTION TO
## TRANSFER VENUE, ORIGINAL ANSWER

### A.    General Denial Pursuant to Texas Rule of Civil Procedure 92

Subject to her Motion to Transfer Venue, Defendant denies each and every allegation made against her and demands strict proof of same by a preponderance of the evidence.

### B.    Affirmative Defenses

Subject to her Motion to Transfer Venue, and without assuming the burden of proof of such defenses that she would not otherwise have, Defendant affirmatively asserts the following defenses:

1.    Plaintiffs' Petition fails to state a claim against Defendant upon which relief can be granted.

2.    Plaintiffs' causes of action are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

3.    Plaintiffs' claims against Defendant are barred under Section 20, comment g of the Restatement (Third) of Torts: Products Liability.

4.   Plaintiffs' causes of action are barred by Chapter 82 of the Texas Civil Practice & Remedies Code, including but not limited to §§ 82.001, 82.003, and 82.007.

5.   Plaintiffs' causes of action are barred by Texas Civil Practice & Remedies Code § 16.012.

6.   Plaintiffs' causes of action are barred in whole or in part by the doctrines of laches, waiver and/or estoppel.

7.   Plaintiffs' recovery, if any, is barred entirely, or should be reduced, by Plaintiffs' comparative negligence.

8.   The damages alleged by Plaintiffs were caused, solely or partially, or proximately caused by some person or third party for whom Defendant is not legally responsible.

9.   This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

10.  If Plaintiffs settle with any other person or entity, then Defendant reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice and Remedies Code.

11.  Plaintiffs' alleged damages resulted from new and independent, unforeseeable, superseding and/or intervening causes unrelated to any conduct of Defendant.

12.  Plaintiffs' alleged damages were not proximately caused by any act or omission of Defendant.

13.  The producing causes of the damages Plaintiffs allegedly suffered were acts or omissions of some person, cause or entity other than Defendant.

14. Plaintiffs' alleged damages were the result of pre-existing and/or unrelated conditions that were independent of, or far removed from, any conduct of Defendant.

15. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' damages, if any, were caused by changes and/or alterations to the product at issue made by persons not within Defendant's control.

16. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, the methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of the Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

17. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the art industry standards existing at the time of the sale.

18. Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and based on the state of scientific,

medical, and technological knowledge at the time that Bextra® was marketed, Bextra® was reasonably safe for its normal and foreseeable use at all relevant times.

19.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, any claims by Plaintiffs for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

20.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are governed, in whole or in part, by Sections 2 and 4 of the Restatement (Third) of Torts: Product Liability (including the comments thereto) because Defendant complied with all applicable statutes and with the requirements and regulations of the Food and Drug Administration.

21.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Section 402A, comments j and/or k of the Restatement (Second) of Torts.

22.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims against Defendant are barred under Sections 2, 4, and 6 *et seq*. of the Restatement (Third) of Torts:

Product Liability. Alternatively, Plaintiffs' claims are barred because the product's benefits outweighed its risks.

23.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because Bextra® "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts: Product Liability.

24.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

25.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part because any alleged defect was not known or not reasonably scientifically knowable at the time the product was distributed.

26.    To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

27.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendant's conduct.

28. The damages, if any, recoverable by Plaintiffs must be reduced by any amount of damages legally caused by Plaintiffs' failure to mitigate such damages in whole or in part.

29. Plaintiffs' claims are barred in whole or in part by the unforeseeable product misuse and/or abnormal or unintended use of the product.

30. Plaintiffs' claims are barred by their failure to comply with conditions precedent to the right to recover.

31. Plaintiffs' claims are barred because Defendant's conduct is not the producing cause, a proximate cause, or a cause-in-fact of Plaintiffs' alleged injuries.

32. Plaintiffs' claims are barred in whole or in part by intervening and/or superseding acts.

33. Plaintiffs' claims are barred in whole or in part by the assumption of the risk associated with the purchase and/or use of the product.

34. Plaintiffs' claims are barred in whole or in part by the failure to heed warnings and/or failure to follow instructions.

35. Plaintiffs' claims are barred in whole or in part by the doctrine of informed consent. Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks. Specifically, Plaintiff gave informed consent to the prescribing physician before taking Bextra®, alone or in combination with any other drug(s).

36. Plaintiffs' injuries, if any, were caused by an idiosyncratic reaction to the product.

37. The duty to obtain Plaintiff's informed consent prior to prescribing Bextra®, alone or in combination with any other drug(s), rested solely with the prescribing physicians.

8

38.     Plaintiffs may not assert a claim against Defendant for negligent misrepresentation as Plaintiffs did not suffer a pecuniary loss as a result of any alleged misrepresentation by Defendant.

39.     Plaintiffs' claims of negligent misrepresentation are barred by the Plaintiffs' failure to justifiably rely on any alleged misrepresentation of Defendant.

40.     Plaintiffs' claims of misrepresentation are barred because any alleged misrepresentation on which Plaintiffs relied did not constitute a misrepresentation of material facts.

41.     Plaintiffs' claims of fraud are barred by reason of Plaintiff's failure to allege circumstances constituting fraud with particularity, as required under both the state and federal rules.

42.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff did not rely on any alleged express or implied warranty.

43.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs failed to notify Defendant of any alleged breach of warranty within a reasonable time after they discovered or should have discovered any such alleged breach and are, therefore, barred from any recovery for such claims.

44.     Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any

product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part by the relevant disclaimers.

45.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims for breach of warranty are barred in whole or in part because they are not in privity with Defendant.

46.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Defendant asserts the defenses of expiration, limitation, and exclusion to any applicable express or implied warranty, if any be proved.

47.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part because any warranties, if made, are excluded through course of dealing, course of performance, and/or usage of trade.

48.    Defendant expressly denies that any third party engaging in the acts alleged by Plaintiffs were acting as Defendant's agent or servant, at the instruction of Defendant, or within the Defendant's control.  Therefore, Plaintiffs' claims, to the extent they seek recovery for the acts or omissions of such third parties, are barred in whole or in part as a matter of law.

49.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole

or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

50.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption. The manufacture, marketing, and labeling of Bextra® was and is controlled by federal law, and the conduct relating to the product at issue was at all times in compliance and obedience with applicable federal law. If Plaintiffs' causes of action against Defendant are permitted and allowed, they would impede, impair, interfere with, frustrate and/or burden the effectiveness of federal law regulating the field of prescription drugs and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article I, Section 8, respectively, as set forth in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Plaintiffs' claims, in whole or in part, are preempted, or barred by applicable federal law, including any claim based in whole or in part on:

(a)    any allegation of negligence *per se* or that Defendant violated federal regulations, including any regulations promulgated or enforced by the Food and Drug Administration;

(b)    any allegation that Defendant committed "fraud" on, or otherwise misled, made misrepresentations to, concealed material information from, or violated reporting requirements imposed by any agency of the federal government, including the Food and Drug Administration;

(c)    any allegation that Bextra® was not "safe and effective" or that the risks of the drug outweighed its benefits;

(d)     any allegation that Defendant failed to give Plaintiffs' healthcare providers adequate warnings concerning the risks associated with Bextra®; and/or

(e)     any allegation that, if accepted, would impose standards of care in addition to, or different from, those imposed by federal law, including federal regulations promulgated by the Food and Drug Administration.

51.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

52.    Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiffs' claims are barred, in whole or in part, by the doctrines of primary jurisdiction and exhaustion of administrative remedies, because the FDA has exclusive or primary jurisdiction over the matters asserted in the Petition.

53.    The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

54.    Plaintiffs' claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Defendant's rights under each of the following constitutional provisions:

12

(a)    the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(b)    the Takings Clause of the Fifth Amendment of the United States Constitution;

(c)    the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

(d)    the Equal Protection Clause of the Fourteenth Amendment; as well as the various provisions of the Texas Constitution, including but not limited to art. I §§ 3, 13, 14, 16 and 19.

55.    As set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), the Due Process Clause of the United States Constitution protects Defendant from any award of damages that:

(a)    is based, in whole or in part, on conduct which did not harm the Plaintiffs;

(b)    is based, in whole or in part, on conduct and/or harm that occurred wholly outside Texas;

(c)    is based, in whole or in part, on conduct that is the exclusive province of federal law;

(d)    is based, in whole or in part, on comparisons of the relative wealth of Defendant and Plaintiffs; or

(e)    is grossly disproportionate to the harm suffered by Plaintiffs.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State*

*Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

56.    Plaintiffs' claims for punitive or exemplary damages are subject to the limitations and requirements of Chapter 41 of the Texas Civil Practice and Remedies Code, including the cap on exemplary damages set out in Section 41.008(b).

57.    Plaintiffs' claims for punitive damages are in contravention of Defendant's rights under each of the following constitutional provisions:

  (a)  the Commerce Clause of Article I, Section 8 of the United States Constitution;

  (b)  the Contracts Clause of Article I, Section 10 of the United States Constitution;

  (c)  the prohibition against *ex post facto* laws embodied in Article I, Section 10 of the United States Constitution;

  (d)  the Supremacy Clause of Article VI of the United States Constitution;

  (e)  the Free Speech Clause of the First Amendment of the United States Constitution;

  (f)  the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

  (g)  the Takings Clause of the Fifth Amendment of the United States Constitution;

  (h)  the Right to Counsel of the Sixth Amendment of the United States Constitution;

  (i)  the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

  (j)  the Right to Trial by Jury contained in the Seventh Amendment of the United States Constitution;

  (k)  the Equal Protection Clause of the Fourteenth Amendment;

  (l)  as well as the various provisions of the Texas Constitution, including but not limited to Art. I. §§ 3, 13, 14, 16, and 19.

58.  Because of the lack of clear standards, the imposition of punitive damages against Defendant is unconstitutionally vague and/or overbroad.

59.  No act or omission of Defendant was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

60.  Defendant affirmatively pleads that Plaintiffs cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and to the extent Plaintiffs' claim for punitive damages is premised on alleged violations of FDA regulations, such claim is preempted by federal law and by the authority set out in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

61.  With respect to Plaintiffs' demand for punitive damages, Defendant specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

62.  Defendant reserves the right to supplement her assertion of defenses as she continues with her factual investigation of Plaintiffs' claims.

## III.

## JURY DEMAND

Subject to her Motion to Transfer Venue, Defendant hereby demands a trial by jury.

IV.

**PRAYER**

WHEREFORE, Defendant prays that this cause shall be transferred to a county of proper venue, that Plaintiffs take nothing by their suit, that Defendant be discharged with her costs expended in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,**
**A PROFESSIONAL CORPORATION**

By: _____
Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT**
**ERICA ZEPLIN**

16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 24th day of May, 2007:

### *Via Certified Mail, Return Receipt Requested*

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
*Attorneys for Plaintiffs*

17

**EXHIBIT 2(J)**

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ, | §<br>§ | IN THE DISTRICT COURT OF |
| | §<br>§ | |
| Plaintiffs, | §<br>§ | |
| | § | ARANSAS COUNTY, TEXAS |
| v. | §<br>§ | |
| PFIZER, INC., ET AL., | §<br>§ | |
| | § | |
| Defendants. | § | 36th JUDICIAL DISTRICT |

## <u>NOTICE TO PLAINTIFFS OF FILING OF NOTICE OF REMOVAL</u>

TO:    Laurine Kreitz and John C. Kreitz, by and through their attorneys of record, Kathryn Snapka, Greg W. Turman, Rick B. Waterhouse, Jr., and Aditi Anita Shahani, SNAPKA, TURMAN & WATERHOUSE, L.L.P., P.O. Drawer 23017, 606 N. Carancahua, Suite 1511, Corpus Christi, Texas 78403.

You will please take notice that Pfizer Inc., Defendant in the above-styled and numbered cause originally filed in the 36th District Court of Aransas County, Texas, namely, *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, Cause No. A-07-0075-CV-A, has filed in the United States District Court for the Southern District of Texas, Corpus Christi Division, its Notice of Removal in the above-captioned cause from said District Court of Aransas County, Texas, to the United States District Court for the Southern District of Texas, Corpus Christi Division.

Attached hereto you will find a copy of said Notice of Removal.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,
A PROFESSIONAL CORPORATION**

By:  _____
Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT PFIZER INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 1st day of June, 2007.

### *Via Certified Mail/Return Receipt Requested*

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78476
*Attorneys for Plaintiff*

3

EXHIBIT 2(K)

CAUSE NO. A-07-0075-CV-A

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ, | §<br>§ | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | ARANSAS COUNTY, TEXAS |
| v. | § | |
| | § | |
| PFIZER, INC., ET AL., | § | |
| | § | |
| Defendants. | § | 36th JUDICIAL DISTRICT |

## NOTICE TO STATE COURT OF FILING OF NOTICE OF REMOVAL

TO:    Pam Heard, District Clerk, Aransas County, Texas.

PLEASE TAKE NOTICE that Defendant Pfizer Inc. has filed its Notice of Removal to the United States District Court for the Southern District of Texas, Corpus Christi Division, a copy of which is attached hereto.  Defendant Pfizer hereby files a copy of the Notice with the Clerk of the District Court of Aransas County, Texas, all in accordance with 28 U.S.C. § 1446(d).

Dated: June 1, 2007.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,
A PROFESSIONAL CORPORATION**

By: _____

Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
E-mail: kjf@ctw.com
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com

P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]

**COUNSEL FOR DEFENDANT PFIZER INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 1st day of June, 2007.

*Via Certified Mail/Return Receipt Requested*

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78476
*Attorneys for Plaintiffs*

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and | § | |
| JOHN C. KREITZ, | § | |
| | § | CIVIL ACTION NO. _____ |
| Plaintiffs, | § | |
| | § | JURY REQUESTED |
| v. | § | |
| | § | *Pending Transfer to MDL-1699* |
| PFIZER, INC., ET AL., | § | *(In re Bextra and Celebrex Marketing,* |
| | § | *Sales Practices and Prods. Liab. Litig.)* |
| Defendants. | § | |

## LIST OF ATTORNEYS

### Attorneys for Plaintiffs

Kathryn Snapka
State Bar No. 18781200
Greg W. Turman
State Bar No. 00785123
Rick B. Waterhouse, Jr.
State Bar No. 00788624
Aditi Anita Shahani
State Bar No. 24041898
**SNAPKA, TURMAN & WATERHOUSE, L.L.P.**
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
(361) 888-7676
(361) 884-8545 [Fax]

**Attorneys for Defendants Pfizer Inc., Jeanne L. Jalufka, Robert G. Vial, Erica Zeplin, W. Lance Goodson, and Lynsey Adame**

Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
Southern District I.D. No. 12703
Leslie A. Benitez
State Bar No. 02134300
Southern District I.D. No. 10017
Kelly R. Kimbrough
State Bar No. 00794984
Southern District I.D. No. 25675
J. Andrew Hutton
State Bar No. 24012878
Southern District I.D. No. 26762
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 (Fax)

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LAURINE KREITZ and            §
JOHN C. KREITZ,                  §
                             §
            Plaintiffs,        §
                             §
v.                                §
                             §
PFIZER, INC., ET AL.,        §
                             §
            Defendants.     §

CIVIL ACTION NO. _____

JURY REQUESTED

*Pending Transfer to MDL-1699*
*(In re Bextra and Celebrex Marketing,*
*Sales Practices and Prods. Liab. Litig.)*

## <u>PARTIES REQUESTING TRIAL BY JURY</u>

Plaintiffs requested trial by jury in their Original Petition

Defendant Pfizer Inc. requested trial by jury in its Motion to Transfer Venue and, Subject Thereto, Original Answer

Defendant Jeanne L. Jalufka requested trial by jury in her Motion to Transfer Venue and, Subject Thereto, Original Answer

Defendant Robert G. Vial requested trial by jury in his Motion to Transfer Venue and, Subject Thereto, Original Answer

Defendant Erica Zeplin requested trial by jury in her Motion to Transfer Venue and, Subject Thereto, Original Answer

Defendant W. Lance Goodson requested trial by jury in his Motion to Transfer Venue and, Subject Thereto, Original Answer

Defendant Lynsey Adame requested trial by jury in her Motion to Transfer Venue and, Subject Thereto, Original Answer

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ, | § <br> § <br> § | |
| | § | CIVIL ACTION NO. _____ |
| Plaintiffs, | § <br> § | |
| | § | JURY REQUESTED |
| v. | § | |
| | § | *Pending Transfer to MDL-1699* |
| PFIZER, INC., ET AL., | § | *(In re Bextra and Celebrex Marketing,* |
| | § | *Sales Practices and Prods. Liab. Litig.)* |
| Defendants. | § | |

## STATE COURT INFORMATION

This case is being removed from the 36th Judicial District Court of Aransas County, Texas, whose address is as follows:

Pam Heard
Aransas County District Clerk
301 N. Live Oak
Rockport, Texas 78382

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and | § | |
| JOHN C. KREITZ, | § | |
| | § | CIVIL ACTION NO. _____ |
| Plaintiffs, | § | |
| | § | JURY REQUESTED |
| v. | § | |
| | § | *Pending Transfer to MDL-1699* |
| PFIZER, INC., ET AL., | § | *(In re Bextra and Celebrex Marketing,* |
| | § | *Sales Practices and Prods. Liab. Litig.)* |
| Defendants. | § | |

## **DECLARATION EVIDENCE CITED IN NOTICE OF REMOVAL**

A.    Declaration of Jacqueline Guerrero

B.    Declaration of Bob Davis

C.    Declaration of Jeanne Jalufka

D.    Declaration of Kyle Nelson

E.    Declaration of Jason Hahn

F.    Declaration of Robert Vial

G.    Declaration of Kathryn Truitt

H.    Declaration of Kari A. McLuhan

I.    Declaration of Reynaldo Riojas

J.    Declaration of Francisco Meza

K.    Declaration of Jack Barineau

L.    Declaration of Erica Zeplin

M.    Declaration of Deborah Quinones

N.    Declaration of W. Lance Goodson

O.    Declaration of Keely Rodriguez

P.    Declaration of Leah Silva

Q.     Declaration of Daniel Ponce

R.     Declaration of Celeste Escobar

S.     Declaration of Jill Guidry

T.     Declaration of Daniel Townsend

U.     Declaration of Lynsey Adame

# EXHIBIT 6(A)

# DECLARATION OF JACQUELINE GUERRERO

COUNTY OF NUECES             §
                                    §

STATE OF TEXAS                §

    1.      My name is Jacqueline Guerrero. I am over eighteen years of age, of sound mind, and am competent to make this declaration. These statements are based upon my personal knowledge and are true and correct.

    2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

    3.      I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since July 2003, and am still employed by Pfizer today. As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products. My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients. Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers. Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

    4.      I am not a medical doctor or pharmacist. I have no specialized medical or pharmacological education, except what I have received from my employer.

    5.      The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail. I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.    I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so. I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past. I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

8.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes"). I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.    The basis for my information about Bextra® is information provided to me by Pfizer. Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true. I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else. Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.    I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient. Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May ___7___, 2007.

JACQUELINE GUERRERO

# EXHIBIT 6(B)

## DECLARATION OF BOB DAVIS

| | |
|---|---|
| COUNTY OF NUECES | § |
| | § |
| STATE OF TEXAS | § |

1.       My name is Bob Davis.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.       I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.       I have been employed as a field sales representative – also known as a "detailer" – by Pfizer, and previously by Pharmacia Corporation, Pfizer's now-subsidiary, since October 2000, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

4.       I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

5.       The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.      I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.      As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County at any time during which I was responsible for "detailing" Bextra®.  Thus, I never called on, visited, or detailed any healthcare providers regarding Bextra® in Aransas County.

8.      I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.      The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.     At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.     I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.     I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2nd, 2007.

BOB DAVIS

EXHIBIT 6(C)

## DECLARATION OF JEANNE JALUFKA

COUNTY OF NUECES                              §
                                             §
STATE OF TEXAS                               §

1.     My name is Jeanne Jalufka.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.   These statements are based upon my personal knowledge and are true and correct.

2.     I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.     Beginning in March 1998, I was employed as a field sales representative – also known as a "detailer" – by Pharmacia Corporation, now a subsidiary of Pfizer (collectively referred to herein as "Pfizer").   However, I am no longer employed by Pfizer, having left the company in April 2003.

4.     As a detailer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

5.     I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

6.     The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer. Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

7.     I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so. I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

8.     As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past. I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

9.     I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes"). I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

10.     The basis for my information about Bextra® is information provided to me by Pfizer. Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true. I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

11.     At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else. Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

12.     I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

13.     I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May __14__, 2007.

JEANNE JALUFKA

# EXHIBIT 6(D)

DECLARATION OF KYLE M. NELSON

COUNTY OF COLLIN                          §
                                         §
STATE OF TEXAS                           §

1.      My name is Kyle M. Nelson.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.    These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      Beginning in September 2000, I was employed as a field sales representative – also known as a "detailer" – by Pharmacia Corporation, now a subsidiary of Pfizer (collectively referred to herein as "Pfizer").  However, I no longer work for Pfizer, having left the company in May 2003.

4.      As a detailer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

5.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I received from my employer.

6.     The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by my employer.  Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed.  I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

7.     I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

8.     As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

9.     I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

10.     The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

11.     At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

12.     I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

13.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2007.

_____
KYLE M. NELSON

**EXHIBIT 6(E)**

## DECLARATION OF JASON HAHN

| | |
|---|---|
| COUNTY OF NUECES | § |
| | § |
| STATE OF TEXAS | § |
| | § |

1.      My name is Jason Hahn.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      Beginning in August 2000, I was employed as a field sales representative – also known as a "detailer" – by G.D. Searle, and then by Pharmacia Corporation, now both subsidiaries of Pfizer (collectively referred to herein as "Pfizer").  However, I am no longer employed by Pfizer, having left the company in August 2002.

4.      As a detailer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

5.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

6.  The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer. Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

7.  I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so. I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

8.  As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past. I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

9.  I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes"). I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

10.  The basis for my information about Bextra® is information provided to me by Pfizer. Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true. I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

11.  At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else. Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

12.  I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient. Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May ⎯⎯7⎯⎯, 2007.

JASON HAHN ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

# EXHIBIT 6(F)

DECLARATION OF ROBERT VIAL

COUNTY OF NUECES                    §
                                   §
STATE OF TEXAS                     §

1.      My name is Robert Vial.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      Beginning in approximately 1996, I was employed as a field sales representative – also known as a "detailer" – by G.D. Searle, and then by Pharmacia Corporation, now both subsidiaries of Pfizer (collectively referred to herein as "Pfizer").  However, I am no longer employed by Pfizer, having left the company in 2003.

4.      As a detailer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

5.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

6.    The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer.  Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed.  I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

7.    I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

8.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

9.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

10.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

11.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

12.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May ⎯7⎯, 2007.

_____
ROBERT VIAL

# EXHIBIT 6(G)

## DECLARATION OF KATHRYN TRUITT

COUNTY OF HIDALGO                              §
                                              §
STATE OF TEXAS                                §

1.     My name is Kathryn Truitt.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.     I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.,* filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.     Beginning in February 1999, I was employed as a field sales representative – also known as a "detailer" – by Pharmacia Corporation, now a subsidiary of Pfizer (collectively referred to herein as "Pfizer").  However, I am no longer employed by Pfizer, having left the company in 2003.

4.     As a detailer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

5.     I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

6.    The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer.  Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed.  I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

7.    I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

8.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.  However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County.  Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

9.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

10.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

2

11.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else. Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

12.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient. Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May ___7___, 2007.

KATHRYN TRUITT

EXHIBIT 6(H)

DECLARATION OF KARI A. McLUHAN

COUNTY OF MARICOPA                    §
                                     §
STATE OF ARIZONA                     §

1.      My name is Kari A. McLuhan.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      I have been a resident and citizen of the State of Arizona since June 2003.  At no time since June 2003 have I maintained a residence or domicile in the State of Texas.

4.      Beginning in October 2001, I was employed as a field sales representative – also known as a "detailer" – by Pharmacia Corporation, which now is a subsidiary of Pfizer (hereinafter referred to collectively as "Pfizer").  However, I no longer work for Pfizer, and moved to Arizona in June 2003.

5.      As a detailer for Pfizer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

6.    I am not a medical doctor or pharmacist. I have no specialized medical or pharmacological education, except what I received from my employer.

7.    The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer. Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

8.    I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so. I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

9.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past. I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County. Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

10.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes"). I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

11.    The basis for my information about Bextra® is information provided to me by Pfizer. Plaintiff claims in the petition that some of Pfizer's information about Bextra® is

incorrect, but I am not aware that that is true.   I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

12.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

13.    I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

14.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May ___7___, 2007.

KARI A. McLUHAN

3

# EXHIBIT 6(I)

## DECLARATION OF REYNALDO RIOJAS

| | |
|---|---|
| COUNTY OF HIDALGO | § |
| | § |
| STATE OF TEXAS | § |

1.    My name is Reynaldo Riojas.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.    I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.    I have been employed as a field sales representative – also known as a "detailer" – by Pfizer, and previously by Pharmacia Corporation, Pfizer's now-subsidiary (collectively referred to herein as "Pfizer"), since November 2001, and am still employed by Pfizer today.

4.    As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

5.    I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

6.    The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

7.     I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so. I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

8.     As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past. I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County. Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

9.     I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes"). I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

10.     The basis for my information about Bextra® is information provided to me by Pfizer. Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true. I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

11.     At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else. Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

12.     I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

13.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May _10_, 2007.


REYNALDO RIOJAS

3

EXHIBIT 6(J)

DECLARATION OF FRANCISCO MEZA

COUNTY OF HIDALGO                    §
                                    §
STATE OF TEXAS                      §

1.    My name is Francisco Meza.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.    Beginning in June of 2000, I worked as a field sales representative – also known as a "detailer" – for Pharmacia Corporation, which now is a subsidiary of Pfizer (hereinafter referred to collectively as "Pfizer").  However, I no longer work for Pfizer, having left the company in 2003.

3.    As a detailer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.

4.    At no time have I ever marketed, distributed, sold, or promoted the drug Bextra® to health care professionals, pharmacies, or anyone else.  I was not responsible at any time for "detailing" Bextra®, and have never called on a single physician or health care provider regarding that drug.  I did not have any involvement in the design, manufacture, marketing, or testing of Bextra®.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May _0 1_ , 2007.

FRANCISCO MEZA

# EXHIBIT 6(K)

## DECLARATION OF JACK BARINEAU

COUNTY OF DALLAS                          §
                                         §
STATE OF TEXAS                           §


1.      My name is Jack Barineau.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.   These statements are based upon my personal knowledge and are true and correct.

2.      I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since November 1997, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients. Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

3.      At no time have I ever marketed, distributed, sold, or promoted the drug Bextra® to health care professionals, pharmacies, or anyone else.  I was not responsible at any time for "detailing" Bextra®, and have never called on a single physician or health care provider regarding that drug.  I did not have any involvement in the design, manufacture, marketing, or testing of Bextra®.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May ___3___, 2007.


_____
JACK BARINEAU

# Exhibit 6(L)

## DECLARATION OF ERICA ZEPLIN

COUNTY OF DALLAS          §
                                    §

STATE OF TEXAS               §

1.       My name is Erica Zeplin. I am over eighteen years of age, of sound mind, and am competent to make this declaration. These statements are based upon my personal knowledge and are true and correct.

2.       I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.       I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since 1996, and am still employed by Pfizer today. As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products. My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients. Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers. Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

4.       I am not a medical doctor or pharmacist. I have no specialized medical or pharmacological education, except what I have received from my employer.

5.       The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail. I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.    I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.  However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County.  Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

8.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May __9__, 2007.

ERICA ZEMAN

EXHIBIT 6(M)

## DECLARATION OF DEBORAH QUINONES

COUNTY OF BEXAR                           §
                                         §
STATE OF TEXAS                           §

1.      My name is Deborah Quinones.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      I was employed as a field sales representative – also known as a "detailer" – by Pfizer beginning in 1987.  As a detailer for Pfizer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

4.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I received from my employer.

5.      The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer.  Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed.  I had no

involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.    I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so. I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

7.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past. I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County. Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

8.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes"). I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.    The basis for my information about Bextra® is information provided to me by Pfizer. Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true. I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else. Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.    I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 29, 2007.

DEBORAH QUINONES

# EXHIBIT 6(N)

## DECLARATION OF W. LANCE GOODSON

| | |
|---|---|
| COUNTY OF CAMERON | §<br>§ |
| STATE OF TEXAS | §<br>§ |

1.      My name is W. Lance Goodson.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since August 2000, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

4.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

5.      The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.    I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County.  Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

8.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May ___9___, 2007.

                                W. LANCE GOODSON

# EXHIBIT 6(O)

## DECLARATION OF KEELY RODRIGUEZ

COUNTY OF CAMERON                              §
                                              §
STATE OF TEXAS                                §

1.    My name is Keely Rodriguez.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.    I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.    I am employed as a field sales representative – also known as a "detailer" – by Pfizer.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

4.    I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

5.    The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.     I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.     As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County.  Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

8.     I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.     The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.     At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.     I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.     I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May _____, 2007.

KEELY RODRIGUEZ

# EXHIBIT 6(P)

DECLARATION OF LEAH SILVA

COUNTY OF DALLAS                    §
                                   §
STATE OF TEXAS                     §

1.    My name is Leah Silva.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.    I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.    I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since February 1999, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

4.    I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

5.    The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.    I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County.  Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

8.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.    I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May _____, 2007.


_____
LEAH SILVA

# EXHIBIT 6(Q)

## DECLARATION OF DANIEL PONCE

COUNTY OF CAMERON                          §
                                          §
STATE OF TEXAS                            §

    1.    My name is Daniel Ponce.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

    2.    I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

    3.    I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since February 2002, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

    4.    I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

    5.    The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.    I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.   I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her. However, the geographical territory to which I was assigned, and for which I was responsible for calling on healthcare providers, did not include Rockport or Aransas County.  Thus, I did not call on, visit, or detail any healthcare providers in Aransas County and, more specifically, I did not detail Bextra® in Aransas County.

8.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.   At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.   I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May _____, 2007.

DANIEL PONCE

3

**EXHIBIT 6(R)**

DECLARATION OF CELESTE ESCOBAR

COUNTY OF NUECES                    §
                                   §
STATE OF TEXAS                     §

1.      My name is Celeste Escobar.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since March 2002, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients. Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

4.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

5.      The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.     I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.     As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

8.     I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.     The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.     At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.     I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.     I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May _7_, 2007.

_____

CELESTE ESCOBAR

# EXHIBIT 6(S)

## DECLARATION OF JILL GUIDRY

CADDO PARRISH                                          §
                                                       §
STATE OF LOUISIANA                                     §

1.     My name is Jill Guidry.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.     I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.     I have been a resident and citizen of the State of Louisiana since December 2005.  At no time since December 2005 have I maintained a residence or domicile in the State of Texas.

4.     Beginning in January 2001, I was employed as a field sales representative – also known as a "detailer" – by Pfizer.  However, I no longer work for Pfizer, and moved to Louisiana in December 2005.

5.     As a detailer for Pfizer, I visited physicians' offices and gave them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job was to make the physician aware of certain of Pfizer's products, so that he or she could consider whether to prescribe them for particular patients.  Typically, any visit I had with a physician lasted less than ten minutes, assuming the physician would meet with detailers.  Some physicians, as a general business policy, would not meet personally with me or other pharmaceutical sales representatives.

6.     I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I received from my employer.

7.    The information and material I used to detail Pfizer's drugs was derived exclusively from education provided to me by Pfizer.  Pfizer provided me with the FDA-approved package inserts and other information regarding the drugs I detailed.  I had no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

8.    I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Pfizer.

9.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

10.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

11.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

12.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

13.    I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

14.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May  11  , 2007.

JILL GUIDRY

EXHIBIT 6(T)

## DECLARATION OF DANIEL TOWNSEND

COUNTY OF DALLAS          §
                              §

STATE OF TEXAS             §

1.      My name is Daniel Townsend.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since July 2002, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.

4.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

5.      The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.    I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.    As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

8.    I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.    The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.    At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.    I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.    I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7th, 2007.


_____
DANIEL TOWNSEND

# EXHIBIT 6 (U)

DECLARATION OF LYNSEY ADAME

COUNTY OF NUECES                          §
                                         §
STATE OF TEXAS                           §

1.      My name is Lynsey Adame.  I am over eighteen years of age, of sound mind, and am competent to make this declaration.  These statements are based upon my personal knowledge and are true and correct.

2.      I am named as a defendant in the case styled *Laurine Kreitz and John C. Kreitz v. Pfizer, Inc., et al.*, filed on April 9, 2007 in the 36th Judicial District Court of Aransas County, Texas under Cause No. A-07-0075-CV-A.

3.      I have been employed as a field sales representative – also known as a "detailer" – by Pfizer since March 2000, and am still employed by Pfizer today.  As a detailer, I visit physicians' offices and give them FDA-approved package inserts and other FDA-approved information about Pfizer's products.  My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.  Typically, any visit I have with a physician lasts less than ten minutes, assuming the physician will meet with detailers.  Some physicians, as a general business policy, will not meet personally with me or other pharmaceutical sales representatives.

4.      I am not a medical doctor or pharmacist.  I have no specialized medical or pharmacological education, except what I have received from my employer.

5.      The information and material I use to detail Pfizer's drugs is derived exclusively from education provided to me by Pfizer.  Pfizer provides me with the FDA-approved package inserts and other information regarding the drugs I detail.  I have no involvement in the

development or preparation of package inserts for any drugs, and no control over content or other written warnings.

6.     I am not expected, as a field sales representative, to conduct independent research regarding the drugs I detail, and do not do so.  I am not expected to, and do not, review independent scientific studies published in journals unless they are supplied to me by Pfizer.

7.     As a part of my job duties, I have detailed Pfizer's drug Bextra® in the past.  I do not know whether I visited with or provided any information about Bextra® to plaintiff's prescribing physician as alleged in the petition because plaintiff has not identified him or her.

8.     I do not know the plaintiffs in this case, Laurine Kreitz or John C. Kreitz ("the Kreitzes").  I have never provided any information or made any statements about Bextra®, or any other drug, to the Kreitzes.

9.     The basis for my information about Bextra® is information provided to me by Pfizer.  Plaintiff claims in the petition that some of Pfizer's information about Bextra® is incorrect, but I am not aware that that is true.  I have no knowledge that any information provided to me by Pfizer about Bextra® is incorrect.

10.     At no time have I ever sold Bextra® to health care professionals, pharmacies, or anyone else.  Nor did I have any involvement in the design, manufacture, or testing of Bextra®.

11.     I have made no representations regarding Bextra®, whether by way of promotion or advertising or otherwise, to the general public.

12.     I have never intentionally misrepresented the safety, efficacy, or risk profile of Bextra® to any health care provider or patient.  Further, I have never knowingly made a false or misleading statement about Bextra® to any health care provider or Bextra® user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 15, 2007.

_____
LYNSEY ADAME

**EXHIBIT 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and<br>JOHN C. KREITZ, | § <br> § <br> § | CIVIL ACTION NO. _____ |
| Plaintiffs, | § <br> § | JURY REQUESTED |
| v. | § <br> § | *Pending Transfer to MDL-1699* |
| PFIZER, INC., ET AL., | § <br> § <br> § | *(In re Bextra and Celebrex Marketing,*<br>*Sales Practices and Prods. Liab. Litig.)* |
| Defendants. | § | |

## UNPUBLISHED DISTRICT COURT ORDERS CITED IN NOTICE OF REMOVAL

A.    **Order,** *Hebert v. Pfizer Inc.*, No. 1:05-CV-418-HC, slip op. (E.D. Tex. Aug. 18, 2005)

B.    **Order,** *Pickens v. Pfizer Inc.*, No. 1:05-CV-528-HC, slip op. (E.D. Tex. Aug. 18, 2005)

C.    **Order,** *Knight v. Pfizer Inc.*, No. 1:05-CV-529-HC, slip op. (E.D. Tex. Aug. 17, 2005)

D.    **Order,** *Boudreaux v. Pfizer Inc.*, No. 1:05-CV-369-HC, slip op. (E.D. Tex. July 17, 2005)

E.    **Order,** *Budd v. Wyeth*, Case No. A-03-CA-465-SS, slip op. (W.D. Tex. Sept. 17, 2003)

F.    **Order,** *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. (N.D. Tex. Feb. 17, 2004)

G.    **Order,** *Northcutt v. Wyeth*, No. H-03-2665, slip op. (S.D. Tex. Aug. 13, 2003)

H.    **Order,** *Nightingale v. Wyeth*, No. W-03-CA-203, slip op. (W.D. Tex. Sept. 5, 2003)

I.    **Order,** *Ferguson v. Wyeth*, No. 4:03-CV-5141, slip op. (S.D. Tex. Jan. 30, 2004)

J.    **Order,** *Kollman v. Wyeth*, No. A-04-CA-034-SS, slip op. (W.D. Tex. Mar. 15, 2004)

K.    **Order,** *McCluskey v. Merck & Co., Inc.*, No. 07-AR-0232-S, slip op. (N.D. Ala. Mar. 7, 2007)

L.    **Order,** *Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRJ, slip op. (M.D. Fla. June 24, 2004), and **Report and Recommendation**, *Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRJ, slip op. (M.D. Fla. May 17, 2004)

M.    **Order,** *Moffett v. Wyeth*, No. DR-03-CV-069, slip op. (W.D. Tex. Dec. 17, 2003)

# EXHIBIT 7(A)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **HORACE HEBERT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:05-CV-418** |
| | § | **Judge Howell Cobb** |
| **PFIZER, INC.,** | § | |
| **NICOLE MORRIS, KELLY KROUTTER,** | § | |
| **MARCI WALLER and BOB BRIGGS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER DENYING PLAINTIFF'S MOTION FOR REMAND

Before the court is plaintiff Horace Hebert's Motion for Remand. The court, having

carefully considered the motion, is of the opinion that remand should be denied.

### DISCUSSION

Hebert filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales

representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Hebert alleged

that Pfizer's Celebrex© prescription drug was marketed and sold to him even though Pfizer had

knowledge that Celebrex© caused cardiovascular-related adverse health effects. Hebert alleges

harm as a result of taking Celebrex©. Pfizer removed the case to federal court, claiming that the

defendant sales representatives were improperly joined and that this court has jurisdiction under

28 U.S.C. § 1332.

A.    *The Pfizer Sales Representatives are Improperly Joined*

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis

in predicting that Hebert might establish liability on his claims against any of the in-state

1

defendant-detailers. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Under

Texas law, sales representatives have no independent duty to research and ensure the safety of

pharmaceuticals. *See, e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17,

2003) ("[an] agent can only be held individually liable when he knowingly participates in

tortious or fraudulent acts"). Without an allegation that the sales representatives made a

"knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v.

Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *Northcutt v. Wyeth*, No. H-

03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D.

Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004).

Negligence alone is not enough. *Id.*

    The plaintiff's complaint does not allege that the defendant sales representatives made

any "knowing" misrepresentations. Instead, Hebert alleges only that they were "negligent and/or

reckless in the manner in which they made these affirmative representations [about the safety of

Celebrex©] or concealed material facts from the doctors and other healthcare providers."

Allegations of negligence and recklessness are not sufficient to establish liability against a sales

representative under these conditions. Pfizer has met its burden and demonstrated that there is

no reasonable basis to predict that Hebert might be able to establish liability of the in-state sales

representative defendants. Accordingly, the court concludes that they are improperly joined.

**B.    *Lack of Consent does not Defeat Removal***

    Hebert also claims that remand should be denied because not all of the defendants

consented to removal within the statutory period. 28 U.S.C. § 1446(a); *see Doe v. Kerwood*, 969

F.2d 165, 167 (5th Cir. 1992) ("[t]he law is clear that under 28 U.S.C. § 1446(a), removal

procedure requires that all defendants join in the removal petition"). However, consent is not

required from defendants who are improperly joined. *See Jernigan v. Ashland Oil, Inc.* 989 F.2d

812, 815 (5th Cir. 1993) ("[i]n cases involving alleged improper or fraudulent joinder of parties

... application of [the consent] requirement to improperly or fraudulently joined parties would be

nonsensical, as removal in those cases is based on the contention that no other proper defendant

exists"). Therefore, because the court has found that the sales representative defendants have

been improperly joined, whether or not they consented to removal is immaterial.

Incidentally, the sales representative defendants who had been served in this case -

Morris, Kroutter and Briggs - did, in fact, consent to removal. The only sales representative who

failed to consent to removal was defendant Waller, who had not been served at the time of

removal. Thus, Waller's consent would not be required even if she had been properly joined.

*See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n. 9 (5th Cir. 1988) (28 U.S.C. §

1446(a) "has been interpreted to require that all then *served"* and *"properly joined* defendants

join in the removal petition") (emphasis added). Accordingly, the plaintiff's claim that the

removal of this case was procedurally defective fails.

<u>CONCLUSION</u>

Based on the foregoing reasons, the court is of the opinion that the plaintiff's Motion for

Remand must be denied. It is, therefore,

**ORDERED** that plaintiff Horace Hebert's Motion for Remand is **DENIED**.

SIGNED at BEAUMONT, Texas, on this the 18 day of August, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

3

EXHIBIT 7(B)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | |
|---|---|
| **DORA JEANNE PICKENS,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **Civil Action No. 1:05-CV-528** |
| § | **Judge Howell Cobb** |
| **PFIZER, INC.,** § | |
| **NICOLE MORRIS, KELLY KROUTTER,** § | |
| **MARCI WALLER and BOB BRIGGS,** § | |
| § | |
| **Defendants.** § | |

## ORDER DENYING PLAINTIFF'S MOTION FOR REMAND

Before the court is plaintiff Dora Jeanne Picken's Motion for Remand. The court, having

carefully considered the motion, is of the opinion that remand should be denied.

## DISCUSSION

Pickens filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales

representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Pickens alleged

that Pfizer's Celebrex© prescription drug was marketed and sold to her even though Pfizer had

knowledge that Celebrex© caused cardiovascular-related adverse health effects. Pickens alleges

harm as a result of taking Celebrex©. Pfizer removed the case to federal court, claiming that the

defendant sales representatives were improperly joined and that this court has jurisdiction under

28 U.S.C. § 1332.

**A.**    *The Pfizer Sales Representatives are Improperly Joined*

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis

in predicting that Pickens might establish liability on his claims against any of the in-state

1

defendant-detailers. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Under

Texas law, sales representatives have no independent duty to research and ensure the safety of

pharmaceuticals. *See, e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17,

2003) ("[an] agent can only be held individually liable when he knowingly participates in

tortious or fraudulent acts"). Without an  allegation that the sales representatives made a

"knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v.*

*Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *Northcutt v. Wyeth*, No. H-

03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D.

Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004).

Negligence alone is not enough. *Id.*

　　The plaintiff's complaint does not allege that the defendant sales representatives made

any "knowing" misrepresentations. Instead, she alleges only that they were "negligent and/or

reckless in the manner in which they made these affirmative representations [about the safety of

Celebrex©] or concealed material facts from the doctors and other healthcare providers."

Allegations of negligence and recklessness are not sufficient to establish liability against a sales

representative under these conditions. Pfizer has met its burden and demonstrated that there is

no reasonable basis to predict that Pickens might be able to establish liability of the in-state sales

representative defendants. Accordingly, the court concludes that they are improperly joined.

**B.**　　*Lack of Consent does not Defeat Removal*

　　Pickens also claims that remand should be denied because not all of the defendants

consented to removal within the statutory period. 28 U.S.C. § 1446(a); *see Doe v. Kerwood*, 969

F.2d 165, 167 (5th Cir. 1992) ("[t]he law is clear that under 28 U.S.C. § 1446(a), removal

2

procedure requires that all defendants join in the removal petition"). However, consent is not required from defendants who are improperly joined. *See Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993) ("[i]n cases involving alleged improper or fraudulent joinder of parties ... application of [the consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists"). Therefore, because the court has found that the sales representative defendants have been improperly joined, whether or not they consented to removal is immaterial.

Incidentally, the sales representative defendants who had been served in this case - Morris, Kroutter and Briggs - did, in fact, consent to removal. The only sales representative who failed to consent to removal was defendant Waller, who had not been served at the time of removal. Thus, Waller's consent would not be required even if she had been properly joined. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n. 9 (5th Cir. 1988) (28 U.S.C. § 1446(a) "has been interpreted to require that all then *served"* and *"properly joined* defendants join in the removal petition") (emphasis added). Accordingly, the plaintiff's claim that the removal of this case was procedurally defective fails.

<u>CONCLUSION</u>

Based on the foregoing reasons, the court is of the opinion that the plaintiff's Motion for Remand must be denied. It is, therefore,

**ORDERED** that plaintiff Dora Jeanne Picken's Motion for Remand is **DENIED**.

SIGNED at BEAUMONT, Texas, on this the 18 day of August, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

3

# EXHIBIT 7(C)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN KNIGHT | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | Case No. 1:05-CV-529 |
| | § | Judge Howell Cobb |
| PFIZER, INC., NICOLE MORRIS, | § | |
| KELLY KROUTTER, MARCI WALLER | § | |
| and BOB BRIGGS | § | |
| | § | |
| Defendants | § | |

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**

Before the court is plaintiff John Knight's Motion for Remand [dkt. #4]. The court, having

considered the motion, is of the opinion that Remand should be DENIED.

John Knight filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales

representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Knight alleged that

Pfizer's Bextra© prescription drug was marketed and sold to her, even though Pfizer knew about

that Bextra© had cardiovascular-related adverse health effects. Knight alleges harm as a result of

taking Bextra©. Pfizer removed the case to federal court, claiming that its sales representatives were

improperly joined.

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis for

this court to predict that Knight might be able to recover against any of the in-state defendants.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Under Texas law, sales

representatives have no independent duty to research and ensure the safety of pharmaceuticals. *See,*

*e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17, 2003). Without an allegation

1

that the sales representatives made a "knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *see also Northcutt v. Wyeth*, No. H-03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D. Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004). Negligence alone is not enough. *Id.*

Plaintiff's complaint does not allege "knowing" misrepresentations on the part of the sales representatives. It alleges only that they were "negligent and/or reckless in the manner in which they made these affirmative representations [about the safety of Bextra] or concealed material facts from the doctors and other healthcare providers." Negligence and recklessness are not enough to establish liability against a sales representative under these conditions. Accordingly, Pfizer has met its burden and demonstrated that there is no reasonable basis to predict that Knight might be able to recover against any of the in-state defendants.

Knight has also claimed that remand should be denied because defendants Waller and Krouter have not consented to removal. However, consent is not required from defendants who are improperly joined. *Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993). Moreover, the record is not clear when (or even if) defendants Waller and Krouter were served. The consent of a defendant who was not yet served at the time of removal is unnecessary, even if he or she was properly joined. *Getty Oil Corp. v. Ins. Co. Of N. Am.*, 841 F.2d 1252, 1262 n. 9 (5th Cir. 1988)

It is therefore ORDERED that plaintiff John Knight's Motion for Remand is DENIED.

SIGNED at BEAUMONT, Texas, on this the 17 day of August, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

2

# EXHIBIT 7(D)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DOROTHY H. BOUDREAUX | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | Case No. 1:05-CV-369 |
| | § | Judge Howell Cobb |
| PFIZER, INC., NICOLE MORRIS, | § | |
| KELLY KROUTTER, MARCI WALLER | § | |
| and BOB BRIGGS | § | |
| | § | |
| Defendants | § | |

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**

Before the court is plaintiff Dorothy Boudreaux's Motion for Remand [dkt. #4]. The court, having considered the motion, is of the opinion that Remand should be DENIED.

Dorothy Boudreaux filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Boudreaux alleged that Pfizer's Bextra© prescription drug was marketed and sold to her, even though Pfizer knew about that Bextra© had cardiovascular-related adverse health effects. Boudreaux alleges harm as a result of taking Bextra©.    Pfizer removed the case to federal court, claiming that its sales representatives were improperly joined.

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis for this court to predict that Boudreaux might be able to recover against any of the in-state defendants. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).    Under Texas law, sales representatives have no independent duty to research and ensure the safety of pharmaceuticals. *See, e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17, 2003). Without an allegation

1

that the sales representatives made a "knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *see also Northcutt v. Wyeth*, No. H-03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D. Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004). Negligence alone is not enough. *Id.*

Plaintiff's complaint does not allege "knowing" misrepresentations on the part of the sales representatives. It alleges only that they were "negligent and/or reckless in the manner in which they made these affirmative representations [about the safety of Bextra] or concealed material facts from the doctors and other healthcare providers." Negligence and recklessness are not enough to establish liability against a sales representative under these conditions. Accordingly, Pfizer has met its burden and demonstrated that there is no reasonable basis to predict that Boudreaux might be able to recover against any of the in-state defendants.

Boudreaux has also claimed that remand should be denied because defendant Waller had not consented to removal. However, consent is not required from defendants who are improperly joined. *Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993). Moreover, because Waller had not yet been served at the time of removal, her consent would not be required even if she had been properly joined. *Getty Oil Corp. v. Ins. Co. Of N. Am.*, 841 F.2d 1252, 1262 n. 9 (5th Cir. 1988)

It is therefore ORDERED that plaintiff Dorothy Boudreaux's Motion for Remand is DENIED.

SIGNED at BEAUMONT, Texas, on this the 15 day of July, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

2

**EXHIBIT 7(E)**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2003 SEP 17  AM 9: 46

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
                DEPUTY

KATHY BUDD,

                    Plaintiff,

-vs-                                              Case No.  A-03-CA-465-SS

WYETH INC. f/k/a American Home Products
Corporation; A.H. ROBINS COMPANY,
INCORPORATED; WYETH-AYERST
LABORATORIES DIVISION; WYETH-AYERST
PHARMACEUTICALS, INC.; AMERICAN
CYANAMID CORPORATION; APRIL
WOMACK; DOUGLAS THOME; and ANN
FULCHER,

                    Defendants.

_____

## <u>ORDER</u>

BE IT REMEMBERED on the 25th day of August 2003, the Court called thee above-styled

cause for a hearing on Plaintiff's Motion to Remand [#7].  Before the Court are the Plaintiff's

Motion to Remand, Defendants' response thereto [#8], and Defendants' [#10, #15, #16] and

Plaintiff's [#13] supplements.  After the hearing, Defendants filed an Unopposed Motion to Continue

All Deadlines Under Federal Rule of Civil Procedure 26 and Local Rule CV-16 [#14].  Having

considered the motions, responses, arguments of counsel at the hearing and in their post-hearing

submissions, the relevant law and the case file as a whole, the Court now enters the following

opinion and orders.

### Factual and Procedural Background

This case involves the Plaintiff's alleged use of the diet drugs fenfluramine and

dexfenfluramine ("fen-phen").  The Plaintiff, Kathy Budd, who resides in Travis County, Texas,

opted out of a national class action settlement of fen-phen claims and filed this individual lawsuit.

*See* Notice of Removal at 2 and Ex. 2 ("Pet.") at ¶ 2. She sues several Wyeth-Ayerst entities,

including its Wyeth Pharmaceuticals Division, Wyeth Pharmaceuticals, Inc., and Wyeth Holdings

Corporation (collectively, "Wyeth"). Pet. ¶¶ 3-8. Wyeth is a Delaware corporation with its principal

place of business in New Jersey that allegedly promoted, marketed, manufactured and distributed

fen-phen. *Id.*; Notice of Removal at 3. Budd asserts claims for strict products liability, breach of

express and implied warranty, and negligent misrepresentation against Wyeth. Pet. ¶¶ 24-42. She

also sues three Wyeth pharmaceutical sales representatives – April Womack, Douglas Thome, and

Anne Fulcher – all Texas residents, for alleged misrepresentations they made in their capacities as

Wyeth sales representatives. Pet. ¶¶ 9-11. Budd, who sues all of the defendants jointly and severally,

seeks damages for past and future medical expenses, lost wages, pain and suffering, mental anguish,

and the physical impairment and disfigurement that she claims she suffered as a proximate result of

the Defendants' wrongdoings and actions. Pet. at 14-15.

Budd filed her petition in the 98th Judicial District Court of Travis County, Texas on May 29,

2003. On July 9, 2003, Wyeth removed the case to this Court on the basis of diversity jurisdiction,

alleging the Plaintiff had fraudulently joined Womack, Thome and Fulcher as defendants in the case.

According to the state court docket, citation had issued to all of the Defendants at the time of

removal. On July 31, 2003, Budd filed a motion to remand.

## Analysis

Wyeth removed the case to federal court on the basis of diversity jurisdiction. For this Court

to have diversity jurisdiction over a case, the defendant must prove there is complete diversity among

the parties in the case – in other words, the plaintiff is diverse from every defendant. *See* 28 U.S.C.

§ 1332; *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806). Thus, the primary issue before this Court is whether Womack, Thorne and Fulcher are proper defendants in this case and, consequently, whether this Court has subject matter jurisdiction over the case under 28 U.S.C. § 1332.

Wyeth alleges the sales representatives, Womack, Thorne and Fulcher, were fraudulently joined as defendants, in which case the Court would ignore their Texas citizenship for jurisdictional purposes. To establish the sales representatives, referred to by the parties as "detailers," were fraudulently joined, Wyeth must satisfy the heavy burden of showing there is no possibility Budd could establish a cause of action against Womack, Thorne or Fulcher, or that Budd committed outright fraud in her recitation of the jurisdictional facts. *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). In evaluating a defendant's assertion of fraudulent joinder, a court must consider all of the factual allegations in the light most favorable to the plaintiff and resolve all of the contested issues of fact in favor of the plaintiff. *Burden*, 60 F.3d at 217.

However, a court may pierce the pleadings to determine fraudulent joinder and, even though the petition may state a claim against the in-state defendant, the case may be removed if the removing defendant demonstrates through summary judgment-type evidence outside the pleadings there is no reasonable basis to predict the plaintiff could establish a claim against the in-state defendant. *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 389, 394 (5th Cir. 2000) ("*Badon I*"), *op. after certified question declined*, 236 F.3d 282 (5th Cir. 2000) ("*Badon II*") (holding no controversy exists to construe in favor of nonremoving party when it submits no evidence of contradictory facts in response to the evidence of the removing party); *see also B., Inc.*, 663 F.2d at 549 (affirming the

appropriateness of considering deposition and affidavit evidence). Nevertheless, a court must resolve

any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. *B.,*

*Inc.,* 663 F.2d at 549. Thus, Wyeth must show, as a matter of law, "there is no reasonable basis for

predicting that [Swinheart] might establish liability on [her] claim against [the detailers] ." *Badon*

*I,* 224 F.3d at 390; *see also Burden,* 60 F.3d at 216 (explaining district courts "do not determine

whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only

for a possibility that the plaintiff might do so.").

Wyeth contends there is no reasonable possibility Budd could succeed in her

misrepresentation claims against any of the three detailer defendants because she has not pled a valid

cause of action against Womack, Thome or Fulcher. Wyeth also contends the allegations Budd has

made against each detailer, even if they did constitute a valid cause of action, are refuted by the

evidence Wyeth has submitted.

In this case, Wyeth and Budd each urge a different interpretation of Texas substantiative law

that would in turn lead this Court to opposite conclusions as to whether Budd could conceivably

prevail on its misrepresentation claims against Womack, Thome or Fulcher. Budd contends that

because an agent or employee can be held independently liable for his own torts, she can sue the

detailers in state court for the injuries she sustains as a result of the detailers' personal

misrepresentations. On the other hand, Wyeth claims the detailers do not owe a duty of care to Budd

separate and apart from the duty of care Wyeth owes Budd, and therefore, Budd has failed to assert

a legally cognizable misrepresentation claim against the detailers.

Budd relies on *Kingston v. Helm*, 82 S.W.3d 755 (Tex. App. – Corpus Christi, 2002, pet.

denied), to support her argument Womack, Thome and Fulcher can be held individually liable under

-4-

Texas law for their misrepresentations. In *Kingston*, the state appellate court discussed at length several decisions of the Texas Supreme Court regarding the individual liability of agents and employees of corporations. The Corpus Christi court noted the general rule is "a corporate officer's acts on the corporation's behalf are deemed to be acts of the corporation," but an exception exists, and a "'corporation's employee is personally liable for tortious acts which he directs or participates in during his employment.'" *Id.* at 758 (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117-18 (Tex. 1996) and quoting *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984)). According to the *Kingston* court, "the law [in Texas] is well-settled that a corporate agent can be held liable for fraudulent statements and knowing misrepresentations even when they are made in the capacity of a representative of the corporation." *Id.* at 759. The court clarified, however, that the agent can only be held individually liable when he *knowingly* participates in tortious or fraudulent acts. *Id.* (emphasis this Court's own). The appellate court ultimately concluded that an officer of a real estate company who made false representations to the plaintiff with regard to a townhouse the plaintiff purchased could be held individually liable under the Texas Deceptive Trade Practices Act for those knowing misrepresentation. *Id.* at 757, 761.

    In this case, although Budd does not allege specific actions on the part of each detailer in the context of stating her causes of action, she make the following general allegation against all of the defendants:

> All defendants individually and through their agents, representatives and/or employees, belligerently misrepresented or omitted to state material facts about the dangers of the subject products containing PPA in that they made such misrepresentation ro omissions when they knew or should have known of the falsity of such representations. Alternatively, all defendants made such omissions or representations without exercising reasonable care to ascertain the accuracy of these representations.

Pet. ¶ 41. In the "Parties" section of the petition, Budd alleged that each detailer, in his or her position as a Wyeth sales representative, promoted fen-phen by providing information to Texas physicians, and while doing so, "affirmatively undertook to provide misleading information relating to the safety of fen/phen, which the Defendant knew or should have known were false." Pet. ¶¶ 9-11. Budd further alleged each detailer "made such representations with the intent or purpose that the Plaintiff and others would rely upon them leading to the ingestion and use of said drugs by the Plaintiff causing the Plaintiff to suffer severe and permanent heart valve damage." *Id.*

Essentially, Budd alleges the detailers passed information supplied by Wyeth to the physicians and they knew or should have known this information contained misstatements about the safety of the diet drug. This does not constitute an allegation of *knowing* participation in a misrepresentation on the part of a corporate agent (the detailer). If Budd had alleged the sales representatives made up additional misleading information and told it to the doctors to induce them to prescribe the drugs, the way a realtor might misrepresent the conditions of a piece of property to make the sale, or if she had alleged the detailers were told of the dangers of fen-phen but intentionally did not disclose them to the doctors, then she might have stated a claim with a reasonable chance of success under the exception articulated in *Kingston*. Instead, the general rule applies and because the detailers do not have duty to research and ensure the safety fen-phen separate from Wyeth's duty, Budd does not have a reasonable probability of success on her misrepresentation claims against the detailers under Texas law. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) (holding agents can only be held individually liable when they owe an independent duty of reasonable care to the injured party separate and apart from their employer's duty); *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (holding only those who design,

manufacture or sell a product have a duty to warn); *see also* Def.'s Supp. to Resp. (collecting several orders written by Judges Lee Rosenthal and Lynn Hughes of the Southern District of Texas dismissing claims against pharmaceutical sales representatives on the grounds there is no reasonable basis to recover against them under Texas law).

Moreover, even if Budd did have a reasonable chance of prevailing on her claims against the detailers individually, Wyeth has disproved the factual allegations that serve as the basis of her misrepresentation claims with uncontroverted summary judgment type evidence in the form of the detailers' sworn declarations. *See* Notice of Removal, Ex. Z1 ("Womack Decl."), Ex. Z2 ("Thome Decl."), & Ex. Z3 ("Fulcher Decl."). In their declarations, the detailers refute that they ever intentionally misrepresented the safety or efficacy of fen-phen and explained it was their job to pass on the FDA-approved information provided to them by Wyeth. *See* Womack Decl. ¶¶ 2, 4; Thome Decl. ¶¶ 2, 4, 9; Fulcher Decl. ¶¶ 2, 4, 9. Additionally, Womack never even detailed fen-phen. *See* Womack Decl. ¶ 3. And Thome and Fulcher swear they did not know of the alleged correlation between the use of the drug and heart valve damage until the allegation was first publicized. *See* Thome Decl. ¶ 6; Fulcher Decl. ¶ 6.

If Budd had produced any contradictory evidence, even if it was less credible than Wyeth's, it would have created a fact issue which the court would have had to resolve in her favor. However, on a motion to remand, the Court must only resolve fact disputes in a plaintiff's favor when "when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon I,* 224 F.3d at 394 (emphasis in original). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support its claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075

(5th Cir.1994)). Because in this case, Wyeth has negated the facts which might form the basis of a state law claim, the Court holds the detailers were fraudulently joined. The "mere theoretical possibility of recovery under local law" does not preclude removal. *Badon II,* 236 F.3d at 286; *Ross v. Citifinancial, Inc.,* ___ F.3d ___, 2003 WL 22026346, at *3 (5th Cir. Aug. 29, 2003).

      In accordance with the foregoing:

          IT IS ORDERED that Plaintiff's Motion to Remand [#7] is DENIED;

          IT IS FURTHER ORDERED that Defendants' Unopposed Motion to Continue All Deadlines Under Federal Rule of Civil Procedure 26 and Local Rule CV-16 [#14] is DISMISSED as moot in light of this order.

SIGNED this the ⎸⎸ᵗʰ day of September 2003.

                                        _Sam Sparks_

                              SAM SPARKS
                              UNITED STATES DISTRICT JUDGE

# EXHIBIT 7(F)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION



| | |
|---|---|
| THERESA LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WYETH, et al., | ) |
| | ) |
| Defendants. | )   Civil Action No. |
| | )   1:03-CV-166-C |

## ORDER

On this date the Court considered Theresa Lewis's ("Plaintiff") Motion for Remand,

filed September 29, 2003. The Court further considered Defendant Wyeth, Inc. and Wyeth

Pharmaceuticals' (collectively "Wyeth") Notice of Removal, filed August 29, 2003, and

Wyeth's Response in Opposition to Plaintiff's Motion for Remand, filed October 20, 2003.

After considering all the relevant arguments and evidence, Plaintiff's Motion for Remand is

**DENIED** for the following reasons:

## I.
## BACKGROUND

This lawsuit was originally filed in the 118th District Court of Texas, in Howard

County, on June 2, 2003. Plaintiff's cause of action arises from injuries allegedly suffered as

a result of her having taken the Wyeth prescription drugs Dexfenfluramine (Redux) and/or

Fenfluramine (Pondimin), in combination with a non-Wyeth drug, Phentermine, a

combination commonly referred to as "phen/fen." Plaintiff opted out of a national class

02/17/2004 14:16 FAX  806 472 7639        US DISTRICT COURT          → ABILENE              ☒003/012

action settlement of phen/fen claims and filed this individual suit against Wyeth, the manufacturer of the drugs involved, as well as against two of Wyeth's detail (i.e., sales) representatives, George W. Williford and Randy W. Peets (collectively, "the sales representatives"). On August 29, 2003, Wyeth removed this action, on the basis of diversity jurisdiction, to the United States District Court for the Northern District of Texas, Abilene Division. Wyeth is a Delaware corporation with its principal place of business in New Jersey. Wyeth alleges that removal was proper because the sales representatives, both of whom are Texas citizens, were fraudulently joined, in which case the Court should disregard their non-diverse citizenship for the purpose of establishing diversity jurisdiction. On August 29, 2003, Wyeth also filed a Motion to Stay All Proceedings Pending Transfer to MDL-1203, which the Court denied on September 4, 2003.

Plaintiff filed a Motion to Remand on September 29, 2003. Wyeth filed its Response in Opposition to Plaintiff's Motion for Remand on October 20, 2003.

## II.
## STANDARD

Once a case has been removed, the removing party bears the burden of proving that jurisdiction exists. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted). Removal statutes are to be strictly construed and any uncertainty regarding jurisdiction is to be resolved in favor of remand. *Brown v. Demco*, 792 F.2d 478, 482 (5th Cir. 1986). If the removing party alleges jurisdiction on the basis that non-diverse parties have been fraudulently joined, then the removing party must prove the existence of fraud. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 101 (5th Cir.), *cert. denied*, 498

02/17/2004 14:16 FAX  806 472 7639      US DISTRICT COURT      → ABILENE      ⧄004/012

U.S. 817, 111 S. Ct. 60, 112 L.Ed.2d 35 (1990).  To prove its allegation of fraud, the

removing defendant "must show either that there is no possibility that the plaintiff would be

able to establish a cause of action against the in-state defendant in state court; or that there

has been  outright fraud in the plaintiff's pleadings of jurisdictional facts." *B., Inc. v. Miller

Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).  The Fifth Circuit has more recently held

that "no possibility" means no "*reasonable* basis for predicting that state law would allow

recovery in order to preclude a finding of fraudulent joinder." *Badon v. RJR Nabisco Inc.*,

236 F.3d 282, 286 n.4 (5th Cir. 2000) (*Badon II*) (italics in original); *see also, Travis v. Irby*,

326 F.3d 644, 648 (5th Cir. 2003) ("If there is arguably a reasonable basis for predicting that

the state law might impose liability on the facts involved, then there is no fraudulent joinder.

This possibility, however, must be reasonable, not merely theoretical.") (italics omitted;

citation omitted).

In determining whether the joinder of parties is fraudulent, the district court must

evaluate all unchallenged factual allegations, including those in the complaint, in the light

most favorable to the plaintiff, resolving all contested issues of substantive fact and

ambiguities in state law in favor of the plaintiff.  *Griggs v. State Farm Lloyds*, 181 F.3d 694,

699-702 (5th Cir. 1999).  Thus, the appropriate method for resolving a claim of fraudulent

joinder is similar to that used for ruling on a motion for summary judgment under Rule 56(b)

of the Federal Rules of Civil Procedure.  *Keating v. Shell Chem. Co.*, 610 F.2d 328, 333 (5th

Cir. 1980).  In resolving a removing party's claim of fraudulent joinder, "[a] court is to pierce

the pleadings to determine whether, under controlling state law, the non-removing party has a

valid claim against the non-diverse parties." *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992); *see also Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) ("[A] district court may look to evidence outside of the pleadings in determining a fraudulent joinder claim"); *Carriere*, 893 F.2d at 100 (trial court properly considered affidavits and depositions).

In order to find that joinder is fraudulent, the court must assume that all of the facts set forth by the plaintiff are true and that there is no possibility of a valid cause of action being set forth against the in-state defendant. *B., Inc.*, 663 F.2d at 551, 554; *Tedder*, 590 F.2d at 117. However, the court must not "pre-try" substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent. *B., Inc.*, 663 F.2d at 546. The court must not decide whether the plaintiff will actually or even probably prevail on the merits but must look only for a reasonable possibility that plaintiff may do so. *Dodson*, 951 F.2d at 42; *Travis*, 326 F.3d at 648. If the possibility exists that a plaintiff may prevail, then "a good faith assertion of such an expectancy in a state court is not a sham . . . and is not fraudulent in fact or in law." *B., Inc.*, 663 F.2d at 550 (internal quotations and citations omitted). Nevertheless, on a motion to remand, the court need only resolve factual issues in movant's favor "when there exists an actual controversy, i.e., when *both* parties have sumitted *evidence* of contradictory facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (*Badon I*) (emphasis in original). In the end, if no possible claims exist against the non-diverse defendant, its presence must be disregarded for jurisdictional purposes. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116-17 (5th Cir. 1979).

# III.
# DISCUSSION

The basis for Wyeth's argument that removal is proper is its contention that the non-diverse sales representative defendants have been fraudulently joined, thus allowing the Court to ignore their citizenship for the purpose of establishing diversity jurisdiction. There being no instance of outright fraud in Plaintiff's pleadings of jurisdictional facts, Wyeth bears the burden of showing there is no reasonable possibility Plaintiff will be able to establish her cause of action against the sales representatives in Texas state court. Plaintiff asserts claims of negligent and fraudulent misrepresentation against the sales representatives, alleging that they told doctors, including Plaintiff's prescribing physician, that Pondimin and Redux were safe and effective for weight loss.

Wyeth contends that joinder is fraudulent as to the sales representatives, arguing that there is no possibility that the Plaintiff would be able to establish a valid cause of action against the sales representatives in Texas state court. In particular, Wyeth maintains that the negligence claim fails because, under Texas law, employees have no personal liability for a breach of an employer's duty unless they owe "an independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Further, Wyeth argues a defendant has no duty of care to an injured party where he neither designed, manufactured, nor sold the product that caused the injury, and thus he cannot be held liable under a negligence theory. *See Firestone Steel Prods v. Barajas*, 927 S.W.2d 608, 615 (Tex. 1996). Plaintiff argues that *Leitch*, which held that a corporate officer acting on the corporation's behalf does not owe an independent duty to a corporate employee

to provide that employee with a safe workplace, *see Leitch*, 935 S.W. 2d at 117, is

distinguishable and its holding should not be extended to the facts of this case, as any

ambiguities in state law should be resolved in Plaintiff's favor.  Plaintiff contends that she

has alleged and will establish a causal link between herself and the sales representatives.

    Nevertheless, Plaintiff fails to provide this Court with any case law that indicates to

this Court that the sales representatives would have had an independent duty of care to her for

any negligent misrepresentations they may have made.[1]  Rather, this Court takes note of a

Texas appellate court's analysis of Texas law on the subject that provided a comprehensive

discussion of several Texas Supreme Court decisions on a corporate agent's or employee's

individual liability.  *See Kingston v. Helm*, 82 S.W.3d 755 (Tex. App.–Corpus Christi 2002,

pet. denied).  The court in *Kingston* noted that the supreme court's decision in *Leitch* that

required "a separate, independent duty in order to impose personal liability on a corporate

officer or agent" for his or her own tortious conduct made an important distinction in its

recognition that "[c]auses of action rooted in negligent conduct are not analogous to causes of

action rooted in fraud and misrepresentation."  *Id.* at 762.  The settled law in Texas regarding

misrepresentation is that "a corporate agent can be held liable for fraudulent statements and

---

[1]The only Texas case Plaintiff cites for her proposition that a corporate agent has a duty of
care independent of that of the corporation for negligent acts is *Leitch*, for its recognition that "an
agent whose negligence causes an auto accident may be held individually liable along with his or
her employer when driving in the course and scope of employment." *Leitch*, 935 S.W.2d at 117.
As the court in *Kingston v. Helm* noted, however, the "independent duty" that gives rise to a
corporate agent's liability for his own negligent conduct in such an instance is the particular
"duty of reasonable care to the general public to operate an automobile in a non-negligent
manner." *Kingston v. Helm*, 82 S.W.3d 755, 762 (Tex. App.–Corpus Christi 2002, pet. denied)
(internal quotations omitted; citation omitted).

02/17/2004 14:16 FAX  806 472 7639        US DISTRICT COURT        → ABILENE        ☒008/012

knowing misrepresentations even when they are made in the capacity of a representative of the corporation," but that the corporate agent must "knowingly participate[]" in the misrepresentation. *Id.* at 759. Accordingly, this Court concludes that under Texas law, Plaintiff has no reasonable possibility of success on any claims for negligence on the part of the sales representatives. There is no ambiguity in state law to resolve in her favor.

As to Plaintiff's claims for fraud and for misrepresentation where the sales representatives knowingly or intentionally participated, because Texas law clearly allows for such a claim by Plaintiff, and because the Court must assume that the factual allegations underlying these claims are true, Wyeth can only meet its burden to show that Plaintiff has no reasonable possibility of success on these claims by providing this Court with undisputed summary judgment type evidence that disproves the factual allegations underlying these claims. Merely pointing to Plaintiff's lack of evidence is not sufficient to meet Wyeth's burden. *See Travis*, 326 F.3d at 650-51. Wyeth has presented sworn affidavits from the sales representatives in which they specifically deny the factual allegations that underlie Plaintiff's claims of fraud and knowing or intentional misrepresentation. [Wyeth's Notice of Removal, Ex. Z1 (Williford Declaration), Z2 (Peets Declaration)].

Although Plaintiff has pleaded factual allegations of a "causal link between herself and the [sales] [r]epresentatives" [Pl.'s Motion for Remand at 5], Plaintiff has presented no summary judgment type evidence to support those allegations and to dispute Wyeth's evidence. Evidence Plaintiff has submitted to show that the sales representatives met with Plaintiff's prescribing physician to promote the drugs [Affidavit of Stuart Kusin, Pl.'s Motion

-7-

for Remand, Ex. A at ¶ 5], or that other sales representatives made statements to other physicians regarding the drugs [*Id.* at ¶ 6], is not competent summary judgment evidence in support of Plaintiff's allegations.[2]  Absent some evidence of contradictory facts, there is nothing to resolve in Plaintiff's favor.  *See Badon I*, 224 F.3d at 394.  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support its claims for fraud and knowing or intentional misrepresentation against the non-diverse sales representatives.  *See id.*  A "mere theoretical possibility of recovery under [state] law" does not preclude removal.  *Badon II*, 236 F.3d at 286; *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (same).  Although Plaintiff does not bear the burden of showing that removal is proper, where removing defendant Wyeth has produced evidence in the form of affidavits to negate the claims Plaintiff might have under Texas law, the Plaintiff must produce some evidence as proof of the necessary facts to support her claims.  Absent any such evidence, Defendant has met its burden to establish that Plaintiff has no reasonable possibility of success on her claims against the sales representatives as those claims have been pleaded at the time of removal.  Therefore, the Court holds that the sales representatives were fraudulently joined and removal is proper.

---

[2]Plaintiff also argues that redacted portions of Wyeth's notes regarding visits of sales representatives to physicians to promote the drugs should be presumptive evidence of facts unfavorable to Wyeth. [Pl.'s Motion for Remand at 14-15].  However, other courts have examined these redacted portions and concluded that they refer to drugs other than those at issue in the case *sub judice*, and Plaintiff has failed to convince this Court to indulge her desired presumption herein.

02/17/2004 14:17 FAX  806 472 7639    US DISTRICT COURT    → ABILENE    ☑010/012

# IV.
## CONCLUSION

After considering all the relevant arguments and evidence, and for the foregoing

reasons, the Court concludes that there is no reasonable possibility that Plaintiff has stated a

claim cognizable in Texas state court against the sales representatives. Wyeth, therefore, has

met its burden of proving fraudulent joinder as to the sales representatives, and this Court

must ignore their citizenship for the purpose of determining diversity jurisdiction. There

being complete diversity between Plaintiff and Wyeth, removal is proper. Plaintiff's Motion

for Remand is **DENIED.**

SO ORDERED this _17th_ day of February, 2004.

SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE

# EXHIBIT 7(G)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

AUG 1 3 2003

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| TOM NORTHCUTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 03-2665 |
| | § | |
| | § | |
| WYETH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Tom Northcutt filed suit in May 2003 seeking damages in state court against a number of defendants, most from outside Texas. Northcutt alleges that in 1996, he was prescribed diet drugs containing Phentermine and Fenfluramine, a combination commonly known as fen/phen, for obesity. Fen/phen was withdrawn from the market in September 1997. In August 2000, the court presiding over MDL No. 1203, *In re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, approved a nationwide class settlement. Under that settlement, certain categories of plaintiff may exercise an "intermediate opt-out right." Northcutt identifies himself as such a plaintiff.

In this suit, Northcutt alleged that he has been diagnosed as   FDA

positive, as that term is defined by MDL No. 1203. Northcutt named a number of drug manufacturers, all diverse to plaintiff's citizenship, as defendants. He also sued his prescribing doctor, John Levins, and four sales representative or sales manager employees of Wyeth, L. Clayton Lacy, Frank Bedrick, Robert Falke, and Linda Lorch. These defendants are all Texas citizens. Wyeth removed and moved to stay pending transfer to the MDL court. Northcutt has moved to remand, asserting a lack of diversity and a failure of all defendants to consent to removal. Wyeth has responded, asserting that there is no reasonable basis for Northcutt to recover against the individual defendants under Texas law and that the unanimity requirement has not been violated.

## I.    The Removal Standard

To decide whether a defendant has been fraudulently joined, the district court can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a nondiverse defendant. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n.9 (5th Cir. Unit A Dec.1981). "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is

questioned." *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990). "If there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved,' then there is no fraudulent joinder." *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2001) (quoting *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993)). This possibility, however, must be reasonable, not merely theoretical. *See id.* at 286 n.4. The issue is whether there is a real, not theoretical, possibility of recovery under state law against the resident defendant. *Travis v. Irby*, 2003 WL 1614211 (5th Cir. 2003); *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999).

## II.   Analysis

This court finds that the record establishes no reasonable possibility for Northcutt to recover against Levins. Northcutt asserts that Levins prescribed the diet drugs to Northcutt between June 1996 and April 1997. Northcutt filed suit in May 2003. A number of courts have examined very similar claims against individual doctors who prescribed fen/phen diet drugs before they were withdrawn from the market, brought long after the limitations period. In the great majority of these cases, collected by defendant as exhibits to the response to the motion to remand, the courts have held that limitations applies as a matter of law. These courts have emphasized the absence of a latency period and the extensive publicity surrounding the fen/phen

diet drugs as giving the individual consumer ample and relatively easy opportunity to discover any injury.

Northcutt's assertion of the open courts doctrine as a basis for circumventing limitations is without legal basis. The open courts exception applies "only if it would be impossible or exceedingly difficult to discover the injury" within limitations. *Rubalcaba v. Kaestner, 981 S.W.2d 369, 373* (Tex. App.– Houston [1st Dist.] 1998, pet. denied); *O'Reilly v. Wiseman*, 2003 WL 1922492 at *7 (Tex. App.– Austin, April 24, 2003, pet. filed). There is no reasonable possibility that Northcutt could meet this standard because, as a matter of law, he easily could have discovered the injury she alleges within the limitations period. Levins's in-state citizenship is irrelevant to determining diversity jurisdiction. The claims against Levins are dismissed.

Northcutt also asserted claims against Lacy, Bedrick, Falke, and Lorch, sales representatives for Wyeth. Northcutt alleged no specific facts as to their activities in the petitions filed in the state court. In the motion to remand, Northcutt attaches certain documents relating to certain activities Lacy and Bedrick performed as Wyeth sales managers involved with promoting Redux. Assuming that such documents are properly considered, there is nonetheless no reasonable possibility that Northcutt will recover a judgment against Lacy and Bedrick or the other two sales

representatives individually on the causes of action he has alleged. Other courts examining similar allegations and evidence against individual employees of the pharmaceutical manufacturers have concluded that the joinder of such employees is fraudulent because the record as to their responsibilities precludes recovery under state tort law. Those cases are collected in the defendant's response to the motion to remand. In the present case, the individual employees have filed affidavits describing their job duties involving Redux or Pondimin. The additional documents Northcutt attached to his motion to remand did not provide any indication that Lacy or Bedrick had any involvement with Levins or with Northcutt. There is no allegation nor presentation of any facts that would create an independent duty owing from these individual employees to Northcutt, apart from the duty owing by Wyeth, that was violated. *Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex. 1996). As a matter of law, there is no reasonable basis for Northcutt to recover against the individual sales representative defendants under Texas law. The claims against them are dismissed.

The final issue on remand is the issue of the absence of consent to removal by other defendants. The record is unclear as to whether all or any of the other defendants had been served at the time of the removal. Wyeth excuses its failure to secure consents by other named defendants on the basis that they have been fraudulently joined.

The issue of whether Northcutt has fraudulently named the phentermine manufacturer defendants in order to frustrate the intent to remove is one peculiarly within the expertise and experience of the MDL court. Wyeth asserts a nationwide strategy by counsel for plaintiffs in diet drug cases to name phentermine manufacturer defendants with no intent of prosecuting the claims, in order to thwart Wyeth's ability to remove. Wyeth also asserts a recognition that there is no scientific basis for recovering against such defendants. These issues are likely to be common to many other diet drug cases. Judicial economy and consistency of result dictate that these key issues not be relitigated countless times. *See* 28 U.S.C.A. § 1407(a). Judicial economy is served by a stay in this court pending transfer to the MDL court if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the MDL transferee court. *In re Ivy*, 901 F.2d at 9. The transferee judge certainly has the power to determine the question of remand, and if, as seems likely, the remaining remand issues are common to many of the diet drug cases, decision by the transferee judge would avoid duplicative discovery and conflicting pretrial rulings.

The MDL Panel clearly has the authority to transfer this case despite a jurisdictional objection. *See, e.g., In re Ivy*, 901 F.2d 7, 8-10 (2d Cir. 1990) ("Once transferred, the jurisdictional objections can be heard and resolved by a single court

and reviewed at the appellate level in due course."); *Gonzalez v. American Home Products Corp.*, 223 F. Supp.2d 803 (S.D. Tex. 2002); *In re Federal Election Campaign Act Litigation,* 511 F. Supp. 821, 823-24 (J.P.M.L. 1979) (panel transferred actions despite pendency of motions to dismiss for lack of subject matter jurisdiction). The benefits of transferring such cases "to the MDL–the body established by Congress specifically to ameliorate the duplicative litigation and the valuable waste of judicial resources–are obvious." *Johnson v. AMR Corp.*, 1996 WL 164415 (N.D. Ill. 1996).

The decision whether to stay proceedings is discretionary and the exercise of discretion is guided by the policies of justice and efficiency. This court concludes that the remaining issue of defective removal involved in the motion to remand is peculiarly within the experience and expertise of the MDL judge and is likely to be raised in other transferred cases. A stay of the proceedings in this court furthers the policies of efficiency and consistency of pretrial rulings.

The motion to remand based on defective removal is denied without prejudice. The claims against John Levins, M.D., L. Clayton Lacy, Frank Bedrick, Robert Falke, and Linda Lorch are dismissed, with prejudice. The motion for stay of proceedings is granted, to await the ruling of the MDL Panel. This case is administratively closed, subject to reopening if it is not transferred by the MDL Panel

or when it is returned to this court.

SIGNED on August 12, 2003, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

# EXHIBIT 7(H)



FILED

**IN THE UNITED STATES DISTRICT COURT**

SEP 0 5 2003

**FOR THE WESTERN DISTRICT OF TEXAS** CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
DEPUTY CLERK

**WACO DIVISION**

ANDREA NIGHTINGALE, BILLIE §
STANSBERRY, and JAQUITA ERCK, §
    **Plaintiffs,** §
 §
**v.** §    **CIVIL ACTION NO. W-03-CA-203**
 §
WYETH, INC., WYETH §
PHARMACEUTICALS, §
BUBBER J. COLLINS, and §
PAUL M. SMITH, JR., §
    **Defendants.** §

## O R D E R

This removal action arises out of the nationwide products liability claims against the manufacturer of the weight-loss drugs known as "fen-phen." Plaintiffs assert that they have suffered physical harm as a result of their use of the weight-loss drugs Fenfluramine and Dexfenfluramine ("fen-phen"). Plaintiffs sue not only the drug manufacturer, but two pharmaceutical representatives who promoted the drugs to Plaintiffs' physicians. Defendant Wyeth based its removal of the case on diversity of citizenship, asserting that the individual pharmaceutical representatives had been fraudulently joined. Plaintiff now moves to remand the case because of the lack of diversity. Having reviewed the motions, the pleadings, and the proof presented, the Court is persuaded that remand should be denied.

The question of whether joinder is fraudulent arises in connection with the requirement of 28 U.S.C. § 1441(b) that there be diversity of citizenship among the parties to the action who are "properly joined." The burden of proving fraudulent joinder is a heavy one. <u>Green v. Amerada Hess Corp.</u>, 707 F.2d 201, 205 (5th Cir. 1983). The removing party most prove: (1) "that there has been outright fraud in the

*13*

plaintiff's pleadings of jurisdictional facts;" or (2) that there is no possibility that the plaintiff will be able to establish a valid state cause of action against the non-diverse defendant.  Id.  This does not mean that a theoretical possibility of recovery, "no matter how remote or fanciful," will suffice to defeat removal.  Badon v. RJR Nabisco, Inc., 236 F.3d 282, 286, n. 4 (5th Cir. 2000).  "[T]here must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."  Id. (emphasis in original).  "While the burden of demonstrating fraudulent joinder is a heavy one, we have never held that a particular plaintiff might possibly establish liability by the mere hypothetical possibility that such an action could exist."  Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999).  In making such a determination, the Court must "resolve any questions of material fact, and any ambiguity or uncertainty in the controlling state law, in [Plaintiffs'] favor."  Id., 181 F.3d at 699.  There is no allegation or inference of outright fraud in this case.  Defendant merely asserts that Plaintiff has no viable cause of action against Defendants Collins and Smith.

In determining whether there has been fraudulent joinder, the Court may rely upon matters outside of the pleadings, such as affidavits, deposition transcripts, or any other form of summary judgment-type proof permitted by Rule 56(c) of the Federal Rules of Civil Procedure.  Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir.), cert. denied, 498 U.S. 817 (1990).  See also Griggs v. State Farm Lloyds, 181 F.3d at 700. The Court may not, however, rely upon post-removal filings "when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."  Griggs v. State Farm Lloyds, 181 F.3d at 700.

2

The proof presented by Defendant persuades the Court that Plaintiff has no valid cause of action against Defendants Bubber J. Collins and Paul M. Smith, Jr. Plaintiffs have identified no duty under Texas law which either Defendant owed to the Plaintiffs or violated. Additionally, Plaintiff has failed to present anything to refute the Defendants' sworn testimony that no representations were made to physicians regarding the uses and/or property of the diet drugs. The paucity of proof persuades the Court that these two Defendants were added merely as a ploy to avoid federal jurisdiction. Accordingly, it is

ORDERED that Plaintiffs' Motion to Remand is **DENIED**. It is further

ORDERED that Defendant's Motion to Stay All Proceedings Pending Transfer to MDL-1203 is **GRANTED** except that the Court will entertain a Motion for Summary Judgment filed by Defendants Bubber Collins and Paul Smith. All other proceedings in this case are **STAYED** pending resolution of proceedings in the MDL Court. It is further

ORDERED that the parties shall file written status reports with the Court every 45 days until this case is finally resolved. It is further

ORDERED that any additional pending motions are **DENIED** as moot.

SIGNED this _5_ day of September, 2003.


WALTER S. SMITH, JR.
Chief United States District Judge

3

EXHIBIT 7(I)



United States Courts
Southern District of Texas
ENTERED

JAN 3 0 2004

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JANICE FERGUSON, ET AL,          §
              PLAINTIFFS         §
                                 §
V                                §          CIVIL ACTION NO. H-03-5141
                                 §
WYETH, ET AL,                    §
              DEFENDANTS         §

## ORDER

Before the Court is the plaintiffs' motion and memorandum for reconsideration and for modification of its Order granting a stay (#6). In its motion, the plaintiffs assert that the Court should rule on their motion to remand because the Court lacks subject matter jurisdiction. The plaintiffs argue that they have legitimate causes of action against Michelle Herren, Robert H. Falke, Linda Lorch and Duane J. Grace, individuals currently or formerly employed as sales representatives for Wyeth.

The Court is of the opinion that these sales representatives cannot warrant or make representations about pharmaceutical products that would override the disclosure that is required of and made by the manufacturer of the drugs. Moreover, there is no evidence or pleading indicating that the sales representatives are involved in the packaging or advertising of the drugs in question in this suit. Therefore, the Court holds that the individual defendants are fraudulently joined. The motion to remand is Denied.

It is so ORDERED.

Signed this 29th day of January, 2004.

KENNETH M. HOYT
United States District Judge

**EXHIBIT 7(J)**

SS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

MAR 1 5 2004

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
        DEPUTY CLERK

DEBRA A. KOLLMAN,

                Plaintiff,

-vs-

WYETH, et al.,

                Defendants.

Case No. A-04-CA-034-SS

---

## O R D E R

BE IT REMEMBERED on the 15th day of March 2004 the Court reviewed the file in the above-styled cause, and specifically Plaintiff's Motion to Remand [#6] and appendix in support thereof [#7], Wyeth's response thereto [#12], and Wyeth's Unopposed Motion to Continue All Deadlines Under Federal Rules of Civil Procedure 26 and 16 and Local Rule CV-16 [#13]. Having considered the motions, responses, relevant law and the case file as a whole, the Court now enters the following opinion and orders.

### Background

This case involves the Plaintiff's alleged use of the diet drugs fenfluramine, phentermine, and/or Redux, the combination of which is commonly referred to as "fen-phen." The Plaintiff, Debra Kollman, who resides in Austin County, Texas, opted out of a national class action settlement of fen-phen claims and filed this individual lawsuit. *See* Index of State Pleadings Ex. 2 ("Orig. Pet.") at ¶¶ 2-9. She sues several Wyeth entities, all foreign corporations, including Wyeth, Wyeth Pharmaceuticals, Inc., and Wyeth-Ayerst International, Inc. (collectively, "Wyeth"), allegedly Wyeth promoted, marketed, manufactured and distributed fenfluramine (Podimin and Redux). Orig. Pet.

*15*

¶ 10-13. She has also sued several manufacturers of phentermine, including Smithkline Beecham Corporation ("Smithkline"), GlaxoSmithKline, Gate Pharmaceuticals ("Gate"), and Medeva Pharmaceuticals, Inc., ("Medeva" ). She asserts claims for negligence, strict products liability, and misrepresentations against the manufacturer defendants. In addition to the manufacturers, Kollman has sued her treating physcian Chester J. Flynn, M.D. for prescribing her the diet drugs, her pharmacy, Wal-Mart Pharmacy ("Wal-Mart"), for dispensing the drugs, and a Wyeth sales representative, Gary E. Rust, for promoting and marketting the drugs and making misrepresentations about their efficacy and safety. Orig. Pet. ¶¶ 18-20. Rust and Dr. Flynn are residents of Texas. Orig. Pet. ¶¶ 18, 20. Kollman contends she has suffered injuries as a proximate result of the Defendants' acts and omissions and seeks compensatory damages against them, jointly and severally. Orig. Pet. ¶¶ 70-73.

Kollman filed her petition in the 21st Judicial District Court of Washington County, Texas on May 29, 2003. On January 21, 2004, Wyeth removed the case to this Court on the basis of diversity jurisdiction, alleging Kollman had fraudulently joined the individual defendants and in a supplemental notice of removal, that she had failed to serve the other manufacturers . On February 23, 2004, Kollman filed a motion to remand.

### Analysis

Kollman contends you should remand this case for two reasons: (1) she has sued two Texas residents and therefore the Court is without diversity jurisdiction; and (2) Wyeth's removal was procedurally defective because it failed to obtain the consent of the other defendants in this case. Wyeth counters it was not required to obtain the consent of the two Texas defendant and removal was proper because Kollman's prescribing physcian and the Wyeth sales representative were both

fraudulently joined. Additionally, Wyeth contends Kollman has waived any procedural objection

to removal because she filed her motion to remand after the deadline for doing so had expired and

regardless, Wyeth did obtain the consent of Wal-Mart and was not required to obtain the consent of

the other diverse defendants because they had not been served.

## I.    Fraudulent Joinder

This Court must decide whether Kollman's physcian, Flynn, or Wyeth sales representative,

Rust, is a proper defendant in this case and, consequently, whether this Court has subject matter

jurisdiction over the case under 28 U.S.C. § 1332. Wyeth alleges the detailer and physcian were

fraudulently joined as defendants, in which case the Court would ignore their Texas citizenship for

jurisdictional purposes. To establish Rust and Flynn were fraudulently joined, Wyeth must satisfy

the heavy burden of showing there is no reasonable possibility Kollman could establish a cause of

action against either individual, or that Kollman committed outright fraud in her recitation of the

jurisdictional facts. *See Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *B., Inc.*

*v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). In evaluating a defendant's assertion of

fraudulent joinder, a court must consider all of the factual allegations in the light most favorable to

the plaintiff and resolve all of the contested issues of fact in favor of the plaintiff. *Burden,* 60 F .3d

at 217.

However, a court may pierce the pleadings to determine fraudulent joinder and, even though

the petition may state a claim against the in-state defendant, the case may be removed if the

removing defendant demonstrates through summary judgment-type evidence outside the pleadings

there is no reasonable basis to predict the plaintiff could establish a claim against the in-state

defendant. *Badon v. R J R Nabisco, Inc.,* 224 F.3d 382, 389, 394 (5th Cir. 2000) ("*Badon I* "), *op.*

*after certified question declined,* 236 F.3d 282 (5th Cir. 2000) (*"Badon II"*) (holding no controversy

exists to construe in favor of nonremoving party when it submits no evidence of contradictory facts

in response to the evidence of the removing party); *see also B., Inc.,* 663 F.2d at 549 (affirming the

appropriateness of considering deposition and affidavit evidence).   Nevertheless, a court must

resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.

*B., Inc.,* 663 F.2d at 549. Thus, Wyeth must show, as a matter of law, "there is no reasonable basis

for predicting that [Kollman] might establish liability on [her] claim against [Rust or Flynn] ." *Badon*

*I,* 224 F.3d at 390; *see also Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5th Cir. 2003) (reaffirming

that a "court must determine whether there is arguably a reasonable basis for predicting that state law

might impose liability . . . there must be a *reasonable* possibility of recovery, not merely a

*theoretical* one.").

### A.    The Sales Representative Defendant

Wyeth contends Rust, the Wyeth detailer, was fraudulently joined because there is no

reasonable basis to predict Kollman will prevail on her claims against him.  In her state court

petition, Kollman alleged the following specific allegations regarding Rust: (1) he failed to convey

adequate warnings to her through her physician, (2) he negligently marketed and promoted fen-phen,

(3) he made negligent misrepresentations regarding the safety and efficacy of fen-phen; (4) he

negligently failed to provide sufficient instructions regarding the prescription of diet drugs, alone or

in combination; (5) in the alternative, he, contrary to Wyeth authority, promoted phen-fen while

intentionally not bringing up the side effects of the diet drugs; (6) in the alternative, he promoted

Podomin and its combination prescription with phentermine to her physician despite Wyeth's

instruction not to do so and despite a lack of FDA approval to promote such a combination; and (7)

-4-

in the alternative, he provided information to physicians regarding the safety and efficacy of fen-phen that went beyond what the FDA approved and Wyeth authorized. *See* Orig. Pet. ¶¶ 67-68.

This Court has already entered orders in several other cases denying the motions to remand of fen-phen plaintiffs who joined detailer defendants in order to defeat the Court's diversity jurisdiction. *See, e.g., Swinehart v. Wyeth, et al.,* A:03-CA-461-SS (W.D. Tex. Sept. 17, 2003); *Leonard v. Wyeth, et al.,* A:03-CA-463-SS (W.D. Tex. Sept. 17, 2003), *Palomino v. Wyeth et al.,* A:03-CA-464-SS (W.D. Tex. Sept. 17, 2003), *Budd v. Wyeth, et al.,* A:03-CA-465-SS (W.D. Tex. Sept. 17, 2003), and *Dionne v. Wyeth,* et al., A:03-CA-467-SS (W.D. Tex. Sept. 17, 2003). It is apparent from her factual allegations that Kollman is attempting to hold the Wyeth sales representative liable for failing to warn doctors about the possible dangers of prescribing fen-phen or for misrepresenting the safety of the diet drug. But as the Court explained in each of its aforementioned orders, there is no reasonable possibility that Texas courts will impose liability on the individual sales representative based on these allegations. For instance in *Dionne v. Wyeth,* after a thorough discussion of relevant Texas precedent regarding when agents of a corporation can be held liable for making misrepresentations, the Court held:

> Essentially, Dionne alleges the detailers passed information supplied by Wyeth to the physicians and they knew or should have known this information contained misstatements about the safety of the diet drug. This does not constitute an allegation of *knowing* participation in a misrepresentation on the part of a corporate agent (the detailer). If Dionne had alleged the sales representatives made up additional misleading information and told it to the doctors to induce them to prescribe the drugs, the way a realtor might misrepresent the conditions of a piece of property to make the sale, or if she had alleged the detailers were told of the dangers of fen-phen but intentionally did not disclose them to the doctors, then she might have stated a claim with a reasonable chance of success under the exception articulated in [*Kingston v. Helm,* 82 S.W.3d 755 (Tex. App. – Corpus Christi, 2002, pet. denied)]. Instead, the general rule applies and because the detailers do not have duty to research and ensure the safety fen-phen separate from Wyeth's duty, Dionne does not have a reasonable

-5-

> probability of success on her misrepresentation claims against the detailers under
> Texas law. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) (holding agents
> can only be held individually liable when they owe an independent duty of reasonable
> care to the injured party separate and apart from their employer's duty); *Firestone
> Steel Products Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (holding only those
> who design, manufacture or sell a product have a duty to warn).

*Dionne v. Wyeth*, et al., A:03-CA-467-SS (W.D. Tex. Sept. 17, 2003) at 6-7. Incorporating the

analysis of the aforementioned orders as if set out explicitly herein, the Court holds the detailer,

Rust, had no duty to warn Kollman (or her doctor) independent from Wyeth's duty and thus, there

is no reasonable probability Kollman will prevail on her negligence or failure to warn claims against

Rust.

Additionally, with regard to Kollman's allegations suggesting Rust may have intentionally

misrepresented the efficacy and safety of the diet drugs contrary to directions from Wyeth not to do

so, Wyeth has submitted summary judgment type evidence in the form of Rust's sworn declaration,

uncontroverted by Kollman, that negates any allegation that he ever made any knowing

misrepresentations about the diet drugs at issue. *See* Notice of Removal Ex. Z1 ("Rust Decl.") In

his declaration, Rust refutes that he ever intentionally misrepresented the safety or efficacy of Redux

and explained it was his job to pass on the FDA-approved information provided to the detailers by

Wyeth. Id. ¶¶ 2, 4. Rust swears he did not know of the alleged correlation between the use of fen-

phen and heart valve damage until the allegation was first publicized. Id. ¶ 6. Rust also states in his

declaration that he never sold the fen-phen drugs to any health care professional, did not distribute,

design, manufacture, or test the drugs, and did not make any "representations regarding Pondimin,

Redux, phentermine or the 'fen-phen' combination, whether by way of promotion or advertising or

otherwise to the general public." Id. ¶¶ 7-9. He further swears he "never intentionally

misrepresented the safety or efficacy of Podomin, Redux, phentermine or the 'fen-phen' combination or the state of testing of the 'phen/fen' combination to any physician or to any diet drug user." *Id.* ¶ 9.

So if Kollman had produced any contradictory evidence, even if it was less credible than Wyeth's, she may have created a fact issue which the court would have had to resolve in her favor. But if anything, Kollman has presented evidence substantiating Rust's statement that he only passed on information given to him by Wyeth. *See* Mot. to Remand App. A (deposition excerpts of Wyeth's Texas Area Business Director, Lacy Gray). In spite of the Rust declaration submitted by Wyeth, Kollman makes several misleading statements to the Court such as "Wyeth does not . . . provide evidence that Defendant, Gary E. Rust, did not depart from the course and scope of Wyeth employment." Mot. to Remand ¶ 19. Later in her motion Kollman maintains the Court should find Rust's declaration insufficient as a matter of law because whether or not he made misrepresentations to the "general public" is irrelevant to whether he made them to this plaintiff's doctor. Yet Rust in his declaration swears he "never intentionally misrepresented the safety or efficacy of [the diet drugs] . . . to any physician or to *any* diet drug user." Rust Decl. ¶ 9 (emphasis added).

On a motion to remand, the Court must only resolve fact disputes in a plaintiff's favor when "when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon I,* 224 F.3d at 394 (emphasis in original). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support its claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). Because in this case, Wyeth has negated the facts which might form the basis of a state law claim, the Court holds Rust was fraudulently joined. The "mere theoretical

possibility of recovery under local law" does not preclude removal. *Badon II*, 236 F.3d at 286; *see also Ross*, 344 F.3d at 462.

**B.    The Prescribing Defendant**

Next Wyeth contends there is no reasonable possibility Kollman could succeed on her medical negligence and misrepresentation claims against Dr. Flynn because her claims are barred by the statute of limitations.    A defendant is fraudulently joined if a statute of limitations bars the claims asserted against him. *See Ross*, 334 F.3d at 463-466 (affirming the district court's denial of remand where claims against non-diverse defendants were barred by the state law statute of limitations).    Dr. Flynn asserted the affirmative defense of limitations in an answer filed in state court. *See* Index of State Court Pleadings, Ex. 6 (Flynn Ans.) at 1.    Under the Texas Medical Liability and Insurance Improvement Act, all health care liability claims must be filed within two years of the tort or medical treatment that is the subject of the claim. *See* TEX. REV. CIV. STAT. art. 4590i, § 10.01.    The parties do not dispute that fen-phen was taken off the market in 1997. Therefore, without tolling, the limitations period would have expired in 1999.

Kollman contends the equitable doctrine of fraudulent concealment estops Dr. Flynn from relying on the statute of limitations. Orig. Pet. ¶ 33.    She alleges Dr. Flynn continued to assure her there was no association between her use of diet drugs and her physical problems even after he was aware of the drugs' hazards. *Id.* ¶33.    The doctrine of fraudulent concealment is as follows: "Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983).    The

estoppel effect ends when a plaintiff, exercising reasonable diligence, learned or should have learned

of facts, conditions or circumstances that would have caused a reasonable plaintiff to make an

inquiry that would have led to discovery of a cause of action. *Borderlon*, 661 S.W.2d at 909.

Although Kollman alleges Dr. Flynn knew of the hazards of the diet drugs and concealed them from

her, Wyeth contends even if the doctor fraudulently concealed Kollman's cause of action, Kollman

knew or should have known facts that would have led her to discover her cause of action by the end

of 1997 because of extensive publicity concerning the cardiac risks of fen-phen.

Kollman also argues the open courts provision of the Texas Constitution relieves her from

the statute of limitations. *See* TEX. CONST. art. I, § 13. Under that provision, a statute of limitations

is unconstitutional when it is impossible for a plaintiff to have discovered her cause of action within

the statute of limitations. *Gagnier v. Wichelhaus*, 17 S.W.3d 739, 743-44 (Tex. App. – Houston [1st

Dist.] 2000, pct. denied). However, as with the fraudulent concealment doctrine, the open courts

doctrine only tolls limitations until a plaintiff knew or should have known of facts that would lead

to discovery of her cause of action. *Helman v. Mateo*, 772 S.W.2d 64, 66 (Tex. 1989).

In *McCurdy v. Wyeth*, Cause No. A-03-CA-054-SS and *Turner v. Wyeth*, Cause No. A-03-

CA-648-SS, this Court addressed identical arguments regarding the fraudulent concealment doctrine

and the open courts provision of the Texas Constitution, considered the extensive media attention

surrounding fen-phen in late 1997, and held a reasonably diligent plaintiff should have learned about

the risks to fen-phen users of heart valve problems, as well as facts about the noticeable symptoms

of such problems long before December 31, 2000 (two year before the plaintiff in *McCurdy* filed

her lawsuit). *See McCurdy v. Wyeth*, Cause No. A-03-CA-054-SS, February 14, 2003 Order denying

remand (citing *Winters v. Diamond Shamrock Chem. Co.*, 941 F.Supp. 617, 622 (E. D. Tex. 1996)

(holding plaintiffs are charged with knowledge of facts made public through the media), *aff'd*, 149

F.3d 387 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999)); *Turner v. Wyeth*, Cause No. A-03-CA-

648-SS, November 6, 2003 Order denying remand (citing *McCurdy* and adopting the rationale of that

opinion). The Court adopts the rationale and analysis of these opinions as if set forth specifically

herein and holds Kollman's claims against Dr. Flynn, not asserted until May 29, 2003, are barred by

the statute of limitations. *See also Gracey v. Wyeth*, Cause No. A-03-CA-703-SS (W.D. Tex. Dec.

4, 2003) (holding the plaintiff's claims against her doctor asserted on May 27, 2003 barred by the

statute of limitations). The question is not whether the facts in the media would have clearly

established that fen-phen caused heart valve damage. The issue is when Kollman would have been

on reasonable notice to investigate whether she was suffering heart damage. Even considering there

was some conflicting information in the media or conceding she may have received conflicting

information from her physician, a reasonable plaintiff would nevertheless have investigated whether

she had been injured by fen-phen prior to May 2001 (two years before Kollman filed this lawsuit).

## II.    Consent

Kollman also argues this case should be remanded because Wyeth did not obtain the consent

of the other defendants when it removed this case. Generally speaking, the removing defendant must

obtain the consent of all co-defendants in order to remove a case to federal court. *See* 28 U.S.C. §

1446(a); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.), *cert. denied*, 510 U.S. 868

(1993). First of all, Kollman has waived this non-jurisdictional argument because Wyeth filed its

notice of removal on January 21, 2004 and therefore Kollman should have filed her motion to

remand on or before Friday, February 20, 2004, but did not do so until Monday February 23, 2004.

*See Catepillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996) (holding a that if a defendant's notice of

removal is deficient in some way other than because the Court's lacks subject matter jurisdiction, the plaintiff must move for remand within 30 days after the defendant files notice of removal or else the plaintiff's objection is waived); *see also* FED. R. CIV. P 6(a) (explaining the rules for calculating deadlines).

Moreover, the removing defendant need not obtain the consent of a defendant who has not been served at the time or removal or who is fraudulently joined. *See Getty Oil Corp. v. Ins. Co. of North Am.,* 841 F.2d 1254, 1262 n.9 (5th Cir. 1988) (explaining § 1446(a) "has been interpreted to require that all then served properly joined defendants join in the removal petition"); *Jernigan,* 989 F.2d at 815 (emphasizing the consent of a fraudulently-joined defendant is unnecessary). The Court held above the sales representative Rust and prescribing physician Flynn were both fraudulently joined. Thus, their consent is not necessary to removal. Additionally, Wal-Mart, another diverse defendant, did consent to Wyeth's removal. *See* Notice of Removal Ex. Z-2. The written consents of the other remaining diverse defendants are not required because they had not been served at the time Wyeth removed. *See* Wyeth's Supp. Notice of Removal at 2 (explaining there is no evidence the phentermine defendants have been served); Index of State Court Pleadings Ex. 3 (providing citations but no officer's returns for Smithkline, GlaxoSmithKline, Medeva, and Gate).[1]

In accordance with the foregoing:

IT IS ORDERED that Plaintiff's Motion to Remand [#6] is DENIED.

---

[1]The Court notes Kollman does not even address Wyeth's argument that the phentermine defendants had not been served in her motion to remand and therefore, although she had to opportunity to counter Wyeth's assertion these defendants had not been served, she has chosen not to do so.

IT IS FURTHER ORDERED that Wyeth's Unopposed Motion to Continue All

Deadlines Under Federal Rules of Civil Procedure 26 and 16 and Local Rule CV-16 [#13]

is GRANTED.


SIGNED this the 15th day of March 2004.


SAM SPARKS
UNITED STATES DISTRICT JUDGE

EXHIBIT 7(K)

FILED
2007 Mar-07  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM D. MCCLUSKEY, as Surviving Spouse and as Personal Representative of the Estate of Mary L. McMcluskey, | } } } } } | |
| Plaintiff, | } } | CIVIL ACTION NO. 07-AR-0232-S |
| v. | } } | |
| MERCK & CO., INC., a foreign corporation, et al., | } } } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

Before the court is the motion of plaintiff, William D. McCluskey ("McCluskey"), to remand the above-entitled action to the Circuit Court of Jefferson County, Alabama, from which it was removed by defendant, Merck & Co., Inc. ("Merck"). Also before the court are the respective motions of defendants Cedric Anderson and Anna Leigh Webb to dismiss the action as to them, and the motion of McCluskey to dismiss the action as against defendant James A. Stewart. Finally, the court has for consideration the motions of various defendants to stay all proceedings in this action pending its possible transfer to the United States District Court for the Eastern District of Louisiana for consolidated and coordinated pretrial proceedings as part of *In re Vioxx Marketing, Sales Practices, and Prods. Liab. Litig.* MDL No. 1657, and/or to the United States District Court for the Northern District of California as part of *In re Bextra and Celebrex Marketing, Sales*

*Practices and Prods. Liab. Litig.*, MDL-1699. For the reasons that follow, McClusky's motion to remand will be denied, and his motion to dismiss his action against Stewart will be granted. The court will grant all motions filed by the various defendants.

### Procedural History

McCluskey, a citizen of the state of Alabama, filed this action in the Circuit Court of Jefferson County on December 13, 2006. McCluskey asserted various tort and contract claims related to the drugs VIOXX and CELEBREX, the use of which McCluskey says proximately caused the death of his wife, Mary L. McCluskey ("Mary McCluskey"). The corporate defendants named in McCluskey's complaint were Merck, Pfizer, Inc. ("Pfizer"), Pharmacia Corporation ("Pfizer"), Monsanto Company ("Monsanto"), and G. D. Searle LLC ("Searle"). McCluskey also named individuals Stewart, Webb, Anderson, Travis Taylor, and Robert Vandelune as defendants. Merck is the manufacturer and seller of VIOXX, and Pfizer, Pharmacia, Monsanto, and Searle are companies involved in the manufacture and sale of CELEBREX. According to McCluskey's complaint, Stewart, Webb, Anderson, Taylor, and Vandelune are representatives of one or more of the corporate defendants who marketed and promoted VIOXX and CELEBREX to the health care providers that prescribed or provided the drugs to the decedent, Mary McCluskey. Although none of the corporate defendants are citizens of Alabama, each individual defendant is an Alabama

2

citizen.    In addition to the named defendants, McCluskey also identified in his complaint four fictitious defendants, who can be ignored for purposes of this opinion.  Merck removed the action to this court on February 2, 2007, under 28 U.S.C. § 1441.  Pfizer, Pharmacia, Monsanto, and Searle timely joined in Merck's removal on February 6, 2007.

Anderson, Webb, and Stewart are or were employees of Merck, and Taylor and Vandelune are currently employees of Pfizer. Stewart was still a defendant when this action was removed from state court, but McCluskey filed an unopposed motion to dismiss his action against Stewart while the action was still proceeding in state court, and Stewart is not considered a necessary party.  The court considers that motion to have carried over when the removal was effected, and will grant McCluskey's unopposed motion.

In support of its notice of removal, Merck filed declarations or affidavits signed by the four remaining individual defendants (together, the "individual resident defendants").  The declarations of Anderson and Webb, which the declarants signed under the penalty of perjury, are materially identical:[1]

1.    My name is Cedric Anderson.[1]  I am over twenty-one years of age, am of sound mind, and am competent to make this declaration.  This declaration is based upon my personal knowledge.

---

[1] The first sentence of Webb's declaration states: "My name is Anna Leigh Webb."

3

2.  At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Mary McCluskey.

3.  I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and therefore have never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.  At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.  At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including but not limited to Mary McCluskey.

6.   I have never promoted or detailed Vioxx in Jefferson County, Alabama.

7.   I never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

8.   I have never met nor spoken with Mary McCluskey.

9.   I made no knowing misrepresentation concerning the safety or efficacy if Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

10.  I have never made any presentations to the general public regarding Vioxx.

There are also no material differences between the above and the notarized affidavits signed by Taylor and Vandelune.    Taylor's affidavit states:

1.   I am over the age of twenty-one years and am otherwise competent to make this affidavit.  This affidavit is based upon my personal knowledge.

2.   I am currently employed as a pharmaceutical representative (also known as a "detailer") for Pfizer Inc ("Pfizer").  I have been employed by Pfizer as a detailer since February 9, 2004.[2]

3.   As a detailer, I visit physicians and healthcare providers' offices and provide them with FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing." My job is to make the physician aware or certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.

4.   I am not a physician or pharmacist.  I have no specialized medical or pharmacological education. The information and material I use to detail Pfizer's drugs is derived exclusively from

_____

[2] Vandelune states in his affidavit that he has been employed by Pfizer as a detailer since 1985.

5

education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other FDA-approved information for the medications I detail. I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

5.   As part of my job duties, I have detailed Celebrex® in the past. However, I do not know whether I visited with or provided any information about Celebrex® to plaintiff's prescribing physician because plaintiff has not identified him or her.

6.   At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Celebrex®, nor did I have any involvement in the FDA-approved package insert for Celebrex®.

7.   At no time did I ever sell, offer to sell, or take orders for the sale of Celebrex® to health care providers, physicians, or patients.

8.   I have never made any presentations to the general public concerning Celebrex®.

9.   I have never met or spoken with the Plaintiff, William D. McCluskey, or the Plaintiff's decedent, Mary L. McCluskey.

10.  I have never promoted or detailed Celebrex® in Jefferson County, Alabama.

*Analysis*

There is no dispute that Anderson, Webb, Taylor, Vandelune, and plaintiff McClusky are all Alabama citizens. Anticipating that this fact would destroy the complete diversity required to support removal jurisdiction, Merck and Pfizer argue that the citizenship of the individual resident defendants should be ignored because those defendants were fraudulently joined. *See*

*Tapscott v. M.S. Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996). According to Merck and Pfizer, there is no possibility that McCluskey can prove *any* of his claims against the individual resident defendants. McCluskey counters that none of these defendants were fraudulently joined, and that this court therefore lacks subject matter jurisdiction to preside over this action because there is no complete diversity of citizenship.

I.     **Fraudulent Joinder**

If McCluskey has failed to state a colorable case against each and all of the individual resident defendants, the court may disregard their citizenships and proceed to address the merits of Anderson's and Webb's motions to dismiss, and those of Merck, Pfizer, *et al.* to stay proceedings pending the possible transfer of this action. If, on the other hand, McCluskey did not fraudulently join any of the non-diverse defendants, there is incomplete diversity and the case must be remanded.

The type of fraudulent joinder defendants advance applies where there is no reasonable basis to predict that an Alabama court would find any of the individual resident defendants liable to McCluskey under any of his state-law theories, and, in fact, every reason to predict that the case will not proceed to final judgment against them. *See Legg v. Wyeth*, 428 F.3d 1317, 1324-25 (11th Cir. 2005); *see also Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962) (a defendant is fraudulently joined

7

where there is no possibility of recovery under state law for any claims against him).  A heavy burden rests on the removing defendant to show that all non-diverse defendants were fraudulently joined.  *Owens v. Life Ins. Co. of Georgia,* 289 F.Supp.2d 1319, 1324 (M.D. Ala. 2003); *see Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (removal must be strictly construed with all doubts resolved in favor of remand).  As the Eleventh Circuit stated in *Triggs v. John Crump Toyota, Inc.,* "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate."  154 F.3d 1284, 1287 (11th Cir. 1998).  The court bases its jurisdictional inquiry on the pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties, evaluating all factual issues and questions of controlling substantive law in plaintiff's favor.  *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11 Cir. 1998).

Removing defendants assert that they have satisfied this high burden.  McCluskey counters that he has stated viable claims against the individual resident defendants (1) under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), and (2) for fraud, fraudulent misrepresentation, fraudulent suppression and concealment.  Thus, the question is whether McCluskey has any

8

possibility of recovery against any of the individual resident
defendants under any of these claims. If so, there is incomplete
diversity and this case was improvidently removed.

####    A.    The AEMLD Claim

In order to establish liability under the AEMLD, a plaintiff
must prove that the defendant manufactured and/or sold the
allegedly defective product. *Turner v. Azalea Box Co.*, 508 So.2d
253, 254 (Ala. 1987). However, sales representatives who work
for pharmaceutical companies are not "sellers" or "suppliers" of
the drugs manufactured by the companies they represent for
purposes of the AEMLD. *Bloodsworth v. Smith & Nephew*, 2005 WL
3470337, at * 6-*7 (M.D. Ala., Dec. 19, 2005). In *Bloodsworth*,
the court was presented with a set of facts remarkably similar to
the one now at issue. Plaintiffs in *Bloodsworth* asserted a claim
under the AEMLD against an orthopedic-hip-implant manufacturer,
one of that manufacturer's sales representatives, and a separate
manufacturer/seller. The first defendant was not an Alabama
citizen, but the latter two defendants were non-diverse. In its
opposition to plaintiff's motion to remand, the diverse
manufacturer offered an affidavit of the sales representative,
wherein the affiant stated that he had never spoken to the
injured plaintiff. He did not, however, confirm or deny that he
was the individual who received purchase orders from the injured
plaintiff's surgeon. The sales representative also attested that

he was "not involved in the design or manufacture of any [of manufacturer's] products used in [the injured plaintiff's] procedures," and that he did not provide any "warranties, express or implied, with respect to those products." Judge Dement of the Middle District of Alabama concluded under these facts that the sales representative could not be deemed to be a "seller," and was therefore fraudulently joined as a defendant with respect to plaintiffs' AEMLD claim. *See id.*

This case is similar to *Bloodsworth* inasmuch as all individual resident defendants have sworn that they did not personally sell or offer to sell VIOXX or CELEBREX to Mary McCluskey. The declarations and affidavits of these defendants are not contradicted. Taylor and Vandelune further submit that as "detailers" for Pfizer, they did not sell or offer to sell to *anyone* — whether to individual patients or to health-care professionals. Moreover, similar to the case in *Bloodsworth*, neither Anderson nor Webb confirms or denies whether he or she sold VIOXX to the health-care provider or providers who treated Mary McCluskey — and neither individual could be expected to do so, since McCluskey has not identified the health-care providers who prescribed either of the drugs at issue to the decedent. *See* Compl., at 35-41. For these reasons, and for the remaining reasons set forth in *Bloodsworth*, the individual resident defendants can not be deemed to be "sellers" for purposes of the

10

AEMLD.  *See generally Bloodsworth*, 2005 WL 3470337, at *5-*7.
The individual resident defendants were therefore fraudulently
joined with respect to McCluskey's claim for relief under the
AEMLD.

### B.    The Fraud, Fraudulent Suppression, and Concealment Claim

Under Alabama law, in order to state a claim for fraud and
fraudulent misrepresentation, a plaintiff must show that the
defendant made a misrepresentation of material fact, that he made
it willfully to deceive, recklessly, without knowledge, or
mistakenly, that the misrepresentation was justifiably relied on
by the plaintiff under the circumstances, and that the
misrepresentation caused damage as a proximate consequence.  Ala.
Code § 6-5-101.  The Supreme Court of Alabama has held that
"those who are only conduits through which faulty information is
supplied by one person to a third person cannot be held liable
for fraud unless they acted in bad faith."  *Fisher v. Comer
Plantation, Inc.*, 772 So.2d 455 (Ala. 2000).

Here, each of the individual resident defendants has
tendered a declaration or affidavit indicating that he or she was
never involved in the design, testing, or manufacture of VIOXX or
CELEBREX, is not trained as a physician or pharmacologist, and
has received all information regarding VIOXX or CELEBREX from the
respective employer.  In his motion to remand, McCluskey submits
no evidence that could discredit the individual resident

11

defendants' affidavits and declarations, so there is no issue of
fact which should be resolved in favor of this court's finding
that it lacks subject-matter jurisdiction. *See Wyeth*, 428 F.3d
at 1323.  In accordance with the undisputed facts contained in
the affidavits and declarations, if Mary McCluskey was supplied
with faulty information when she was prescribed VIOXX and
CELEBREX, then the individual resident defendants' roles in
supplying that information were those of mere "conduits."
Accordingly, there is no reasonable basis to predict that an
Alabama court would find the individual resident defendants
liable to McCluskey for fraud, fraudulent suppression, and
concealment, and these defendants were therefore fraudulently
joined with respect to these claims. *See id.* at 1323-25 (finding
that the record supported defendant drug manufacturer's
contention that defendant salesperson was fraudulently joined,
when there was no evidence that salesperson knew or should have
known of prescription drug's allegedly dangerous effects).

Because all of the individual resident defendants were
fraudulently joined with respect to each claim that McCluskey
says he can prove against them, the court will disregard the
citizenship of the individual resident defendants and will
presume that complete diversity exists.  Since there is also no
dispute that the jurisdictional amount-in-controversy requirement
has been met, McCluskey's motion to remand will be denied without

prejudice to its being re-filed if subsequently discovered facts provide a basis for its reconsideration.  Anderson's and Webb's respective motions to dismiss for failure to state a claim will be granted.

## II.  Defendants' Motions to Stay Proceedings

After this action was removed, Merck filed a motion to stay proceedings pending the possible transfer of the action against it for consolidated pretrial proceedings as part of *In re Vioxx Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 1657.  Similarly, defendants Pfizer, Pharmacia, Searle, Taylor, and Vandelune, filed a motion for this court to stay proceedings pending the possible transfer to *In re Bextra and Celebrex Marketing, Sales Practices and Prods. Liab. Litig.*, MDL-1699. These MDL proceedings have been established to coordinate all product-liability cases involving the alleged health risks that arise from taking VIOXX and CELEBREX, respectively.

When deciding whether to issue a stay pending the Judicial Panel on Multidistrict Litigation's ("MDL Panel") decision on transfer of an individual action, the court looks at three factors: (1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact coordinated; (2) hardship and inequality to the moving party if the action is not stayed; and (3) potential prejudice to the non-

13

moving party. *See Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). In his opposition to the motions to stay, McCluskey urges the court to deny the motions only until it has determined whether it has subject matter jurisdiction or whether the action should be remanded to state court. He does not argue that if the action is **not** remanded, the motion to stay should not be granted. Accordingly, the court sees no potential prejudice to McCluskey if this action is stayed. Moreover, the court agrees with the various defendants that judicial resources will best be allocated if the stay request is granted, especially considering that the MDL Panel will likely decide whether to transfer this action within the next two to four weeks. Finally, defendants' suggestions of hardship and inequality if the action is not stayed make sense. Accordingly, the court will grant defendants' motions to stay.

*Conclusion*

In accordance with the foregoing, McCluskey's motion to remand will be denied, and his motion to dismiss defendant Stewart will be granted. The motions to stay proceedings, filed by various defendants, will be granted. Anderson's and Webb's motions to dismiss this action as to them will also be granted.

14

DONE this 7th day of March, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

# EXHIBIT 7(L)

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

LORI SOBKOWSKI,

        Plaintiff,

-vs-                            Case No. 5:04-cv-96-Oc-10GRJ

WYETH, INC. f/k/a American Home
Products Corporation, WYETH-AYERST
LABORATORIES, INC., WYETH
PHARMACEUTICALS, INC., INDEVUS
PHARMACEUTICALS, INC. f/k/a
Interneuron Pharmaceuticals, Inc., PAUL
W. PORTER, ANGELA KIRBY, M.
ALYSEN TROY,

                    Defendants.



## O R D E R

    This case is one of many product liability cases involving the diet drug Redux (dexfenfluramine), said to cause primary pulmonary hypertension - a condition affecting the lungs. The Plaintiff, a resident of Florida, filed her complaint in a Florida court against several out-of-state pharmaceutical companies (collectively, "Wyeth") and two pharmaceutical sales representatives who are also Florida residents. When Defendant Wyeth removed the case to this Court on the theory that joinder of the non-diverse parties was "fraudulent," the Plaintiff moved for remand (Doc. 9). The Magistrate Judge issued a report (Doc. 26) recommending that the motion to remand be denied. The Plaintiff has filed



an objection (Doc. 30, 31) to the report and recommendation, and Wyeth has filed its response (Doc. 40).

Upon an independent review of the file and upon due consideration, the Court concludes that the Magistrate's report and recommendation is due to be adopted, confirmed, and made a part hereof with the following modifications or qualifications concerning the analysis of the fraud and negligence claims against the sales representatives.

A defendant is not "fraudulently" joined if there is an "arguably reasonable basis for predicting that the state law might impose liability on the facts involved."[1] Stated another way, if there is "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."[2] Accordingly, the possibility that the non-diverse Defendants would be held liable in a Florida court must have a reasonable basis in the facts; it must be more than merely a theoretical abstraction.[3]

The Magistrate Judge found, and the Court agrees, that the extant facts, consisting of the pleadings and affidavits on file, when viewed in the light most favorable to the Plaintiff, permit no reasonable inferences to be drawn in favor of the Plaintiff's claims

---

[1] Crowe v. Coleman, 113 F.3d 1536, 1540 (11th Cir. 1997) (quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 176-77 (5th Cir. 1968)).

[2] Id. at 1538.

[3] Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002).

against the sales representatives. Even assuming there is evidentiary support for the contention that individuals in Wyeth's upper management had advance knowledge of the harmful effects of Redux[4] and, further, that one of the non-diverse sales representative defendants "discussed Redux completely"[5] with the Plaintiff's doctor prior to his prescribing the drug to the Plaintiff,[6] the evidence, without more, does not give rise to a reasonable inference that the sales representative knew or should have known of the drug's harmful effects. In short, there is no reasonable basis for predicting that a Florida court would impose liability on any one of the non-diverse sales representative defendants. There is only a theoretical possibility, devoid of factual basis, that the sales representative had or should have had advance or special knowledge about the drug and failed to communicate that knowledge to the doctor.[7]

---

[4] Of course, the Court expresses no opinion as to whether the Plaintiff's claims against Wyeth may survive summary judgment.

[5] Doc. 9, affidavit of Dr. Rodger, exh. 3.

[6] The Court disagrees with the Magistrate Judge's finding that the evidence shows "the sales representatives actually visited with Dr. Rodger, *after* he had prescribed Redux to Plaintiff." The first entry on the "detailing statement," which documents visits by sales representatives with Dr. Rodger, is an entry dated June 17, 1996, which reads "discussed Redux completely." See Doc. 9, affidavit of Dr. Rodger, exh. 3. Dr. Rodger wrote the Plaintiff a prescription for Redux on June 21, 1996. See Doc. 2. The Court agrees with all other findings concerning the "detailing statement."

[7] Although the Plaintiff laments that she has not had a full opportunity for discovery, there is nothing in the record to suggest that discovery would provide evidentiary support for the allegations and other factual contentions in the complaint concerning the sales representative defendants. See Fed. R. Civ. P. 11(b)(3).

3

Accordingly the Court is satisfied that the sales representatives were joined only to prevent removal, and it is therefore adjudged that:

(1) the report and recommendation of the Magistrate Judge (Doc. 26) is adopted, confirmed, and made a part hereof as modified above; and

(2) the Plaintiff's motion to remand (Doc. 9) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 24th day of June, 2004.

UNITED STATES DISTRICT JUDGE

Copies to:    Hon. Gary R. Jones, United States Magistrate Judge
              Counsel of Record

4

F I L E   C O P Y



Date Printed: 06/24/2004


Notice sent to:

    _____  William E. Lawton, Esq.
        Dean, Ringers, Morgan and Lawton, P.A.
        201 E. Pine St., Suite 1200
        P.O. Box 2928
        Orlando, FL  32802-2928

        5:04-cv-00096    ail

    _____  Lamar Dwight Oxford, Esq.
        Dean, Ringers, Morgan and Lawton, P.A.
        201 E. Pine St., Suite 1200
        P.O. Box 2928
        Orlando, FL  32802-2928

        5:04-cv-00096    ail

    _____  Pierre Seacord, Esq.
        Ringer, Henry, Buckley & Seacord, P.A.
        14 E. Washington St., Suite 200
        P.O. Box 4922
        Orlando, FL  32802-4922

        5:04-cv-00096    ail

    _____  Geoffrey D. Ringer, Esq.
        Ringer, Henry, Buckley & Seacord, P.A.
        14 E. Washington St., Suite 200
        P.O. Box 4922
        Orlando, FL  32802-4922

        5:04-cv-00096    ail

    _____  Gregory J. Bubalo, Esq.
        Becker Law Office, LLC
        Louisville Galleria
        800 Brown & Williamson Tower
        Louisville, KY  40202

        5:04-cv-00096    ail

    _____  Kevin M. Adams, Esq.
        Becker Law Office, LLC
        Louisville Galleria
        800 Brown & Williamson Tower
        Louisville, KY  40202

        5:04-cv-00096    ail

    _____  Michael L. Williams, Esq.
        Becker Law Office, LLC



Louisvil )Galleria
800 Brown & Williamson Tower
Louisville, KY  40202

5:04-cv-00096    ail

_____    Linda C. Love, Esq.
Williams, Dailey, O'Leary,
Craine & Love, P.C.
1001 S.W. Fifth Ave., Suite 1900
Portland, OR  97204

5:04-cv-00096    ail

_____    R. Benjamine Reid, Esq.
Carlton Fields, P.A.
4000 Bank of America Tower
100 S.E. 2nd St.
P.O. Box 019101
Miami, FL  33131-9101

5:04-cv-00096    ail



FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

'04 MAY 17 PM 5: 21

CLERK US DISTRICT COURT
OCALA FLORIDA

LORI SOBKOWSKI,

        Plaintiff,

v.

                              Case No.  5:04-cv-96-Oc-10GRJ

WYETH, INC. f/k/a American Home Products
Corporation, WYETH-AYERST
LABORATORIES, INC., WYETH
PHARMACEUTICALS, INC., INDEVUS
PHARMACEUTICALS, INC. f/k/a Interneuron
Pharmaceuticals, Inc., PAUL W. PORTIER,
ANGELA KIRBY, M. ALYSEN TROY,

        Defendants.

---

## <u>REPORT AND RECOMMENDATION[1]</u>

    Pending before the Court is Plaintiff's Motion to Remand (Doc. 9) in which

Plaintiff requests the Court to remand this action to the Circuit Court for the Fifth

Judicial Circuit in and for Lake County, Florida. Defendants Wyeth, Potier, Kirby,

and Troy have filed a memorandum in opposition to Plaintiff's Motion (Doc. 20),

and the matter is now ripe for the Court's consideration. For the reasons discussed

below, the Court finds that Plaintiff's Motion to Remand (Doc. 9) is due to be

DENIED.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule
6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.
Failure to file timely objections shall bar the party from a *de novo* determination by a district judge
and from attacking factual findings on appeal.



EXHIBIT
26





## I. BACKGROUND & FACTS

On October 30, 2003, Plaintiff, a resident of Florida, filed this action in Florida state court against four companies,[2] each of which is considered a foreign entity for the purposes of diversity. Plaintiff also named as defendants Wyeth sales representatives Paul Potier, Angela Kirby (now known as Angela Richards), and Alysen Troy ("sales representatives").[3] While Potier and Kirby are Florida residents,[4] Ms. Troy avers in a sworn affidavit that she has been a resident of Illinois at all times since May 1998 - well before Plaintiff filed her Complaint in October 2003.[5] Plaintiff has provided nothing to rebut such evidence. Because "diversity is determined when the suit is instituted and not when a cause of action arose,"[6] Troy is deemed a diverse party for the purposes of the Court's resolution of Plaintiff's motion to remand.

According to the allegations contained in Plaintiff's First Amended Complaint[7] ("Complaint"), Plaintiff developed Primary Pulmonary Hypertension

---

[2] Hereinafter, "Wyeth."

[3] According to Wyeth, "The job of sales representatives, also known as 'detailers,' is to ensure that physicians are aware of Wyeth's products so they can consider whether to prescribe them. Among other things, detailers deliver FDA-approved package inserts and other FDA-approved information [...] The FDA-approved inserts that the detailers provide disclose the drug's pharmacological properties, indications and contraindications, and known side effects." *See* Wyeth's Notice of Removal, Doc. 1, ¶24.

[4] *See* Wyeth's Memorandum in Opposition to Plaintiff's Motion to Remand, Doc. 20 at 8.

[5] *Id.* at Ex. 12.

[6] Jones v. Law Firm of Hill and Ponton, 141 F. Supp. 2d 1349, 1354-55 (M.D. Fla. 2001).

[7] Doc. 2.

2



("PPH")[8] as a result of ingesting Redux[9] diet pills which were prescribed by her physician in 1996.[10] In brief summary, Plaintiff claims that the sales representatives promoted Redux and encouraged Plaintiff's physician to prescribe the drug to his patients even though the sales representatives were aware that the drug caused PPH and other life-threatening conditions and was otherwise ineffective.[11]

Counts six through eleven of the Amended Complaint purport to allege claims against the sales representatives for civil conspiracy, misrepresentation by seller of chattel, negligence, fraud, breach of express warranty, and breach of implied warranty.[12]

Wyeth removed the case to this Court on March 15, 2004, pursuant to 28 U.S.C. §1441.[13] In its Notice of Removal, Wyeth claimed that the sales representatives have been fraudulently joined and that their presence in this action,

---

[8] Primary pulmonary hypertension is a condition where pulmonary capillaries in the lungs constrict, thereby elevating blood pressure. The signs and symptoms include fatigue, dizziness, syncope (fainting), dyspnea (labored breathing), swelling of ankles or legs, chest pain, and palpitations. It may be treated with drug therapy involving calcium-channel blockers or vasodilators, but a lung transplant is required for patients with severe PPH. *See* J.E. Schmidt, *Attorneys' Dictionary of Medicine* Vol. 4 (2003).

[9] Redux is the popular/brand name for dexfenfluramine. *See* Complaint, Doc. 2 at p.2. According to Plaintiff, Redux is designed to suppress one's appetite by increasing blood levels of the neurotransmitter, serotonin. Serotonin is a chemical that makes a person feel full after eating. (*Id.* at p. 7.)

[10] Plaintiff's Amended Complaint, Doc. 2. at p. 2.

[11] *Id.* at 1-61.

[12] *Id.*

[13] Notice of Removal, Doc. 1.

3

therefore, does not destroy diversity of citizenship.[14] Wyeth claims that the sales representatives were fraudulently joined because "[p]laintiff has no reasonable possibility of prevailing on any of the claims pled against them, and no good faith intent to pursue them to judgment."[15]

Plaintiff filed her motion to remand on March 22, 2004, claiming that the case should be remanded because she has stated several viable causes of action against Wyeth and its sales representatives under Florida state law and thus joinder of the sales representatives was not fraudulent joinder.[16]

## II. LEGAL STANDARD

A party may remove any case from a state court which originally could have been brought in federal court,[17] but the removing party bears the burden of establishing subject matter jurisdiction.[18] Any doubts regarding the existence of removal jurisdiction should be resolved in favor of the non-removing party.[19]

To satisfy its burden, Wyeth claims that, pursuant to 28 U.S.C. §1332, the Court has diversity jurisdiction over this case because the sales representatives, the only non-diverse defendants, have been fraudulently joined by Plaintiff.

---

[14] *Id.* at ¶10.

[15] *Id.* at ¶3.

[16] Plaintiff's Emergency Motion to Remand, Doc. 9.

[17] *See* 28 U.S.C. §1441(a)

[18] University of Alabama v. The American Tobacco Co., 168 F. 3d 405, 410 (11th Cir. 1999).

[19] Pacheco de Perez v. AT&T Co., 139 F. 3d 1368, 1373 (11th Cir. 1998).

4

Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.[20] The Eleventh Circuit has recognized three situations in which fraudulent joinder arises.[21] The first is when there is no possibility that the plaintiff can prove a cause of action against the resident defendant.[22] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.[23] Finally, fraudulent joinder arises where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.[24]

As to the first type of fraudulent joinder, which is the only type relevant to the Court's resolution of the instant motion to remand, "if there is even a possibility that a state court would find the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper

---

[20] Triggs v. John Crump Toyota, Inc., 154 F. 3d 1284, 1287 (11th Cir. 1998).

[21] Id. at 1287.

[22] Id. Citing Coker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983); superceded by statute on other grounds, see Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F. 2d 1533 (11th Cir. 1993).

[23] Triggs at 1287 citing Coker at 1440.

[24] Id. Citing Tapscott v. MS Dealer Service Corp., 77 F. 3d 1353, 1355 (11th Cir. 1996). Defendant also claims that joinder of the detailer defendants was fraudulent because Plaintiff lacks the intent to obtain judgment against them. This basis for fraudulent joinder has been mentioned by the other district courts. See Samples v. Conoco, Inc., 165 F. Supp 2d 1303, 1319-1320 (N.D. Fla. 2001)(Plaintiff must have a real intention to obtain judgment against the non-diverse defendant as long as the potential for joint liability exists.) Citing Triggs at 1291. See Also Chicago Rock Island & Pac. Ry. Co. v. Schwyhart, 227 U.S. 184, 193-194 (1913).



and remand the case to state court."[25] The plaintiff need not have a "winning case" against the allegedly fraudulent defendant.[26] Rather, the Plaintiff need only have "a possibility of stating a valid cause of action in order for the joinder to be legitimate."[27] Conversely, the burden on Wyeth to establish fraudulent joinder is a heavy one to bear.[28]

"While the proceeding […] for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under F. R. Civ. P. 56(b), the jurisdictional inquiry must not subsume substantive determination."[29] Accordingly, to determine whether a case should be remanded, the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff."[30] These determinations are based on the plaintiff's pleadings at the time of removal, and on the affidavits and deposition transcripts submitted by the parties.[31] However, in considering a motion to remand, a federal court must not "weigh the

---

[25] *Id. See Also* Tillman v. R.J. Reynolds Tobacco, 340 F. 3d 1277, 1279 (11th Cir. 2003).

[26] Triggs at 1287.

[27] *Id.*

[28] Crowe v. Coleman, 113 F. 3d 1536, 1538 (11th Cir. 1997) *Citing* B, Inc. v. Miller Brewing Co., 663 F. 2d 545, 549 (5th Cir. Unit A 1981).

[29] *Id.*

[30] *Id.*

[31] Crowe at 1538. *See also* Coker at 1440 (Both parties may submit affidavits and deposition transcripts to support their positions with respect to a motion to remand.)

6

merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."[32]

## III. DISCUSSION

### A. Fraud

Relying upon *Albertson v. Richardson-Merrell, Inc.*[33] Plaintiff argues that Florida law recognizes a cause of action in fraud against pharmaceutical sales representatives. In *Albertson*, Florida's Fourth District Court of Appeal reversed the trial court's dismissal of a fraud claim against a pharmaceutical sales representative. The *Albertson* court recognized that a plaintiff who ingested a drug prescribed by her doctor could maintain a cause of action for fraud directly against the sales representative where the sales representative was alleged to have misrepresented material facts concerning the safety of the drug at issue "well-knowing that the safety *vel non* of [the drug] was not as he represented."[34] Because *Albertson* was an appeal from an order granting a motion to dismiss there was no reason to discuss the facts supporting the fraud claim. Here, in contrast, and consistent with the standards for determining whether remand is appropriate the Court is required to go beyond the bare allegations in the complaint and consider the affidavits and other matters on file in determining whether there is a "reasonable basis for predicting that [Florida] law might impose liability on the facts involved."

---

[32] *Id.*

[33] 441 So. 2d 1146 (Fla. Dist. Ct. App. 1983).

[34] *Id.* at 1149-1150.

7



As Plaintiff points out, several judges in this district have relied upon *Albertson* in remanding diet drug cases in which Wyeth sales representatives have been named as defendants in similar counts alleging fraud.[35] However, the remand orders in most of these cases,[36] were based on the fact that Wyeth had failed to establish on the facts in those cases that the plaintiffs had no reasonable possibility of stating a valid cause of action against the sales representative. Indeed, in one case, *Little v. Wyeth Laboratories*, the court observed that Wyeth "presented nothing more to this Court than an allegation that the non-diverse individual Defendants were fraudulently joined by Plaintiff."[37]

Here, in contrast to those diet drug cases - and consistent with a number of similar diet drug cases in which courts have refused to remand cases[38] - Wyeth has provided affidavits and other materials, which directly attack the substance of

---

[35] *See, e.g.* Little v. Wyeth Laboratories, Inc. et al, Case No. 99-2244-Civ-T-17F (M.D. Fla. 1999); Hroncich v. Wyeth, Case No. 2:03-cv-659-FTM-29SPC (M.D. Fla. 2004); Parent v. Wyeth, Case No. 2:03-cv-626-FTM-29SPC(M.D. Fla. 2003); Wrisely v. Wyeth-Averst Laboratories, Inc. et al, Case No. 99-2246-Civ-T-26C (M.D. Fla. 1999); Morris v. Wyeth Laboratories Inc. et al, Case No. 99-2381-Civ-T-26C (M.D. Fla. 1999); Martin v. Wyeth Laboratories, Inc. et al, Case No. 99-2454-Civ-T-26A (M.D. Fla. 1999); Snell v. Wyeth Laboratories, Inc. et al, Case No. 99-2453-Civ-T-26A (M.D. Fla. 1999); Klausner v. Wyeth Laboratories, Inc. et al, Case No. 99-2254-CIV-T-24E (M.D. Fla. 1999); and Vale v. Wyeth Laboratories, Inc. et al, Case No. 99-2238-CIV-T-25E (M.D. Fla. 1999).

[36] Klausner was remanded because one of the named defendants neither signed the notice of removal nor explicitly stated its consent to removal on the record. The Wrisely opinion partly relied on Klausner. As Plaintiff does not argue about the issue of consent to removal, neither of the cases squarely apply to this matter.

[37] Little at p. 6.

[38] *See, e.g.* Kearney v. Wyeth, et al., Case No. 6:03-cv-288-Orl-31 KRS (M.D. Fla. 2003); Long v. Wyeth, et al., Case No. 6:03-cv-421-Orl-31JGG (M.D. Fla. 2003); Campana v. American Home Products Corp., Case No. 1:99cv250 MMP (N.D. Fla. 2000); Lewis v. Wyeth, et al., Case No. 3:04-cv-81 MCR (N.D. Fla. 2004).

Plaintiff's allegations regarding the representations made by the named sales representatives and when the misrepresentations were allegedly made. Although, the Plaintiff has filed her own affidavits, her evidence does not refute the evidence in Wyeth's affidavits and thus in deciding the motion to remand the Court does not need to resolve factual disputes.

In order to properly establish a claim for fraud, a plaintiff must allege: (1) a misrepresentation of material fact; (2)(a) knowledge of the representor of the misrepresentation, or (b) representations made by the representor with knowledge as to either their truth or falsity, or (c) representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce the other to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation.[39]

While the Plaintiff has set forth in the Complaint[40] conclusory allegations against the sales representatives that track these elements, when these allegations are pierced by the affidavits filed by the parties, it is evident that even if Plaintiff's allegations are deemed true, they are insufficient to establish claims under Florida law against the sales representatives for fraud.

Plaintiff relies upon the affidavit of Dr. Scott A. Rodger - the physician who allegedly prescribed Redux to Plaintiff - to support her claim that the named sales

---

[39] Albertson at 1149-1150.

[40] Doc. 2 at p. 56.

9



representatives can be held liable for fraud based on the representations made to Plaintiff's physician.[41] In addition to the affidavit of Dr. Rodger, Plaintiff has also filed various records from Dr. Rodger's office, select pages from the 1998 edition of the Physicians' Desk Reference ("PDR"), and detailing notes logged by the defendant sales representatives in 1996 and 1997.[42]

In his affidavit, Dr. Rodger stated that "[d]uring the course of prescribing Redux, Wyeth drug salespeople told me to not worry about the bad press that Redux was getting and continued to encourage me to keep writing prescriptions [...] If I was aware of the dangers that Redux posed to the health of my patients as reflected in the 'black box'[43] warning contained in the 1998 PDR, I would never have prescribed Redux. The warnings contained in the black box warning were not communicated to me at the time of prescribing Redux to Ms. Sobkowski in 1996."[44]

Although, Dr. Rodder's affidavit fails to identify by name the "Wyeth salespeople," who allegedly made the representations, the Court will assume that

---

[41] Doc. 9, Plaintiff's Memorandum, Attached Exhibit.

[42] *Id.* Presumably, this is all the material that Plaintiff could possibly offer this Court in her effort to defeat Wyeth's claim of fraudulent joinder in this case. As Plaintiff herself stated in her Motion for Remand, "liability depositions relevant to this case have been taken long ago. Experts have been chosen by the lawyers on both sides and deposed multiple times. All that remains is to depose treating physicians and a few other fact witnesses." *See* Doc. 9 at p.5.

[43] According to Plaintiff, the FDA recommends pharmaceutical companies to provide a "black box" warning to emphasize the risks that might be associated with the use of a given drug. *See* Doc. 2 at ¶¶130-141. This black box warning appears near to the description of the drug in the PDR. Based on the materials offered by Plaintiff, the first PDR black box warning was published in 1998.

[44] *Id.*

the allegations in Dr. Rodger's affidavit refers to the sales representatives named in this case. However, even with this assumption, the facts alleged in Dr. Rodger's affidavit fail to support Plaintiff's claims against the sales representatives for fraud for several reasons.

First, nothing in Dr. Rodger's affidavit or the other information filed by Plaintiff suggests that the sales representatives had special knowledge about Redux, which they withheld from Dr. Rodger. Rather, Dr. Rodger avers that the sales representatives told him not to worry about the bad press, as one would expect of anyone who sells a product that has received less than favorable treatment from news media.

Second, Dr. Rodger does not affirmatively allege the month or even the year he was told by the sales representatives to disregard the "bad press." The omission in Dr. Rodger's affidavit of the dates and year in which the representations were made by sales representatives is notable in view of the fact that according to the "detailing statement," attached to Dr. Rodger's affidavit, the sales representatives actually visited with Dr. Rodger, *after* he had prescribed Redux to Plaintiff. These detailing statements evidence that the sales representatives' marketing interactions with Dr. Rodger - in which they told Dr. Rodger to ignore the "bad press" - first occurred on July 22, 1997, more than one year after Dr. Rodger prescribed Redux to Plaintiff.[45]

---

[45] The Amended Complaint reveals that Ms. Sobkowski was prescribed Redux on June 21,
(continued...)



Finally, the "black box" warnings, attached to Dr. Rodger's affidavit, are in the 1998 PDR, which was not in existence in 1996, the year Plaintiff ingested Redux for approximately a three-month period.

Wyeth, on the other hand, has provided the Court with the affidavits of all three sales representatives to support its position that Plaintiff has no possibility of stating a single cause of action against these non-diverse defendants.

In each of these affidavits, the sales representatives have sworn that: (1) they never sold Redux; (2) they never intentionally misrepresented the safety or efficacy of Redux to any physician; (3) Wyeth was their only source of knowledge and information with respect to Redux; (4) they have no specialized medical or pharmacological training with which they independently may have evaluated the safety and efficacy of Redux; and (5) Wyeth provided them with the FDA-approved package inserts and other information which were used by the sales representatives in the course of their employment with Wyeth.[46]

Accordingly, considering all of the evidence disclosed in the affidavits, it is evident that the sales representatives did not sell or distribute Redux to any physicians, including Dr. Rodger, and that any representations that were made by the sales representatives to Dr. Rodger were made *after* Dr. Rodger had prescribed Redux and *after* Plaintiff had stopped taking Redux. Therefore, the alleged

---

[45](...continued)
1996 and that she ingested Redux for about ninety (90) days. *See* Doc. 2 at ¶¶5-6.

[46] *See* Wyeth's Memorandum in Opposition to Plaintiff's Motion to Remand, Declarations of Potier, Richards, and Troy, Doc. 20, Exhibits 10, 11, and 12.

12



misrepresentations by the sales representatives to ignore the "bad press," even if considered to be sufficient to constitute a misrepresentation, cannot be actionable under a fraud theory in view of the fact that Plaintiff could not have relied on the misrepresentation through the information provided by the sales representatives to Plaintiff's physician, Dr. Rodger after the fact. The Court therefore concludes that even drawing all reasonable inferences in favor of the Plaintiff, there is no reasonable basis for predicting that Florida law might impose liability on the sales representatives for fraud.

**B. Negligence**

Similarly, there is no possibility that Plaintiff can prove a negligence claim against the sales representatives. Under the negligence count in her Amended Complaint, Plaintiff repeats the same allegations presented in the fraud count, but adds that the sales representatives owed a duty to Plaintiff "not to exaggerate the efficacy or minimize the risks of the drug they were promoting, distributing, and selling."[47] She also claims that the sales representative "knew or should have known the risks of PPH associated with Redux," and that they "misrepresented [...] the dangers of [...] Redux."[48]

---

[47] Complaint, Doc. 2 at ¶300.

[48] *Id.* at ¶¶301-302.

13



Relying upon *Boule v. American General Life and Accident Insurance*[49] and several Florida cases,[50] Plaintiff argues that the sales representatives may be liable under Florida law for their negligent acts even if those acts are committed in the scope of their employment. In *Bouie*, insurance sales agents who sold policies directly to the plaintiff were accused of committing fraud by failing to disclose racial disparities in premiums and benefits. The court held that if the sales agents "were aware of the disparity and intentionally did not disclose it, then [...] plaintiff is equally entitled to recover against the individual defendants as against the insurer."[51]

However, none of the cases cited by Plaintiff nor *Bouie* are instructive because each of these cases was grounded on the supposition that the defendants *knew or should have known* of the risks caused by their "sale" of a given product.

Here, in contrast, the affidavits supplied by both parties demonstrate that the sales representatives did not act in their individual capacities and had no special knowledge of any alleged risks that Redux presented. According to the affidavits of all three sales representatives, they promoted Redux based on information provided

---

[49] 199 F. Supp 2d 1259 (N.D. Fla. 2002).

[50] Plaintiff cites Greenberg v. Post, 19 So. 2d 714, 717 (1944)("It is well settled that an employee may be held personally liable at the suit of a third person for positive negligent acts committed by him even though his employer may likewise be liable for the servant's negligent conduct when exercised within the scope of the employment."); and White-Wilson Medical Center v. Dayta Consultants, Inc. 486 So. 2d 659, 661 (Fla. Dist. Ct. App. 1986)("Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment [...] This is so even if no argument is advanced that the corporate form should be disregarded.")

[51] *Id.* at 1263.

14



by Wyeth, and they did not have any independent knowledge of the danger which Redux allegedly presented at the time they promoted the drug to Dr. Rodger.

This evidence is uncontroverted. Indeed, Dr. Rodger's affidavit and the "detailing statement" attached thereto, actually *confirm* that the sales representatives did not have knowledge of any purported risks presented by Redux while they promoted the product. Without such knowledge and without any suggestion that the sales representatives acted in their individual capacities in promoting the drug, Plaintiff's negligence claim against them has no basis in fact.

In light of the foregoing, there is no possibility that Plaintiff could prove a claim in negligence against the sales representatives based on the facts involved in this case.

## C.  Civil Conspiracy

Plaintiff also has no possibility under Florida law of proving a claim for civil conspiracy against the sales representatives. "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."[52] Under Florida law, it is well settled that neither an agent nor an employee can conspire with his or her corporate principal or employer,[53] unless the

---

[52] Lipsig v. Ramlawi, 760 So. 2d 170, 180 -181 (Fla. Dist. Ct. App. 2000) *Citing* Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App.) *rev. denied* 717 So. 2d 531 (Fla. 1998).

[53] *See* Richard Bertram, Inc. v. Sterling Bank & Trust, 820 So. 2d 963, 965 (Fla. Dist. Ct.
(continued...)

15



employee has a personal stake "that is separate and distinct from the corporation's interests."[54]

There are no allegations in the Amended Complaint nor averments in the affidavits filed by Plaintiff that even remotely suggest that the sales representatives had a personal stake in their promotion of Redux "separate and distinct" from the interests of Wyeth. Rather, all of the allegations following the conspiracy count in the Amended Complaint reveal that the sales representatives and Wyeth acted with one common goal in mind - to sell Redux.[55] Therefore, because the sales representatives were employees of Wyeth during the time that the alleged conspiracy took place, as a matter of law, they could not have conspired with Wyeth.

**D. Misrepresentation by Seller of Chattel**

Plaintiff alleges that she is entitled to relief for "Misrepresentation by Seller of Chattel, Restatement of Torts (Second) §402B or Restatement of Torts (Third): Product Liability §9."[56] Plaintiff cannot possibly prevail on either type of claim under Florida law for the following reasons.

---

[53](...continued)
App. 2002)("It is well settled that neither an agent nor an employee can conspire with his or her corporate principal or employer.") *Accord* Leisure Founders, Inc. v. CUC International Inc., 833 F. Supp. 1562, 1574 (S.D. Fla. 1993)("It is axiomatic [...] that a corporation cannot conspire with its agents or employees.)

[54] Lipsig at 180-181.

[55] Doc. 2. at ¶¶273-285.

[56] *Id.* at p. 52.



First, no Florida court has ever adopted Restatement (Second) of Torts §402B.[57] Under the *Erie*[58] doctrine, a federal court sitting in diversity must apply the substantive law of the forum state. The Supreme Court has held that in a diversity case, a federal court is "not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the state in which the federal court in which the federal court sits."[59] Accordingly, the Court declines to allow Plaintiff to assert liability on a theory never before recognized under Florida law.

Second, even if Florida courts were to apply §402B, the rule applies only to sellers of chattel. Here, although Plaintiff alleges that the sales representatives sold Redux,[60] each of the representatives aver in their sworn declaration that they never sold Redux. These sworn allegations have not been controverted by Plaintiff. Moreover, Dr. Rodger's affidavit and the "detailing statement" attached thereto, reflect that the sales representatives merely encouraged Dr. Rodgers to write prescriptions of the drug.

Further, §402B only applies to sellers "who make public a misrepresentation of material fact." Under the rule, the misrepresentation is made public when the seller announces it to the public at large in order to induce purchase of the

---

[57] *See* Stevens v. Danek Medical, Inc., 1999 WL 33217282 (S.D. Fla. 1999).

[58] Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

[59] Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975).

[60] Doc. 2, Complaint at ¶¶286-292.

17



chattels.[61] Here, it is merely alleged that the misrepresentations by the sales representatives were made directly to Dr. Rodger, and not to the public.[62]

Finally, Plaintiff's purported claims under Restatement of Torts (Second) § 402B and Restatement of Torts (Third), Product Liability §9 fail because they sound in strict liability. Consistent with these provisions of the Restatement, Florida law applies strict liability only to manufacturers of products[63] rather than to promoters. Because it is undisputed that the sales representatives in this case were not in the business of manufacturing Redux, under Florida law, they cannot be held strictly liable for the harm that allegedly resulted from Plaintiff's ingestion of the drug.

### E. Breach of Warranty

Lastly, Plaintiff also has no possibility of proving a claim for breach of implied or express warranty against the sales representatives. Under Florida law, each of these claims requires Plaintiff to demonstrate privity of contract between herself and the sales representatives.[64] Plaintiff does not allege that such privity exists[65] and there has been no evidence submitted by the parties which would suggest that

---

[61] Rest. 2d Torts §402B, comment h.

[62] Complaint, Doc. 2 at ¶¶286-292

[63] See West v. Caterpillar Tractor Company, Inc., 336 So. 2d 80, 87 (Fla. 1976).

[64] See Edgar v. Danek Med., Inc., 1999 WL 1054864 (M.D. Fla. 1999) Citing Kramer v. Piper Aircraft Corp., 520 So. 2d 37, 39 (Fla. 1988); T.W.M. v. American Med. Sys., Inc., 886 F. Supp 842, 844 (N.D. Fla. 1995)("A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant.") See Also Baker v. Danek Medical, 35 F. Supp. 2d 875, 878 ("Florida courts have required privity between the manufacturer and the consumer of the product in order for the consumer to assert an implied warranty claim.")

[65] Complaint, Doc. 2 ¶¶318-330.

privity exists between Plaintiff and the defendant sales representatives. Accordingly, there is no possibility that Plaintiff could state a claim against the sales representatives under Florida law for breach of warranty.

In sum, because there is no reasonable basis in the record for predicting that Florida law might impose liability under any of the purported causes of action raised by Plaintiff against the sales representatives based on the facts involved in this case, the Court concludes that for purposes of diversity the sales representatives should be considered fraudulently joined and therefore may be ignored for purposes of establishing diversity of citizenship. Therefore, Wyeth's removal of this case was proper and Plaintiff's Motion to Remand (Doc. 9) is due to be DENIED.

## IV.  RECOMMENDATION

In view of the foregoing, it is respectfully RECOMMENDED that Plaintiff's Motion to Remand (Doc. 9) be DENIED.

IN CHAMBERS in Ocala, Florida, on this 17th day of May, 2004.

GARY R. JONES
United States Magistrate Judge

Copies to:
Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

19

F I L E   C O P Y

Date Printed: 05/18/2004

Notice sent to:

    ____    William E. Lawton, Esq.
             Dean, Ringers, Morgan and Lawton, P.A.
             201 E. Pine St., Suite 1200
             P.O. Box 2928
             Orlando, FL 32802-2928

             5:04-cv-00096     ail

    ____    Lamar Dwight Oxford, Esq.
             Dean, Ringers, Morgan and Lawton, P.A.
             201 E. Pine St., Suite 1200
             P.O. Box 2928
             Orlando, FL 32802-2928

             5:04-cv-00096     ail

    ____    Pierre Seacord, Esq.
             Ringer, Henry, Buckley & Seacord, P.A.
             14 E. Washington St., Suite 200
             P.O. Box 4922
             Orlando, FL 32802-4922

             5:04-cv-00096     ail

    ____    Geoffrey D. Ringer, Esq.
             Ringer, Henry, Buckley & Seacord, P.A.
             14 E. Washington St., Suite 200
             P.O. Box 4922
             Orlando, FL 32802-4922

             5:04-cv-00096     ail

    ____    Gregory J. Bubalo, Esq.
             Williams, Dailey, O'Leary,
             Craine & Love, P.C.
             1001 S.W. Fifth Ave., Suite 1900
             Portland, OR 97204

             5:04-cv-00096     ail

    ____    Kevin M. Adams, Esq.
             Williams, Dailey, O'Leary,
             Craine & Love, P.C.
             1001 S.W. Fifth Ave., Suite 1900
             Portland, OR 97204

             5:04-cv-00096     ail

    ____    Michael L. Williams, Esq.
             Williams, Dailey, O'Leary,



Craine & Love, P.C.
1001 S.W. Fifth Ave., Suite 1900
Portland, OR  97204

5:04-cv-00096    ail

—— Linda C. Love, Esq.
Williams, Dailey, O'Leary,
Craine & Love, P.C.
1001 S.W. Fifth Ave., Suite 1900
Portland, OR  97204

5:04-cv-00096    ail

—— R. Benjamine Reid, Esq.
Carlton Fields, P.A.
4000 Bank of America Tower
100 S.E. 2nd St.
P.O. Box 019101
Miami, FL  33131-9101

5:04-cv-00096    ail

# EXHIBIT 7(M)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

FILED

2003 DEC 23  PM 2:59

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | |
|---|---|
| KAREN MOFFETT, §<br>§<br>*Plaintiff* §<br>§<br>v. §<br>§<br>WYETH, INC., WYETH §<br>PHARMACEUTICALS,, DON LECOCKE, §<br>AND RICHARD E. MARTINEZ, §<br>*Defendants* § | Cause No.<br>DR-03-CV-069-OLG/DG |

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Pending is Plaintiff, Karen Moffett's, motion to remand filed September 22, 2003,

pursuant to Title 28, United States Code, section 1447(c). After examining Plaintiff's motion and

the Defendants' subsequent response, the undersigned concludes that it should be **DENIED**.

### Background and Procedural History

The record shows that a suit was filed in Texas state court in the 38th Judicial District in

Uvalde County, Texas on June 2, 2003. Defendant, Wyeth, filed a notice of removal to federal

court pursuant to Title 28, United States Code, sections 1441(b) on August 22, 2003. Plaintiff filed

a motion for remand on September 22, 2003. This case was referred to the undersigned in an

order entered August 22, 2003 by United States District Judge Orlando L. Garcia.

### Discussion

This removal action arose out of products liability claims against, Wyeth, the

manufacturer of the weight-loss drugs fenfluramine and dexfenfluramine which, when combined,

are commonly known as fen-phen. Plaintiff has asserted that she suffered physical harm as a result of the use of these weight-loss drugs. Plaintiff filed suit not only against the drug manufacturer, but also against two "detail representatives" or pharmaceutical representatives who allegedly promoted the drugs to plaintiff's physician. Defendant, Wyeth, subsequently moved for removal to federal court.

The basis of removal was diversity of citizenship. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court. . . ." 28 U.S.C. § 1441(a). As long as the amount in controversy exceeds $75,000, federal courts have original jurisdiction over all civil actions between citizens of different states. 28 U.S.C. § 1332. Thus, Defendant must demonstrate that the parties were from different states. However, Defendants Don Lecocke and Richard E. Martinez ("the detail representatives") are citizens of Texas, and Plaintiff is a citizen of Texas. Therefore, at first glance it appears that there is not complete diversity, and removal would be inappropriate. Defendant, however, claimed fraudulent joinder. Defendant's argument is that there is no viable cause of action against the detail representatives and that they were only added to the suit in order to avoid federal jurisdiction.

"The burden of proving a fraudulent joinder is a heavy one." *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983). Defendant, in order to demonstrate that a party has been fraudulently joined must demonstrate either "outright fraud in the plaintiff's recitation of jurisdictional facts or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997)(citations and internal quotations omitted). In this instance, Defendant does not allege that Plaintiff engaged in an outright fraud, thus the second method of

2

demonstrating fraudulent joinder is Defendant's only avenue of relief.

In making a determination of whether or not Defendant has made a showing of fraudulent joinder, the Court "must determine whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003). In order to avoid a finding of fraudulent joinder, the Court must find that there is a reasonable possibility of recovery and not simply a theoretical one. *Id.* Thus, the "no possibility" standard articulated in *Rodriguez* has been interpreted to mean no *reasonable* possibility. *Id.* Defendant, claims that there is no such reasonable possibility of recovery against the detail representatives. WYETH'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND at 3.

In determining if there is a reasonable possibility of recovery, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Additionally, the Court must "resolve any questions of material fact, and any ambiguity or uncertainty in the controlling state law in [Plaintiff's] favor." *Griggs v. State Farm Lloyds*, 181 F.3d 894, 901 (5th Cir 2003).

Applying these standards in the light most favorable to Plaintiff, the Court concludes that Plaintiff has engaged in fraudulent joinder and the matter should remain in federal court. Plaintiff, in her original complaint, pleaded causes of action of negligence, misrepresentation, and fraud. However, Plaintiff has been able to point to no breach of duty by the detail representatives. Plaintiff also has not pointed to any misrepresentations by the detail representatives as to the suitability of fen-phen as a diet drug. It is true that Texas does recognize the possibility of liability on the part of an agent in his individual capacity for damages caused by his actions. *Maintenance, Inc. v. ITT Hartford Group, Inc.*, 895 S.W.2d 816, 819 (Tex. App.

3

1995). However, in conducting an analysis of whether fraudulent joinder exists, the Court should

look to the pleadings to determine if a valid cause of action has been stated, but may also engage

in a more summary judgment-type analysis and "pierce the pleading to determine whether, under

controlling state law, the non-removing party has a valid claim against the non-diverse parties."

*Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 389 (5th Cir 2000)(quoting *LeJuene v. Shell Oil Co.*,

950 F.2d 267, 271 (5th Cir. 1992). Thus, even though Texas recognizes a cause of action against

an agent, the Court must still determine if the Plaintiff has properly developed such cause of

action in order to avoid a claim of fraudulent joinder. In Plaintiff's case, she has fallen well short

of her burden.

First, as for all of Plaintiff's causes of action, she has failed to demonstrate the proper

connection between Plaintiff and the detail representatives. Under Texas law, Plaintiff's

complaint "must at least provide sufficient factual information that the defendant is able to

prepare a defense." *City of Alamo v. Casas*, 960 S.W.2d 240, 251-252 (Tex. App. 1997). How

can the detail representatives prepare for a defense in this case without the name of Plaintiff's

physician? Both detail representatives, in declarations attached to Defendant's notice of removal,

stated that they "do not know if I visited plaintiff's prescribing physicians as alleged in the

petition because {Plaintiff has not] identified them." DECLARATION OF DON LECOCKE at 3;

DECLARATION OF RICHARD E. MARTINEZ at 3. Plaintiff has had ample time, over three months,

to rectify this situation and has failed to do so. Because Plaintiff has failed to give sufficient

factual information so that Defendant can prepare for a defense, a finding of fraudulent joinder is

warranted.

Second, Plaintiff has provided no adequate evidence in order to develop fraud or

misrepresentation on the part of the detail representatives. Piercing the pleadings, the Court is

4

presented with mere accusations of misrepresentation, with nothing of substance to back these

accusations up. Detail representatives made numerous visits to doctors throughout Texas.

Plaintiff, in her motion to remand, states that "notes of these 2,486 visits create fact issues

regarding the Detail Representative Defendants' involvement in the promotion and distribution

of Diet Drugs and what they represented to doctors including the doctor involved in this suit."

MOTION FOR REMAND at 13. However, the only visits of any consequence whatsoever to this suit

were visits made to Plaintiff's doctor which could have led to actions by the detail

representatives injuring the Plaintiff.[1] Additionally, Plaintiff went on to claim that other

representatives could have made misrepresentations to other doctors. Plaintiff suggests that,

because other representatives could have made other misrepresentations, the detail

representatives in this case could have made similar misrepresentations. MOTION FOR REMAND at

14. Again, Plaintiff fails to understand that its burden is to draw a connection between *this*

*plaintiff* and *these defendants*. The Plaintiff has simply failed to demonstrate such a connection.

Thus, there is no reasonable possibility of recovery against the detail representatives, and a

finding of fraudulent joinder is warranted. *Ross*, 344 F3d. at 462.

In piercing the pleadings, the Court concludes that the detail representatives were added

in an attempt to avoid federal jurisdiction. Thus, Plaintiff's motion to remand should be denied.

It is further recommended that Defendant's Motion to Stay all Proceedings Pending Transfer to

MDL-1203 should also be granted.

---

[1]Plaintiff does point to seven visits by the detail representatives that were allegedly made to
Plaintiff's doctor. However, the Court is aware of no evidence that suggests that, based on these seven
visits, the detail representatives made misrepresentations or that those misrepresentations were actually
relied upon by Plaintiff.

**Recommendation**

(1)     Plaintiff's motion to remand should be **DENIED**.

(2)     Defendant's motion to stay all proceedings pending transfer to MDL-1203 should be

**GRANTED**.

(3)     The parties may wish to file objections to the above recommendations. Failure to

file written objections to the findings and recommendations contained in this report within ten (10)

days from the date of its receipt shall bar an aggrieved party from receiving a *de novo* review by the

District Court of the findings and recommendations contained herein, *see* 28 U.S.C. § 636(b)(1)(C),

and shall bar an aggrieved party "except upon grounds of plain error from attacking on appeal the

unobjected-to proposed factual findings and legal conclusions accepted by the District Court." *See*

*Douglas v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The Clerk of the

Court shall promptly mail copies of this report to the parties, return receipt requested.

Signed on this  /7th  day of December, 2003.

DENNIS G. GREEN
UNITED STATES MAGISTRATE JUDGE

6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAURINE KREITZ and | § | |
| JOHN C. KREITZ, | § | |
| | § | CIVIL ACTION NO. C-07-242 |
| Plaintiffs, | § | |
| | § | JURY REQUESTED |
| v. | § | |
| | § | *Pending Transfer to MDL-1699* |
| PFIZER, INC., ET AL., | § | *(In re Bextra and Celebrex Marketing,* |
| | § | *Sales Practices and Prods. Liab. Litig.)* |
| Defendants. | § | |

## DEFENDANT PFIZER INC.'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, Defendant Pfizer Inc. submits this

Corporate Disclosure Statement and states:

1.    Defendant Pfizer Inc. does not have any parent corporations, and no publicly-traded company owns 10% or more of Pfizer Inc.'s stock.

Respectfully submitted,

*/s/ Kenneth J. Ferguson*
Kenneth J. Ferguson
Attorney-in-charge
State Bar No. 06918100
Southern District I.D. No. 12703
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]
E-mail: kjf@ctw.com

**OF COUNSEL:**
Leslie A. Benitez
State Bar No. 02134300
Southern District I.D. No. 10017
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
Southern District I.D. No. 25675
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
Southern District I.D. No. 26762
E-mail: ah1@ctw.com
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]

**ATTORNEYS FOR DEFENDANT
PFIZER INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on the 1st day of June, 2007, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D). Service on those parties who are not known to be users of the electronic filing system of the Southern District of Texas was accomplished in the manner described below on June 1, 2007.

***Via Certified Mail/Return Receipt Requested***

Kathryn Snapka
Greg W. Turman
Rick B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78476
***Attorneys for Plaintiffs***

_____/s/ Kenneth J. Ferguson_____

3

# FILED

AUG 0 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 5 2007

FILED
CLERK'S OFFICE

## DOCKET NO. 1699

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

United States District Court
Southern District of Texas
FILED

JAN 2 4 2008

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-75)

Michael N. Milby
Clerk of Court

On September 6, 2005, the Panel transferred 30 civil actions to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Since that time, 1,119 additional actions have been transferred to the Northern District of California. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Breyer.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Northern District of California and assigned to Judge Breyer.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of September 6, 2005, and, with the consent of that court, assigned to the Honorable Charles R. Breyer.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

JUL 1 1 2007

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

I hereby certify that the annexed
instrument is a true and correct
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Date 1-22-08

## SCHEDULE CTO-75 - TAG-ALONG ACTIONS
### DOCKET NO. 1699
### IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

**DIST. DIV. C.A.#**                    **CASE CAPTION**

**ALABAMA NORTHERN**
ALN 7 07-1100 ———————— Michael A. Allen, etc. v. Pfizer Inc., et al.          Opposed 7/10/07

**ILLINOIS SOUTHERN**
ILS 3 07-428 ———————— David White, et al. v. Pfizer Inc., et al.          Opposed 7/10/07
ILS 3 07-429 ———————— John Wiese, et al. v. Pfizer Inc., et al.          Opposed 7/10/07

**MINNESOTA**
  MN  0  07-2355          Leon Hendrix v. Pfizer Inc., et al.
  MN  0  07-2800          Paula Deaton, et al. v. Pfizer Inc., et al.

**TEXAS SOUTHERN**
  TXS  2  07-242          Laurine Kreitz, et al. v. Pfizer Inc., et al.

United States District Court
Southern District of Texas
FILED

JAN 2 4 2008

Michael N. Milby
Clerk of Court

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Richard W. Wieking
Clerk

450 Golden Gate Avenue
San Francisco, CA 94102
415.522.2000

January 22nd, 2008

Southern District Court of Texas
P.O. Box 61010
Houston, TX 77208

Re: <u>MDL 05-1699 In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation</u>

<u>Title of Case(s)</u>
Laurine Kreitz et al. v. Pfizer Inc., et al.

<u>Your Case Number(s)</u>
C.A. No. 2:07-242

Dear Clerk:

Enclosed is a certified copy of the order from the Judicial panel on Multidistrict Litigation transferring the above entitled action to the Northern District of California, San Francisco Division. The case has been assigned to the Honorable Charles R. Breyer for coordinated or consolidated pretrial processing pursuant to 28 USC §1407.

Please forward the **original record** and **a certified copy of the docket entries** in the case listed above along with the enclosed copy of this transmittal letter to:

United States District Court
Northern District of California
450 Golden Gate Avenue, P.O. Box 36060
San Francisco, CA 94102
Attn: Simone Voltz

If the case is an electronic case filing please do one of the following: 1) e-mail the PDF documents, as separate PDF files, including a PDF copy of the docket sheet to **SFmdl_clerk@cand.uscourts.gov**, 2) provide us with a temporary log in and a password to directly access your database and to expedite the downloading of the PDF files we need and/or require, or, 3) if you prefer, on a disc. We appreciate your prompt attention to this matter.

Sincerely yours,
Richard W. Wieking, Clerk

By: Simone Voltz
Deputy Clerk

Encl.

CLOSED, MDL, STAYED, TRANSFERRED

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Corpus Christi)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00242
## Internal Use Only

Kreitz et al v. Pfizer Inc. et al**DO NOT DOCKET. CASE HAS BEEN TRANSFERRED OUT.**
Assigned to: Judge Janis Graham Jack
Case in other court: 36th District Court of
                    Aransas County, Texas,
                    A-07-00075-CV-A
Cause: 28:1332 Diversity-Product Liability

Date Filed: 06/01/2007
Date Terminated: 01/24/2008
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

## Plaintiff

**Laurine Kreitz**
                    represented by  **Kathryn A Snapka**
Snapka & Turman LLP
P O Box 23017
Corpus Christi, TX 78403
361-888-7676
Fax: 361-884-8545
Email: ksnapka@stwllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aditi Anita Shahani**
Snapka, Turman & Waterhouse, LLP
PO Box 23017
Corpus Christi, TX 78403
361-888-7676
Fax: 361-884-8545
Email: ashahani@stwllp.com
*ATTORNEY TO BE*

*NOTICED*

**Gregory Wayne Turman**
Snapka, Turman &
Waterhouse, LLP
606 N Carancahua
Ste 1511
Corpus Christi, TX 78476
361-888-7676
Fax: 361-884-8545 fax
Email: gturman@stwllp.com
*ATTORNEY TO BE
NOTICED*

**Richard B Waterhouse, Jr**
Snapka Turman et al
606 N Carancahua
Ste 1511
Corpus Christi, TX 78403
361-888-7676
Fax: 361-884-8545 fax
Email:
rwaterhouse@stwllp.com
*ATTORNEY TO BE
NOTICED*

**Plaintiff**

**John C. Kreitz**                    represented by **Kathryn A Snapka**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE
NOTICED*

**Aditi Anita Shahani**
(See above for address)
*ATTORNEY TO BE
NOTICED*

**Gregory Wayne Turman**
(See above for address)
*ATTORNEY TO BE
NOTICED*

**Richard B Waterhouse, Jr**
(See above for address)
*ATTORNEY TO BE
NOTICED*

V.

**Defendant**

**Pfizer Inc.**                    represented by **Kenneth J Ferguson**
Clark Thomas et al
PO Box 1148
Austin, TX 78767
512-472-8800
Fax: 512-474-1129
Email: kjf@ctw.com
*LEAD ATTORNEY
ATTORNEY TO BE
NOTICED*

**John Andrew Hutton**
Clark Thomas & Winters,
P.C.
PO Box 1148
Austin, TX 78767
512-472-8800
Fax: 512-474-1129
Email: ah1@ctw.com
*ATTORNEY TO BE
NOTICED*

**Kelly R Kimbrough**
Clark Thomas et al

300 West 6th St
15th Fl
Austin, TX 78701
512-472-8800
Fax: 512-474-1129
Email: krk@ctw.com
*ATTORNEY TO BE
NOTICED*

**Leslie A Benitez**
Clark Thomas et al
P O Box 1148
Austin, TX 78767
512-472-8800
Fax: 512-474-1129 fax
Email: jmh@ctw.com
*ATTORNEY TO BE
NOTICED*

**Defendant**
**Jacqueline Guerrero**

**Defendant**
**Bob Davis**

**Defendant**
**Jeanne L. Jalufka**                represented by **Kenneth J Ferguson**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE
NOTICED*

**John Andrew Hutton**
(See above for address)
*ATTORNEY TO BE
NOTICED*

**Kelly R Kimbrough**

(See above for address)
*ATTORNEY TO BE
NOTICED*

**Leslie A Benitez**
(See above for address)
*ATTORNEY TO BE
NOTICED*

**Defendant**

**Kyle M. Nelson**

**Defendant**

**Jason D. Hahn**

**Defendant**

**Robert G. Vial**              represented by **Kenneth J Ferguson**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE
NOTICED*

**John Andrew Hutton**
(See above for address)
*ATTORNEY TO BE
NOTICED*

**Kelly R Kimbrough**
(See above for address)
*ATTORNEY TO BE
NOTICED*

**Leslie A Benitez**
(See above for address)
*ATTORNEY TO BE
NOTICED*

**Defendant**

**Kathryn K. Truitt**

**Defendant**
**Kari A. McLuhan**

**Defendant**
**Reynaldo Riojas**

**Defendant**
**Francisco Meza**

**Defendant**
**Jack Barineau**

**Defendant**
**Erica Zeplin**                    represented by **Kenneth J Ferguson**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE*
                                                  *NOTICED*

                                                  **John Andrew Hutton**
                                                  (See above for address)
                                                  *ATTORNEY TO BE*
                                                  *NOTICED*

                                                  **Kelly R Kimbrough**
                                                  (See above for address)
                                                  *ATTORNEY TO BE*
                                                  *NOTICED*

                                                  **Leslie A Benitez**
                                                  (See above for address)
                                                  *ATTORNEY TO BE*
                                                  *NOTICED*

**Defendant**
**Deborah Quinones**

**Defendant**

**W. Lance Goodson**                    represented by    **Kenneth J Ferguson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**John Andrew Hutton**
(See above for address)
*ATTORNEY TO BE*
*NOTICED*

**Kelly R Kimbrough**
(See above for address)
*ATTORNEY TO BE*
*NOTICED*

**Leslie A Benitez**
(See above for address)
*ATTORNEY TO BE*
*NOTICED*

**Defendant**

**Keely Rodriguez**

**Defendant**

**Leah Silva**

**Defendant**

**Daniel Ponce**

**Defendant**

**Celeste Escobar**

**Defendant**

**Jill Guidry**

**Defendant**

**Daniel Townsend**

**Defendant**

| | |
|---|---|
| **Lynsey Adame** | represented by **Kenneth J Ferguson** |
| | (See above for address) |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE* |
| | *NOTICED* |
| | |
| | **John Andrew Hutton** |
| | (See above for address) |
| | *ATTORNEY TO BE* |
| | *NOTICED* |
| | |
| | **Kelly R Kimbrough** |
| | (See above for address) |
| | *ATTORNEY TO BE* |
| | *NOTICED* |
| | |
| | **Leslie A Benitez** |
| | (See above for address) |
| | *ATTORNEY TO BE* |
| | *NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 06/01/2007 | ● 1 | NOTICE OF REMOVAL from 36th Judicial District Court of Aransas County, Texas, case number A-07-0075-CV-A (Filing fee $ 350 receipt number 2729887) filed by Pfizer Inc.. (Attachments: # 1 Civil Cover Sheet # 2 Exhibit 1 thru 2E# 3 Exhibit 2F thru 2K# 4 Exhibit 3 thru 6U# 5 Exhibit 7A thru 7U) (Benitez, Leslie) (Entered: 06/01/2007) |
| 06/01/2007 | ● 2 | DEMAND for Trial by Jury by Pfizer Inc., filed. (Hutton, John) (Entered: 06/01/2007) |
| | | |

| 06/01/2007 | ◑ 3 | CORPORATE DISCLOSURE STATEMENT by Pfizer Inc., filed.(Ferguson, Kenneth) (Entered: 06/01/2007) |
|---|---|---|
| 06/01/2007 | ◑ | (Court only) ***Case assigned to Judge Janis Graham Jack. (dperez, ) (Entered: 06/01/2007) |
| 06/29/2007 | ◑ 4 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 7/26/2007 at 01:15 PM before Judge Janis Graham Jack. (Attachments: # 1) Parties notified.(sscotch, ) (Entered: 06/29/2007) |
| 07/02/2007 | ◑ 5 | Opposed MOTION to Remand by all plaintiffs, filed. Motion Docket Date 7/23/2007. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Proposed Order Granting Plaintiffs' Opposed Motion to Remand)(Snapka, Kathryn) (Entered: 07/02/2007) |
| 07/03/2007 | ◑ 6 | MOTION to Stay by Pfizer Inc., filed. Motion Docket Date 7/23/2007. (Attachments: # 1 Exhibit 1 through 13# 2 Proposed Order)(Benitez, Leslie) (Entered: 07/03/2007) |
| 07/03/2007 | ◑ | Minute Entry for proceedings held before Judge Janis Graham Jack. MOTION HEARING held on 7/3/2007 DENYING 5 Opposed MOTION to Remand, and GRANTING 6 MOTION to Stay. Appearances: John Andrew Hutton, Kathryn A Snapka.(Digital # 10:31-10:34)(ERO:v gano), filed.(sscotch, ) (Entered: 07/03/2007) |
| 07/03/2007 | ◑ 7 | ORDER DENYING 5 Opposed MOTION to Remand, and GRANTING 6 MOTION to Stay.(Signed by Judge Janis Graham Jack) Parties notified.(sscotch, ) (Entered: 07/03/2007) |
| 07/03/2007 | ◑ 8 | Opposed MOTION for Reconsideration of 7 Order by all plaintiffs, filed. Motion Docket Date 7/23/2007. (Attachments: # 1 Proposed Order Granting Plaintiffs' Opposed Motion to Reconsider)(Snapka, Kathryn) |

| | | (Entered: 07/03/2007) |
|---|---|---|
| 07/03/2007 | ◑ | (Court only) Set/Cleared Flags. STAYED flag set. (sscotch, ) (Entered: 07/23/2007) |
| 07/03/2007 | ◑ | ***Deadlines terminated. (sscotch, ) (Entered: 07/23/2007) |
| 07/05/2007 | ◑ 9 | ORDER denying 8 Motion for Reconsideration. ( Signed by Judge Janis Graham Jack ) Parties notified.(lcayce, ) (Entered: 07/05/2007) |
| 01/24/2008 | ◑ 10 | JPML CONDITIONAL TRANSFER ORDER (75) (certified copy) transferring case to Northern District of California to be included in MDL Docket No. 1699. Case terminated on 1/24/2008. Parties notified. (ghassan) (Entered: 01/25/2008) |
| 01/25/2008 | ◑ | Interdistrict transfer to Northern District of California. Certified copy of transfer order, certified docket sheet, and two copies of transfer letter (with a return envelope) sent by FedEx; Tracking Number 863398984940, filed. (ghassan) (Entered: 01/25/2008) |

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY CLERK
By_____
Deputy Clerk